UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

_____

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 17-CV-2180 |
| | ) |
| BOARD OF TRUSTEES OF THE | ) |
| UNIVERSITY OF ILLINOIS, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This case is before the court for a ruling on Defendant's Motion to Dismiss (#17). The court has thoroughly reviewed the documents and arguments contained in Defendant's motion, Plaintiff's response, and Defendant's reply. For the following reasons, Defendant's Motion to Dismiss (#17) is DENIED.

BACKGROUND[1]

On August 8, 2017, Plaintiff filed a complaint against Defendant. Plaintiff amended his complaint on August 23, 2017. The amended complaint, which seeks injunctive and declaratory relief, alleges that Plaintiff was a student at the University of Illinois (University) when, on April 25, 2017, he was "expelled/dismissed * * * without, *inter alia*, proper notice and a hearing in violation of the Due Process afforded by Plaintiff's Fourteenth Amendment Right of the United States Constitution."

---

[1]This section contains only a brief summary of the factual allegations contained in Plaintiff's amended complaint. The court notes that, despite the brevity in this order, all of the facts provided in Plaintiff's amended complaint have been thoroughly reviewed and considered by the court in ruling on Defendant's motion to dismiss.

According to the amended complaint, Plaintiff's due process rights in a continued education, learning, and studying at the University as well as a liberty interest in a good name and reputation were guaranteed by documents provided to Plaintiff upon his acceptance to the University. Plaintiff cites to the University's Student Code, Policy on Sexual Misconduct, and its Student Disciplinary Procedures as proof of a contract between himself and the University which guaranteed such rights.[2]

Plaintiff's dismissal from the University came at the conclusion of an internal investigation and review process which began after a complaint was filed against him in December 2016. Plaintiff claims that it was this internal investigation, and its ultimate conclusion, that violated his due process rights. The facts surrounding Plaintiff's dismissal, as alleged in the complaint, are as follows.

In the early morning hours of December 4, 2016, Plaintiff claims that he engaged in consensual sexual activity with a female student identified in this lawsuit as "Jane Roe." Following the encounter, Roe filed a complaint with the university alleging that the sexual contact was not, in fact, consensual. Plaintiff was notified of the charges against him in an email he received on December 13, 2016. As a result of the charges, the University opened an investigation into Plaintiff and the events surrounding his contact with Roe.

---

[2]Plaintiff's amended complaint contains lengthy excerpts from these documents. Although important, the court has decided not to reprint the excerpts in this order as it favors brevity when possible. However, the court will cite to relevant passages in its analysis section.

Plaintiff claims that the University's investigative process was insufficient for a number of reasons. Plaintiff claims that during the investigation, he was only interviewed one time. That interview occurred on January 19, 2017, forty-six days after the alleged assault. Plaintiff alleges that while he was allowed to provide the investigator with his version of events, he was told virtually nothing about the accusations against him. Plaintiff claims that this hindered his ability to effectively prepare a defense or suggest appropriate information for the investigator to pursue.

Using notes from Plaintiff's interview, as well as other information gathered during the investigation, an Initial Investigative Report was prepared by the University investigator. Plaintiff was allowed to view the report on February 27, 2017. During his review, Plaintiff found numerous errors. The errors included misrepresentations and misunderstandings of his statements, incorrect witness statements, and incorrectly reported events. There were approximately sixty-one lines in the Initial Investigative Report that Plaintiff commented on or corrected.

On March 8, 2017, Plaintiff was allowed to review a Revised Investigative Report. Again, Plaintiff discovered numerous errors in the content and characterization of his comments to the investigator. Plaintiff provided approximately thirty-eight suggested corrections for the report.

Despite the numerous errors contained in the Initial Investigative Report and Revised Investigative Report, Plaintiff was not allowed to review the Final Investigative Report which was ultimately provided to the panel. Further, Plaintiff alleges that the

panel was allowed to view the error-ridden Initial Investigative Report and Revised Investigative Report during their deliberative process.

Plaintiff alleges that, except for emails from the University to view the preliminary investigative reports, he was left in the dark as to what was occurring in the investigative process. On March 16, 2017, Plaintiff was notified that a hearing would occur on March 28, 2017. However, the notice did not provide the time or location of the hearing. At some point, Plaintiff had asked an investigator if he could attend the hearing and the investigator responded, "no honey, you just wait at home for the result email which will be sent within twenty-four hours of the hearing." Plaintiff claims that he was not allowed to provide testimony or evidence at the hearing and there was no opportunity for Plaintiff to cross-examine his accuser or any other witness named in the report.

Plaintiff alleges that, at the hearing, the panel made findings related to the credibility of Plaintiff, Roe, and other witnesses, despite the fact that Plaintiff, Roe, and all other witnesses were not allowed to be physically present at the hearing. At the conclusion of the hearing, the panel found that Plaintiff had premeditated a sexual assault against Roe. The panel further concluded that, because Plaintiff and Roe had consumed alcohol the night of the alleged assault, Roe was incapacitated could not consent to sexual activity. Based on these findings, the panel determined that Plaintiff

had violated the University Code and dismissed him from the University for two and a half years, two years for the alleged sexual assault and a half year for violating the no-contact policy.[3]

Although the panel reached its decision on March 28, 2017, Plaintiff was allowed to remain a student at the University until April 25, 2017. During this time, Plaintiff appealed his decision, provided new information, and contested errors in the investigative reports. Defendant affirmed its decision and Plaintiff was effectively dismissed form the University, as originally planned, on April 25, 2017.

Plaintiff alleges that his dismissal was the result of "100% hearsay Final Investigative Report." Plaintiff also alleges that the University's decision was improperly influenced by the fact that the hearing took place approximately three days before the University sponsored Sexual Assault Awareness Month. Plaintiff further alleges that the University was unduly and improperly influenced by an April 2011 "Dear Colleague Letter" issued by the Federal Office for Civil Rights. Plaintiff claims that the letter caused "schools to brand more students as 'rapists' based on the excessively low 'preponderance' burden of proof, permitting a form of double jeopardy, and perhaps most importantly, deprived accused persons (overwhelmingly males) of

---

[3] After Plaintiff was notified of the charges against him, he contacted Roe, informing her that he was not allowed to contact her. Roe reported the contact and the charges against Plaintiff were amended to include this violation.

all elements of due process, including the right to an attorney, the right of cross-examination, and a standard of evidence appropriate to the consequences of being found 'guilty.'"

On August 8, 2017, Plaintiff filed a complaint with this court. The complaint seeks injunctive relief providing Plaintiff with a hearing conforming with his due process and equal protection rights and a judicial declaration that: (1) the outcome and findings made by Defendant be reversed; (2) Plaintiff's reputation be restored; (3) Plaintiff's disciplinary record be expunged; (4) the record of Plaintiff's suspension be removed from his education file; (5) any record of the complaint against Plaintiff be permanently destroyed; (6) Plaintiff be readmitted to the University; (7) Plaintiff be allowed to complete his Spring 2017 classes; and (8) Defendant's rules, regulations, and guidelines are unconstitutional. Defendant filed a motion to dismiss on October 10, 2017. Defendant's motion is fully briefed and ready to be ruled on.

## ANALYSIS

A motion to dismiss serves to test the sufficiency of the complaint, not to decide the merits of the case. See *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). Here, Defendant's motion to dismiss argues that Plaintiff's amended complaint should be dismissed for two separate reasons. First, Defendant claims that the Eleventh Amendment bars Plaintiff's claims. Second, Defendant argues that the complaint should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). This court will address each argument in turn.

Eleventh Amendment Immunity

Defendant first argues that it is immune from Plaintiff's claims pursuant to the Eleventh Amendment to the United States Constitution. The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. If properly raised, the Eleventh Amendment "bars actions in federal court against a state, state agencies, or state officials acting in their official capacities." *Indiana Protection and Advocacy Services v. Indiana Family and Social Services Administration*, 603 F.3d 365, 370 (7th Cir. 2010).

Courts have routinely recognized that state universities, as well as their governing bodies are protected from suit under the Eleventh Amendment. See *Cannon v. University of Health Sciences/The Chicago Medical School*, 710 F.2d 351 (7th Cir. 1983); *Kaimowitz v. Board of Trustees of the University of Illinois*, 951 F.2d 765, 767 (7th Cir. 1991); *Mutter v. Madigan*, 17 F.Supp.3d 752, 757-58 (N.D. Ill. 2014). However, Eleventh Amendment immunity is not absolute. *MCI Telecommunications Corp. v. Illinois Bell Telephone Co.*, 222 F.3d 323, 337 (7th Cir. 2000).

In *Kashani v. Purdue University*, 813 F.2d 843 (7th Cir. 1987), the Seventh Circuit held that the Eleventh Amendment does not thwart claims against "officials in their official capacities for the injunctive relief of reinstatement." *Id.* at 848. Citing to the

Supreme Court's decision in *Edelman v. Jordan*, 415 U.S. 651 (1974), the Seventh Circuit noted that "a suit for prospective injunctive relief is not deemed a suit against the state and thus is not barred by the Eleventh Amendment." *Kashani*, 813 F.2d at 848.

Here, Plaintiff's lawsuit seeks injunctive relief in the form of Plaintiff's reinstatement as a student at the University. Based upon the requested relief and the precedent outlined above, this court finds that the Eleventh Amendment does not require the dismissal of Defendant from this action. See *Salaita v. Kennedy*, 118 F.Supp.3d 1068, 1090 (N.D.,Ill. 2015) ("to the extent [plaintiff] seeks an injunction reinstating him as a professor, the Eleventh Amendment does not require dismissal of the Board"). As such, Defendant's motion to dismiss on this point is denied.

Failure to State a Claim

Defendant next contends that Plaintiff's complaint should be dismissed because the complaint fails to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). To survive a motion to dismiss brought under Rule 12(b)(6), the complaint need only contain sufficient factual allegations to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this standard, the allegations in the complaint must: (1) be detailed enough to "give the defendant 'fair notice of what the claim is and the grounds upon which it rests[;]'" and (2) "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550

U.S. at 554, 555) (alteration omitted).   Importantly, when ruling on a motion to dismiss, a court must accept, as true, all factual allegations contained within the complaint.  See *Iqbal*, 556 U.S. at 678.

Here, Plaintiff's amended complaint alleges that he was denied his right to due process when he was dismissed from the University on April 25, 2017.  In order to properly plead a claim of procedural due process, Plaintiff must allege that he had a cognizable property or liberty interest under the Fourteenth Amendment and that the University deprived him of that interest without due process.  See *Sung Park v. Indiana University School of Dentistry*, 692 F.3d 828, 831 (7th Cir. 2012).

Defendant argues that Plaintiff's amended complaint is deficient because: (1) Plaintiff has failed to identify a cognizable property or liberty interest and; (2) Plaintiff's allegations support a finding that the University's procedures afforded all of the process required by law.  After a thorough review of the amended complaint, this court disagrees with Defendant and concludes that Plaintiff's factual allegations are clearly sufficient to state a claim to relief which is plausible on its face.

In the amended complaint, Plaintiff alleges that he had a property interest in a continued education at the University.  Defendant argues that Plaintiff's allegations are insufficient to support a property interest, noting that the Seventh Circuit has rejected the proposition that an individual has a stand-alone property interest in a continued education at a state university.  See *Charleston v. Board of Trustees of University of Illinois at Chicago*, 741 F.3d 769, 772-73 (7th Cir. 2013).  However, while Defendant's general

proposition is correct, a student can prove that he has a property interest in a continued education if he can establish that he had a legally protected entitlement to his continued education at the university. *Id.* at 773. This can be established by pleading, with specificity, the existence of an express or implied contract. *Id.* "The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant [may] become part of the contract. *Ross v. Creighton University*, 957 F.2d 410, 416 (7th Cir. 1992); see also *Bissessur v. Indiana University Board of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009).

Here, Plaintiff has alleged that his entitlement to a continued education was formed by documents sent to him upon his acceptance to the University. Plaintiff's amended complaint cites to numerous passages from these documents. One such passage, from the University's Student Code, states that "all members have at least the rights and responsibilities common to all citizens." Another passage, taken from the University's Student Disciplinary Procedures, states that "the university disciplinary system shall be separate from, but coexistent with, general systems established by society to deal with the conduct of citizens of society."

The court finds that these passages sufficiently describe the specific promises Plaintiff alleges were made by the University. When taken together, and in concert with the other documents provided to Plaintiff by the University, these passages could establish an express or implied contract guaranteeing Plaintiff a legally protected entitlement to a continued education. Such an entitlement, if Plaintiff's reading of the

10

documents is to be accepted, could not be removed without due process. Therefore, at this early stage in the proceedings and based upon the precedent outlined above, the court concludes that Plaintiff has pled sufficient facts to support his contention that he had a property interest in his continued education. See *Charleston*, 741 F.3d at 773.[4]

The court also finds that Plaintiff has presented sufficient facts to plausibly suggest that the procedures employed by the University failed to provide him with all of the process required by law. Once it is determined that due process applies, the question becomes "what process is due." *Goss v. Lopez*, 419 U.S. 565, 577 (1975). In cases of school expulsion, the Seventh Circuit has concluded that, in order to comport with due process, "procedures must provide the student with a meaningful opportunity to be heard." *Remer v. Burlington Area School District*, 286 F.3d 1007, 1010 (7th Cir. 2002). While these procedures need not take the form of a judicial or quasi-judicial trial, the student must, at the very least, be given notice of the charges against him, notice of the time of the hearing, and a full opportunity to be heard. *Id.* Further, when the outcome

---

[4]Plaintiff has also alleged, in his amended complaint, that he had a protected liberty interest in his good name. Unfortunately, Plaintiff did not fully address this issue in its response to Defendant's motion to dismiss. However, based upon the alleged contract and Plaintiff's allegation that the damage to his reputation will hurt his employment opportunities, this court concludes that, at this stage, Plaintiff's liberty interest claim is sufficient to survive a motion to dismiss. See *Paul v. Davis*, 424 U.S. 693, 791 (1976) (reputation, along with a more tangible interest such as employment, may be sufficient to invoke the procedural protections afforded by the Due Process Clause).

11

of a disciplinary decision is dependent on credibility-based determinations, the accused's right to some form of cross examination is enhanced.  See *Doe v. Pennsylvania State University*, 2017 WL 3581672, *7 (M.D.Penn. Aug. 18, 2017).

Here, Plaintiff has sufficiently pled factual allegations which support his claim that the University failed to provide all of the process that was due.  Specifically, Plaintiff's allegations lead to a serious question about whether the University provided him with a meaningful opportunity to be heard.  According to the amended complaint, Plaintiff was only interviewed one time by the University investigator.  Plaintiff also claims that he was not provided sufficient information regarding the accusations against him.  Without such information, Plaintiff was unable to properly respond to the investigator's questions or provide proper corroborating witnesses, thus decreasing his ability to be heard.

Plaintiff further alleges that, while he was given the opportunity to review an Initial Investigative Report and a Revised Investigative Report, he was not allowed to review the Final Investigative Report which was prepared for the panel who ultimately decided his fate.  Even worse, Plaintiff alleges that the panel was provided with the Initial Investigative Report and Revised Investigative Report, which he claims contained numerous errors and misrepresentations of his statements to the investigator.  Allegedly, those inaccurate reports were part of the panel's decision making process.  If true, these inaccurate reports could have diluted the weight given to Plaintiff's allegedly accurate statements, thus limiting Plaintiff's ability to be properly heard.

Also unsettling is the fact that Plaintiff alleges that he was provided no meaningful opportunity to cross examine the witnesses against him. Defendant attempts to argue that "Plaintiff's case definitively did not hinge on determining whether to believe Plaintiff or Jane Roe." However, this court finds that argument preposterous. Arguing that a decision regarding an individual's ability to consent at a time when only two individuals are present and each has a different version of the event requires a credibility determination. To suggest otherwise is nonsensical. Therefore, the court finds Plaintiff's allegation regarding his inability to cross-examine witnesses has merit and suggests, at this early stage in the litigation, that the process afforded Plaintiff may have been deficient.

Also important are the allegations related to the hearing itself. Plaintiff claims that, although he was informed a hearing would take place on March 28, 2017, he was not provided with the time or location of the hearing. Plaintiff also alleges that, at the hearing, there was no live testimony, Plaintiff was not allowed to participate, and the panel was provided reports with inaccurate information, including summaries that misrepresented comments made by Plaintiff to the investigator. These facts are certainly troubling and support a claim that Plaintiff was not provided a meaningful opportunity to be heard.

Defendant has made numerous arguments related to the adequacy of its process. However, such arguments would be better suited for summary judgment. At this stage, the court is simply concerned with the sufficiency of Plaintiff's amended complaint. See

*Iqbal*, 556 U.S. at 678.  Based upon the allegations outlined above, this court has no trouble concluding that the allegations contained in the amended complaint are sufficient to support Plaintiff's claim that he was entitled to due process and that Defendant dismissed him without a meaningful opportunity to be heard.  As such, the court concludes that Plaintiff has pled sufficient factual allegations to state a claim to relief that is plausible on its face.  Therefore, Defendant's request to dismiss the amended complaint pursuant to Rule 12(b)(6) is denied.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Dismiss (#17) is DENIED.

(2) This case is referred to Magistrate Judge Long for further proceedings.

ENTERED this 18th  day December, 2017.

s/COLIN S. BRUCE
U.S. DISTRICT JUDGE