E-FILED
Friday, 26 January, 2018  02:28:16 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS - URBANA**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-CV-02180 |
| | ) | |
| BOARD OF TRUSTEES OF THE | ) | Honorable Colin S. Bruce |
| UNIVERSITY OF ILLINOIS, | ) | Magistrate Eric I. Long |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS'
ANSWER TO PLAINTIFF'S AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF AND JURY DEMAND**

Defendant, Board of Trustees of the University of Illinois, by and through their attorneys,

Franczek Radelet P.C., hereby answers Plaintiff John Doe's Amended Complaint for Injunctive

and other Relief and Jury Demand as follows:

**NATURE OF THE COMPLAINT**

1.      This is an action for an Injunctive and Declaratory relief, in that Plaintiff, "John
Doe" or "John," was expelled/dismissed from the University of Illinois at Urbana-Champaign
(the "University") effective April 25, 2017, without, *inter alia*, proper notice and a hearing in
violation of the Due Process afforded by Plaintiff's Fourteenth Amendment Right of the United
States Constitution. The case arises out of the actions taken and procedures employed by
Defendant, Board, concerning false allegations of nonconsensual sexual assault made against
Plaintiff, a male sophomore student at the University.

**ANSWER:**      Defendant admits that this action seeks declaratory and injunctive relief and arises

from the University's decision to dismiss Plaintiff from the University effective April 25, 2017

based on its determination that Plaintiff violated the University's sexual misconduct policy by

engaging in non-consensual sex with another student in December 2016. Defendant admits that

Plaintiff is male and that he was a sophomore undergraduate student at the University during the

2016-2017 academic year. Defendant denies that Plaintiff is entitled to any of the relief he seeks,

denies that Defendant or the University has violated any laws or engaged in any other unlawful action with regard to Plaintiff, and denies the remaining allegations in Paragraph 1.

2.      After John applied and was accepted by the University, the Defendant provided copies of its Student Code, Policy on Sexual Misconduct, and its Student Disciplinary Procedures which are available on the University's website. The aforementioned are Defendant's representations and covenants to John which provide a property right in a continued education, learning, and studying at the University as well as a liberty interest in his good name and reputation that may not be taken by a governmental unit such as Defendant without the Due Process afforded by the United States Constitution. The Code does not allow the Defendant to deny or diminish John's Due Process rights in liberty and property. John accepted the Defendant's representations and covenants and John provided consideration by accepting admission and paying his tuition and fees thereby forming an express and implied contract.

**ANSWER:**   Defendant admits that Plaintiff applied and was accepted to enroll at the University, that the University's Student Code, which includes the University's Sexual Misconduct Policy, and the University's Student Disciplinary Procedures are available on the University's website, and that Plaintiff had access to these documents before and after he applied to and was accepted by the University. Defendant denies the remaining allegations in Paragraph 2.

3.      The allegations underlying the actions taken by Defendant concern an instance of consensual sexual activity that occurred during the early morning hours of December 4, 2016, between Plaintiff, a sophomore at the University, and a female senior student at the University, who is identified in this Complaint as "Jane Roe" or "Jane."

**ANSWER:**   Defendant admits that Plaintiff was dismissed from the University based on the University's determination that Plaintiff violated its Sexual Misconduct Policy with respect to an instance of sexual activity that occurred during the early morning hours of December 4, 2016, between Plaintiff, then a sophomore undergraduate student at the University, and a female senior undergraduate student at the University who is identified in the Amended Complaint as "Jane Roe" or "Jane." Defendant denies that the sexual activity at issue was consensual and denies the remaining allegations in Paragraph 3.

CHI-108444-v1

4.      After the Defendant had notified John of sexual assault charges against him on December 13, 2016, John was forced through a ninety-three (93) day investigative process. During the insufficient and unfair investigative process, John was interviewed only once. The Investigators were authorized by Defendant to have full control over the Investigative Report that would eventually go to the Panel established by the University for a decision. Although John was allowed to review the Initial Investigative Report, and the Revised Report, he was not able to review the Final Investigative Report. While reviewing the Investigative Report, John found numerous errors in his statements, misunderstandings of his statements, incorrect witness statements, and incorrectly reported events. There were approximately sixty-one (61) lines in the Initial Investigative Report that John commented on or corrected. The Initial Investigative Report did not convey John's testimony accurately. The Investigator further wrote the Investigatory Report giving her conclusions that witnesses, with no direct knowledge, were more credible than both of the persons who were personally involved in the alleged occurrence. Except for emails from the University to view the Investigative Reports, John was left in the dark as to what was occurring in the investigative process. John took every opportunity he could to correct the reports, but the Board's procedures were simply unfair. When John asked the Investigator if he could attend the hearing at which time a decision would be made on the false charges, the Investigator responded: "no honey, you just wait at home for the result email which will be sent within twenty-four hours of the hearing." The Board's procedures, as alleged in this Complaint, trample over students' constitutional rights.

**ANSWER:**      Defendant admits that Plaintiff was first notified of the sexual assault charges against him on December 13, 2016; that Plaintiff was interviewed once during the University's investigation into those charges; that Plaintiff was allowed to review the University's Initial Investigative Report and Revised Investigative Report; that Plaintiff did review and submit written responses to these reports; and that Plaintiff's written response to the Initial Investigative Report consisted of comments to approximately 60 lines in that report. Defendant denies the remaining allegations in Paragraph 4.

5.      John was notified on March 16, 2017, via email, that a hearing was to occur on March 28, 2017. The notice of John's hearing was constitutionally insufficient in that it did not provide the time or location of his hearing. Further, John was not invited or even allowed to provide testimony or evidence at the "hearing." John's true, actual testimony was never provided to the Panel for adjudication of the charges against John. Further, John was never allowed to cross-examine his accuser, nor was he even allowed to cross-examine third parties named in the report.

**ANSWER:**      Defendant admits that Dean January Boten sent Plaintiff an email on March 16, 2017 that stated, in part: "Your case has been scheduled to appear before the Subcommittee on

3

Sexual Misconduct. Your hearing is scheduled for March 28, 2017." Defendant denies that the

Subcommittee's March 28, 2017 meeting was a formal "hearing" and answering further, states

that pursuant to the University's procedures, the Subcommittee does not exist to hear witnesses

appear in person to present testimony or evidence and that, in this matter, no parties or witnesses

appeared in person before the Subcommittee. Defendant denies the remaining allegations in

Paragraph 5.

6.      Immediately prior to the hearing, the University was preparing the entire campus
for Sexual Assault Awareness Month ("SAAM"). SAAM was to occur approximately three days
after John's closed-door hearing. All Panel members were aware of incoming SAAM and their
decision was unfairly influenced by SAAM.

**ANSWER:**   Defendant admits that in the United States, April is nationally designated as

Sexual Assault Awareness Month and that the University and the community at large annually

plan events during Sexual Assault Awareness month. Defendant lacks knowledge or information

sufficient to admit or deny the allegation that all Panel members were aware of the upcoming

SAAM and therefore denies it. Defendant denies that the Panel's decision was unfairly

influenced by SAAM and denies the remaining allegations in Paragraph 6.

7.      Further, Defendant was unduly, and improperly, influenced by the "Dear
Colleague Letter" issued by the Federal Office for Civil Rights issued on April 4. 2011. The
Dear Colleague Letter advances new rules and creates binding obligations under threat of severe
penalties, including investigation and rescission of federal funding for non-compliant educational
institutions. The Dear Colleague Letter has aggressively dictated how colleges and universities
handle sexual assault on campus, by laying out specific requirements that schools must adopt and
utilize, causing schools to brand more students as "rapists" based on the excessively low
"preponderance" burden of proof, permitting a form of double jeopardy, and, perhaps most
importantly, deprive accused persons (overwhelmingly males) of all elements of due process,
including the right to an attorney, the right of cross-examination, and a standard of evidence
appropriate to the consequences of their being found "guilty."

**ANSWER:**   Defendant admits that the OCR issued a "Dear Colleague" letter on April 4, 2011

that set forth guidelines for educational institutions with respect to charges of sexual harassment

and sexual violence and that the University sought to comply with this guidance, other federally

issued guidance, and guidance issued by the State of Illinois, as required by law. Defendant denies the remaining allegations in Paragraph 7.

8.      The Defendant, after viewing the Final Investigative Report of the Investigators made a determination that John violated the University Code and dismissed John for 2.5 years on March 28, 2017, two years for the alleged "rape" and another one-half year for violating a no-contact policy. The Defendant remarkably made findings related to John's credibility, although John was never even present before the Panel. The Defendant's findings provided that John had "premeditated" his assault against Jane and issued a two-year dismissal for sexual assault. The Defendant also found that because both John and Jane had consumed alcohol earlier that night, Jane was incapacitated at the time of the sexual activity and so she could not consent. However, at odds with incapacitation, the Defendant also found that prior to the sexual activity Jane and John had walked home together and that neither person had consumed any further alcohol after John and Jane walked home together. Moreover, the University found that John had violated its no contact directive when John sent Jane a text of the University's email charges against him. The Defendant, therefore, sanctioned John's dismissal for 2.5 years for failure to abide by the no contact directive. The additional half-year punishment was harsh where John had hastily texted Jane the University's email containing the charges against John without reading the entire email. After continuing to read the email, John noticed the no contact directive informing Jane that he was not supposed to contact Jane. John never contacted Jane, in any form, after the aforementioned.

**ANSWER:**   Defendant admits that on March 28, 2017, the Subcommittee on Sexual Misconduct met regarding the charges against Plaintiff, examined all information presented regarding those charges, and made findings including the following, which were communicated to Plaintiff by email on March 28, 2017:

> On December 3, 2016, [Plaintiff] met [Jane] and her friend at a local bar. [Jane] had already been drinking when she met up with [Plaintiff], and she continued to drink in [Plaintiff's] presence. Later that evening, [Jane's] friend was planning to walk [Jane] home, but [Plaintiff] convinced them to let [Plaintiff] walk her home by saying that [Jane] was [Plaintiff's] best friend's girlfriend and that [Plaintiff] wouldn't do anything to her. [Plaintiff] then took [Jane] back to [Plaintiff's] apartment, where [Plaintiff] had oral and vaginal sex with her. [Jane] was incapacitated at the time of the sexual activity and so could not consent. After [Plaintiff] received the charge letter and no contact directive from Dean Boten on January 13, [Plaintiff] took a screen shot of the email and sent it in a text to [Jane].

Defendant admits that the Subcommittee concluded that Plaintiff violated three sections of the Student Code and imposed a sanction of dismissal from the University for 2.5 years.

CHI-108444-v1

Defendant admits that the Subcommittee provided the following rational for the sanctioning decision:

> According to the guidance provided to us by the Senate Committee on Student Discipline, we are to consider a two-year dismissal for sexual assault that includes penetration. However, because the evidence in this case supports a conclusion that the assault was premeditated and because this case also includes a violation of the no contact directive, itself a violation worthy of dismissal, we believe a 2.5-year dismissal to be more appropriate.

Defendant lacks knowledge or information sufficient to admit or deny the allegations that Plaintiff "had hastily texted Jane the University's email containing the charges against [Plaintiff] without reading the entire email"; that "[a]fter continuing to read the email, [Plaintiff] noticed the no contact directive informing Jane that he was not supposed to contact Jane"; and that Plaintiff "never contacted Jane, in any form, after the aforementioned," and therefore denies them. Defendant denies the remaining allegations in Paragraph 8.

9.      The Defendant dismissed John after a closed-door hearing without allowing John, Jane, or any witnesses to appear or to testify before the assigned University Panel. John was not afforded the opportunity to present his testimony or evidence to the Panel. John was not allowed to confront and cross-examine his accuser, nor was he allowed to cross-examine any other persons listed in the report as having provided "evidence." The Panel, after reviewing the 100% hearsay Final Investigative Report, made findings regarding John's credibility without his presence.

**ANSWER:**    Defendant admits that pursuant to the University's policies and procedures, the Subcommittee does not exist to hear witnesses appear in person to present testimony or evidence and, in this matter, no parties or witnesses appeared or testified in person before the Subcommittee on March 28, 2017. Defendant denies the remaining allegations in Paragraph 9.

10.      Although the Defendant supposedly found that John had "premeditated" sexual assault against Jane, the University allowed John to continue campus life, attend classes, and interact with students. John remained on campus for an additional month. During this time, John appealed his decision, provided new information, and contested errors in the Reports. For instance, John provided new documented evidence that an adverse witnesses statements were inaccurate. The inaccurate statement was a basis for the Defendant's finding that Jane was incapacitated. However, the Defendant affirmed its decision and John was effectively dismissed from school on April 25, 2017.

CHI-108444-v1

**ANSWER:**   Defendant admits that the Subcommittee found that the evidence in Plaintiff's case supported a conclusion that Plaintiff's assault against Jane was premeditated; that Plaintiff appealed the Subcommittee's determination that Plaintiff had violated the Student Code and its sanctioning decision; that Plaintiff was allowed to remain on campus and attend classes while his appeal was pending; that an Appellate Panel affirmed the Subcommittee's findings and sanctioning decision; and that Plaintiff was dismissed from the University effective April 25, 2017. Further answering, the University's policies allow students who appeal their findings to delay implementation of sanctions until the appeal is decided.  Defendant lacks knowledge or information sufficient to admit or deny the allegations that Plaintiff "continue[d] campus life" and "interact[ed] with students" while his appeal was pending and therefore denies them. Defendant denies the remaining allegations in Paragraph 10.

11.    John, an exemplary student, involved in, on and off-campus activities, a member of the Board of the Taiwan Intercultural Association and soon to be President, double majoring with a 3.76 GPA, a committee member of the Minority Business Student Association, and a potential manager for a well-known Champaign Restaurant, will be forced to live the rest of his life with the Defendant's decision without even a fair opportunity to be heard. The Defendant violated John's minimum constitutional guarantees, at the expense of making an example out of John for SAAM. The only result from the imposition of the Defendant's punitive sanctions will be to severely harm John's future economic prospects and to destroy his reputation.

**ANSWER:**   Defendant lacks knowledge or information sufficient to admit or deny the allegations that Plaintiff was "involved in[] on and off-campus activities, a member of the Board of the Taiwan Intercultural Association and soon to be President, … a committee member of the Minority Business Student Association, and a potential manager for a well-known Champaign Restaurant," and therefore denies them. Defendant denies the remaining allegations in Paragraph 11.  Further answering, a result of the University's enforcement of standards regarding sexual misconduct through sanctions against Plaintiff, particularly in light of his text stating that Jane Doe was "freaking drunk" shortly before he initiated sexual interactions with her, include

7

protection of the University community and reassurance to that community that anyone who takes advantage of a person incapable of consenting to sexual activities will be subject to discipline within the University's internal process.

12.     The Defendant's actions resulted in a taking of John's right to an undergraduate education without a fair hearing, including the opportunity to be heard and the right to cross-examine adverse witnesses. There simply was no hearing provided to John by the Defendant, its agents, and employees, or its promulgated rules and codes. The Defendant's violation of John's constitutional rights of Due Process will forever irreparably harm John for his lost years in college, delay in the completion of his degree, and the opportunity to begin his career. Further, John will have to "explain, for the remainder of his professional life, why his education either ceased prior to completion or contains a gap". Doe v. University of Notre Dame, No. 3:17CV298-PPS/MGG, 2017 U.S. Dist. LEXIS 69645, at *38 (N.D. Ind. May 8, 2017). The Defendant's fundamentally unfair procedures did not allow for John to have a hearing before the Panel.

**ANSWER:**     Defendant admits that the University has adopted an "investigator model" rather than a "hearing model" to adjudicate sexual misconduct charges between students, and accordingly, the University's policies and procedures provide for live witness testimony and provision of other evidence before an investigator and do not provide for a formal hearing at which witnesses appear to present testimony or evidence to a panel with regard to such charges. Defendant denies the remaining allegations in Paragraph 12.

13.     For these reasons, John brings this action to obtain injunctive and declaratory relief, and attorney's fees and costs against the University for violating Due Process afforded by John's Fourteenth Amendment Right.

**ANSWER:**     Defendant admits Plaintiff seeks the aforementioned relief but denies that Defendant or the University engaged in any wrongdoing and denies that Plaintiff is entitled to any relief.

## JURISDICTION

14.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 42 U.S.C. § 1983 and § 1988, and Fourteenth Amendment of the Constitution of the United States of America.

8

**ANSWER:**   Defendant admits that Plaintiff purports to bring this action pursuant to 28 U.S.C.

§ 1331, 28 U.S.C. § 1343, 42 U.S.C. § 1983 and § 1988, and Fourteenth Amendment of the

Constitution of the United States of America, but denies that this Court has jurisdiction over

these claims against Defendant pursuant to the Eleventh Amendment to the Constitution of the

United States of America.

## VENUE

15.     Venue is appropriate under 28 U.S.C. § 1391(b).

**ANSWER:**   Defendant admits that venue is appropriate under 28 U.S.C. § 1391(b), but denies

that this Court has jurisdiction over Plaintiff's claims against Defendant pursuant to the Eleventh

Amendment to the Constitution of the United States of America.

## PARTIES

16.     Plaintiff, John Doe ("John"), is a natural person who resides in the state of
California. During the events described herein, John was enrolled as a full-time, tuition-paying,
undergraduate student at the University.

**ANSWER:**   Defendant lacks knowledge or information sufficient to admit or deny the

allegations set forth in the first sentence of Paragraph 16, and therefore denies them. Defendant

admits that from Fall 2015 until his dismissal from the University on April 25, 2017, Plaintiff

was enrolled as a full-time, tuition-paying, undergraduate student at the University.

17.     Defendant, Board, is a body corporate and politic having power, *inter alia*, to
plead and be impleaded, to make and establish by-laws, and to alter or repeal the same as they
shall deem necessary, for the management or government, in all its various departments and
relations, of the University of Illinois, for the organization and endowment. See, 110 ILCS
305/1.  The Board is sued in each and every cause of action, in any and all capacities.

**ANSWER:**   Defendant admits that the first sentence in Paragraph 17 includes selected

language from 110 ILCS 305/1, but denies that Paragraph 17 fully and accurately cites 110 ILCS

305/1. Defendant admits that the Amended Complaint purports to assert claims against the Board

of Trustees of the University of Illinois, but denies that that Board is a proper defendant in this action.

## FACTUAL ALLEGATIONS

### A.    John's University Career, Employment Opportunities, and Relationships

18.    John is a University sophomore and a double major in Accounting and Finance. John holds a GPA of 3.76. John was placed on the University's Dean's list during his first semester.

**ANSWER:**    Defendant admits that during the 2016-2017 academic year, Plaintiff was a sophomore undergraduate student at the University, and that Plaintiff was on the Deans' List for Fall 2015, his first semester at the University. Defendant denies the remaining allegations in Paragraph 18.

19.    John has been an exemplary student, actively involved in academic and philanthropic endeavors both on and off campus and has received university grants and scholarships. During the relevant time, John was a member of the Alpha Phi Omega national coeducational service organization founded on the principles of Leadership, Friendship, and Service. Alpha Phi Omega is a volunteer fraternity that provides its members the opportunity to develop leadership skills as they volunteer on their campus, in their community, to the nation, and to the organization. John was also a committee member of the Minority Business Student Association (MBSA). Further, John was the vice president of Taiwan Intercultural Association ("TIA"). John was the next potential president of TIA and was in fact offered the position of president. John respectfully turned down the position of president after the Defendant initiated the student disciplinary action against him. In addition, Students Today Leaders Forever is a campus nonprofit organization that John participated in a week-long service road trip to volunteer in various projects in six different cities.

**ANSWER:**    Defendant admits that while enrolled at the University, Plaintiff received a scholarship, federal Pell grants, and University grants. Defendant denies the allegation that Plaintiff was "an exemplary student." Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 19 and therefore denies them.

20.    Before the instant dispute, John possessed no student disciplinary record. In High School, John achieved the rank of Eagle Scout in the Boy Scouting program of the Boy Scouts of America. Only four percent of Boy Scouts are granted this rank after a lengthy review process.

10

**ANSWER:**    Defendant admits that prior to his dismissal from the University, Plaintiff had no

prior student disciplinary record. Defendant lacks knowledge or information sufficient to admit

or deny the allegations in the second and third sentences of Paragraph 20, and therefore denies

them.

21.    While enrolled in school John was employed at the well-known Ozu Ramen Restaurant located in Champaign, Illinois. John was praised by the management and ownership as being a hardworking, dedicated, and a respectful employee. John assisted in Ozu Ramen's events and was praised for his potential as a manager in the upcoming year.

**ANSWER:**    Defendant admits that the Ozu Ramen Restaurant is located in Champaign,

Illinois. Defendant lacks knowledge or information sufficient to admit or deny the remaining

allegations set forth in Paragraph 21 of the Amended Complaint, and therefore denies them.

22.    As a result of John's involvement in school, TIA, and Ozu Raman, John was well-liked and respected, often hosting BBQ events at his place, cooking for his friends, and was known for being kind and sociable among friends and classmates.

**ANSWER:**    Defendant lacks knowledge or information sufficient to admit or deny the

allegations set forth in Paragraph 22 of the Amended Complaint, and therefore denies them.

**B.    John's University Courses During Spring Semester 2017**

23.    During the spring semester of 2017, John was enrolled in five University classes, ACCY 301, ACCY 302, SPED 117, FIN 300, and ACES 161. These aforementioned classes amounted to 15 hours of semester course credit. After the Board had confirmed John's dismissal on April 25, 2017, John was forced to withdraw from all classes. The withdrawal occurred approximately one week prior to the University final examination week.

**ANSWER:**    Defendant admits that during the Spring 2017 semester, Plaintiff was enrolled in

four University classes: ACCY 301, ACCY 302, ACE 161, and FIN 300, which amounted to

twelve credit hours. Defendant admits that final examinations for the Spring 2017 semester were

held from May 5-12, 2017; that Plaintiff was dismissed from the University effective April 25,

2017, which was ten days before the start of the final examination period for that semester; and

that Plaintiff accordingly did not complete his Spring 2017 courses. Defendant denies that

11

Plaintiff was "forced to withdraw" from his classes and denies the remaining allegations in Paragraph 23.

    24.    ACCY 301 is "Atg Measurement & Disclosure" and a three-credit hour course. ACCY 301 is an "[i]ntroduction to measurement and reporting of organizational performance for strategic and operational purposes with a focus on a variety of financial and non-financial performance measures suitable for both internal and external decision-making. Projects, together with a series of practical workshops, facilitate self-discovery of knowledge and development of a variety of professional skills and attitudes." John completed all class work and group projects. All that remained in John's ACCY 301 class was a quiz and a final examination that would have occurred approximately one week after John's dismissal was effective.

**ANSWER:**    Defendant admits the allegations in the first sentence of Paragraph 24, and admits that the second and third sentences of Paragraph 24 accurately quote a portion of the current course description of ACCY 301. Defendant lacks knowledge or information sufficient to admit or deny the allegations in the fourth and fifth sentences of Paragraph 24, and therefore denies them.

    25.    ACCY 302 is "Decision Making for Atg" a three-credit hour course. ACCY 302 is a "[d]ecision making implications of information provided to organization managers and to external stakeholders such as investors, creditors, customers, and regulators. Concepts from economics, statistics, and psychology emphasize the use of quantitative techniques to comprehend uncertainty and risk. Projects, together with a series of practical workshops, facilitate self-discovery of knowledge and development of a variety of professional skills and attitudes." John completed substantially all assignments and completed all group projects. All that remained in John's ACCY 301 class were a few assignments and the final examination that would have occurred approximately one week after John's dismissal was effective.

**ANSWER:**    Defendant admits the allegations in the first sentence of Paragraph 25, and admits that the second, third, and fourth sentences of Paragraph 24 accurately quote a portion of the current course description of ACCY 302. Defendant lacks knowledge or information sufficient to admit or deny the allegations in the fifth and sixth sentences of Paragraph 25, and therefore denies them.

    26.    SPED 117 is "Culture of Disability" a three-hour course. SPED 117 is "to provide an introduction to the culture of disability across the lifespan. The impact of disabilities on an individual across the lifespan will be explored, and the unique culture that is created by having a disability will be addressed. The historical basis for the disability movement and special

12

education will be addressed, including legislation and litigation that has had a significant impact on the field. Students also will learn about the characteristics of individuals with diverse abilities as well as current trends in educational services." John had completed five weeks of the eight-week course before he was dismissed from the March 28, 2017, decision.

**ANSWER:**   Defendant admits that SPED 117 is a course called "The Culture of Disability" and that it is a three credit hour course. Defendant admits that the second, third, fourth, and fifth sentences of Paragraph 26 accurately quote from the current course description of SPED 117. Defendant denies the remaining allegations in Paragraph 26.

27.   FIN 300 is "Financial Markets" and a three-hour course. FIN 300 is "[t]heory and applications associated with the functioning of financial markets to include the conceptual foundations of portfolio theory, risk management, and asset valuation. The stock, money, bond, mortgage, and futures and options markets are examined." John completed substantially all coursework. All that remained in John's FIN 300 class was one homework assignment and the final examination that would have occurred approximately one week after John's dismissal was effective.

**ANSWER:**   Defendant admits that FIN 300 is a course called "Financial Markets" and that it is a three credit hour course. Defendant admits that the second and third sentences of Paragraph 27 accurately quote a portion of the current course description of FIN 300. Defendant lacks knowledge or information sufficient to admit or deny the allegations in the fourth and fifth sentences of Paragraph 27, and therefore denies them. Defendant denies the remaining allegations in Paragraph 27.

28.   ACES 161 is "Microcomputer Applications" and a three-hour course. ACES 161 is for "[i]nstruction and practice in solving data-related problems with microcomputers and general purpose software packages." John completed the entire ACES 161 course.

**ANSWER:**   Defendant admits that ACE 161 is a course called "Microcomputer Applications" and that it is a three credit hour course. Defendant admits that the second sentence of Paragraph 28 accurately quotes the current course description of ACE 161. Defendant lacks knowledge or information sufficient to admit or deny the allegation in the third sentence of Paragraph 28, and therefore denies it. Defendant denies the remaining allegations in Paragraph 28.

29.     As a result of the instant dispute, John was forced to receive a withdrawal from all 2017 spring semester courses.

**ANSWER:**     Defendant admits that Plaintiff did not complete his Spring 2017 classes upon being dismissed from the University effective April 25, 2017 based on the University's determination that Plaintiff violated the University's sexual misconduct policy by engaging in non-consensual sex with another student in December 2016. Defendant denies that Plaintiff was "forced to receive a withdrawal" from his classes and denies the remaining allegations in Paragraph 29.

### C.     The University's Sexual Misconduct Policy and Student Conduct Protocol for Allegations of Sexual Misconduct

#### 1.     The University's Sexual Misconduct Policy

30.     At the time of Jane Roe's complaint against John in December 2016, the Board's Policy on Sexual Misconduct ("Policy") supplied the definition of sexual assault, consent, and abuse of the University disciplinary system, which were applied to the charges against John.

**ANSWER:**     Defendant admits that the University's Sexual Misconduct Policy contained in the 2016-2017 Student Code set forth the definitions of "sexual assault" and "consent" applicable to the charges against Plaintiff. Defendant also admits that the University's Student Code included Rules of Conduct which set forth types of conduct for which University students would be subject to discipline and included "[a]buse of the University disciplinary system," and that the Rules of Conduct contained in the 2016-2017 Student Code applied to the charges against Plaintiff. Defendant denies the remaining allegations in Paragraph 30.

31.     The Board incorporates definitions and terms of the Policy in its Student Code ("Code") found at studentcode.illinois.edu, contained in the University website. See true and correct copy of the relevant portions of the Student Code attached hereto as Exhibit "A." The Code notes that the rules apply to all undergraduate, graduate, and professional students enrolled at the University of Illinois at Urbana-Champaign.

**ANSWER:**     Defendant admits that the University's Sexual Misconduct Policy is contained in its Student Code; that the Student Code is available through the University's website; that the

14

most current version of the Student Code is located at studentcode.illinois.edu; and that Exhibit

A to the Amended Complaint is a true and correct copy of selected portions of the Student Code.

Defendant admits that the Preface of the Student Code states that "[u]nless otherwise noted, the

rules stated in this *Student Code* apply to all undergraduate, graduate, and professional students

enrolled at the University of Illinois at Urbana-Champaign." Defendant denies the remaining

allegations in Paragraph 31.

      32.     The Code includes the Board's basis for discipline, source, and jurisdiction. The Code details that the Board provides the authority to the Senate Committee on Student Discipline ("SCSD") to be "responsible for the administration of student discipline for acts involving violation of campus or University regulations." The regulations are formulated by a variety of sources, including, but not limited to the Board. The Board and SCSD will only accept "jurisdiction only in those instances in which the University community's interest is substantially affected."

**ANSWER:**    Defendant admits that Section 1-301(a) of the 2016-2017 Student Code states:

> By the authority of the Board of Trustees, the Urbana-Champaign Senate Committee on Student Discipline is responsible for the administration of student discipline for acts involving the violation of campus or University regulations. These regulations are formulated by a variety of sources, including, but not limited to, the Conference on Conduct Governance, the Senate, the Chancellor, the President, and the Board of Trustees.

> Defendant admits that Section 1-301(b) of the 2016-2017 Student Code states in part:

> The University discipline system recognizes that not all violations of law affect the interests of the University community, and the discipline system accepts jurisdiction only in those instances in which the University community's interest is substantially affected.

> Defendant denies the remaining allegations in Paragraph 32.

      33.     The Code further details "that the basis for discipline at this campus be clearly defined."

**ANSWER:**    Defendant admits that Section 1-301(b) of the 2016-2017 Student Code states in

part: "It is in the best interest of the University and all those who are students or who may desire

CHI-108444-v1

to become students at the Urbana-Champaign campus that the basis for discipline at this campus be clearly defined." Defendant denies the remaining allegations in Paragraph 33.

34.     The Code provides for Rules of Conduct in which students are subject to discipline. Within the Rules of Conduct, Code 1-302.b.1, includes conduct that violates the University's Policy, including sexual assault.

**ANSWER**:     Defendant admits that the Code includes Rules of Conduct; that as set forth in Section 1-302(b) of the Code, conduct for which students are subject to discipline includes conduct that violates the University's sexual misconduct policy; and that pursuant to Section 1-302(b)(1), conduct that violates the University's sexual misconduct policy includes sexual assault as defined by Section 1-111(c)(2) of the Code. Defendant denies the remaining allegations in Paragraph 34.

35.     The Policy defines "sexual misconduct" to include "sexual assault." The Policy further defines, under § 1-111(c)(2)(a-b), "sexual assault" as "any sexual contact that does not involve the knowing consent of each person, including any form of sexual penetration without consent; and any intentional or knowing touching or fondling by either person, directly or through clothing, of the sex organs, buttocks, or breasts of the other person for the purpose of sexual gratification or arousal of either person without consent."

**ANSWER**:     Defendant admits the allegations in Paragraph 34 but denies that the quoted language in the second sentence of Paragraph 34 is an exact quotation of Sections 1-111(c)(2)(A)-(B) of the 2016-2017 Student Code.

36.     The Policy defines "consent" as follows:

"(3) Consent is informed, freely and actively given, mutually understandable words or actions that indicate a willingness to participate in mutually agreed upon sexual activity. A person can withdraw consent at any time. There is no consent when there is force, threats, intimidation, or duress. A person's lack of verbal or physical resistance or manner of dress does not constitute consent. Consent to past sexual activity with another person does not constitute consent to future sexual activity with that person. Consent to engage in sexual activity with one person does not constitute consent to engage in sexual activity with another person. A person cannot consent to sexual activity if such person is unable to understand the nature, fact, or extent of the activity or give

16

knowing consent due to circumstances including without limitation the following:

(A) the person is incapacitated due to the use or influence of alcohol or drugs;"

**ANSWER:**   Defendant admits that the definition of "consent" in the University's Sexual Misconduct Policy includes the language quoted in Paragraph 36 but denies that Paragraph 36 is a complete citation of the definition of "consent" at Section 1-111(c)(3) of the Student Code.

37.     The Policy fails to further define "incapacitated."

**ANSWER:**   Defendant admits only that the Sexual Misconduct Policy contained in the 2016-2017 Student Code does not contain a separate, stand-alone definition of the term "incapacitated." Defendant denies the allegation that the Policy fails to define the term "incapacitated."

38.     The Code at 1-302.o.1 details "abuse of the University system" to include, but not limited to "failure to obey directive of a disciplinary body or University officials in performance of their duties."

**ANSWER:**   Defendant admits that the Section 1-302(o) of the Student Code provides examples of conduct that constitutes "[a]buse of the University disciplinary system" and that Section 1-302(o)(1) states that such conduct includes "failure to obey the directive of a disciplinary body or University officials in performance of their duties." Defendant denies the remaining allegations in Paragraph 38.

**2.     The University Student Conduct Protocol for Allegations of Sexual Misconduct**

39.     When a student violates the community standards outlined in the Code, the Office for Student Conflict Resolution ("OSCR") has the responsibility of administering the "Student Disciplinary Procedures" as authored and authorized by the SCSD. The Board provided this aforementioned authority to SCSD.

**ANSWER:**   Defendant admits the allegations in Paragraph 39.

17

40.     The Board's OSCR provides for "Student Disciplinary Procedures" on the website  http://www.conflictresolution.Illinois.edu/student_discipline/.  See attached true and correct copy of the relevant portions of the Student Disciplinary Procedures attached hereto as Exhibit "B."

**ANSWER:**     Defendant admits that the Student Disciplinary Procedures administered by the University's Office for Student Conflict Resolution are available online at http://conflictresolution.illinois.edu/policies/student-discipline/. Defendant admits that a true and correct copy of the version of Appendix D to the Student Disciplinary Procedures approved by the SCSD on May 8, 2017 is attached as Exhibit B to the Amended Complaint. Defendant denies the remaining allegations in Paragraph 40.

41.     The OSCR addresses "all behavioral violations" of the Code committed by individuals.

**ANSWER:**     Defendant admits the allegations in Paragraph 41 but denies that Paragraph 41 contains a complete statement of the violations addressed by the OSCR.

42.     "Appendix D" provisions of the "Student Disciplinary Procedures" applies to cases that include an accusation of sexual misconduct, including sexual assault. Appendix D defines and also outlines the procedures and protocols for "Allegations of Sexual Misconduct, Including Sexual Harassment, Sexual Assault, Sexual Exploitation, Stalking, Dating Violence, and Domestic Violence."

**ANSWER:**     Defendant admits that Appendix D to the Student Disciplinary Procedures is the Student Conduct Protocol for Allegations of Sexual Misconduct, Including Sexual Harassment, Sexual Assault, Sexual Exploitation, Stalking, Dating Violence, and Domestic Violence; and that Appendix D sets forth the procedures for all cases that include an accusation of sexual misconduct, including sexual assault, against a student. Defendant denies the remaining allegations in Paragraph 42.

43.     Section 1 provides definitions for various terms within "Appendix D." For instance, Section 1 defines "Subcommittee on Sexual Misconduct" as, "[t]he group of faculty, staff, and students trained to adjudicate cases that include allegations of sexual misconduct, including sexual harassment, sexual assault, sexual exploitation, stalking, dating violence, and domestic violence. This group is selected by OSCR staff and approved by the SCSD."

18

**ANSWER:**   Defendant admits the allegations in Paragraph 43.

44.   Section 2 provides for the investigation process and procedures.

**ANSWER:**   Defendant admits that Section 2 of Appendix D sets forth the process and procedures for the investigation of cases that include an accusation of sexual misconduct against a student.

45.   Section 2a provides for the "Intake and Review." Pursuant to Section 2a, the OSCR oversees the investigations of allegations against the students. Once notified of the allegations covered by "Appendix D," the Executive Director, Justine M. Brown, will appoint at least two investigators to conduct the investigation. The "Lead Investigator and at least one other investigator will first interview any participating complainants to determine the precise nature of the allegations."

**ANSWER:**   Defendant admits that Section 2(a) sets forth procedures for the Intake and Review of cases subject to Appendix D; that Section 2(a)(1) states, in part, that "OSCR will oversee investigations of allegations against students"; that the second sentence of Paragraph 45 summarizes a portion of Section 2(a)(1); and that the third sentence of Paragraph 45 accurately quotes the language of Section 2(a)(2). Defendant denies that Paragraph 45 fully quotes or summarizes Section 2(a) of Appendix D and denies the remaining allegations of Paragraph 45. Answering further, Defendant states that the Executive Director of OSCR is Justin M. Brown.

46.   After the "Lead Investigator" determines "whether the allegations, if substantiated, would violate the Student Code," a "Charge Notice" is issued pursuant to Section 2b. The written "Charge Notice" informs the respondent of the approximate date, time, place, and type of incident, as well as of the section(s) of the Student Code that the respondent is alleged to have violated."

**ANSWER:**   Defendant admits that the first sentence of Paragraph 46 contains language from Section 2(a)(3) but denies that this sentence fully and accurately quotes Section 2(a)(3). Defendant admits the allegations in the second sentence of Paragraph 46.

47.   After the written "Charge Notice" is issued, the "Lead Investigator" proceeds to interview the respondent pursuant to Section 2c.

**ANSWER:** Defendant admits that Section 2(c) provides for the interview of the respondent.

Defendant denies that Paragraph 47 fully and accurately quotes Section 2(c).

48.     Section 2d provides for "Information Collection and Witness Interviews." Section 2d states, but not limited to, "The respondent and the complainant will be given the opportunity to provide supporting information and documentation and to identify witnesses." The "Lead Investigator" is to review all submitted materials.

**ANSWER:** Defendant admits the allegations in the first sentence of Paragraph 48. Defendant

admits that Section 2(d) contains the language quoted in the second sentence of Paragraph 48 but

denies that this sentence fully and accurately quotes Section 2(d).  Defendant denies all

remaining allegations in Paragarph 48.

49.     Section 2e provides for "Follow-up Interviews."

**ANSWER:** Defendant admits the allegations in Paragraph 49.

50.     Section 2f provides for "Updates," which requires the OSCR to "provide both the respondent and the complainant with periodic status updates during the investigation, the adjudication process, and the appeals process."

**ANSWER:** Defendant admits that Section 2(f) concerns "Updates" and contains the specific

language quoted in Paragraph 50, but denies that Paragraph 50 fully or accurately quotes Section

2(f),denies the Plaintiff's characterization of Section 2(f) in Paragraph 50, and denies all

remaining allegations in Paragraph 50.

51.     Section 2g provides for a "Timeline." This section anticipates a duration of an investigation to be approximately 45 calendar days following the "Charge Notice." Further, "If the duration of an investigation will substantially exceed this estimate, the Lead Investigator will provide written notice to both the respondent and the complainant of the delay and the reason for the delay."

**ANSWER:** Defendant admits the allegation in the first sentence of Paragraph 51 and admits

that Section 2(g) contains the language quoted in the third sentence of Paragraph 51. Defendant

denies the remaining allegations in Paragraph 51.

52.     Section 3 provides for the "Investigative Report."

**ANSWER:**      Defendant admits the allegations in Paragraph 52.

53.      Section 3a provides for the "Initial Investigative Report" initially stating, "[u]pon completion of the initial investigation, the investigators will compile all relevant information into a written report."

**ANSWER:**      Defendant admits that Section 3(a) concerns the Initial Investigative Report and contains the language quoted in Paragraph 53. Defendant denies that Paragraph 53 fully or accurately quotes Section 3(a) and denies the remaining allegations in Paragraph 53.

54.      Section 3b provides for "Report Review." This section allows for the respondent and complainant the opportunity to review the "Initial Investigative Report" in the OSCR "during normal business hours and to submit a written response."

**ANSWER:**      Defendant admits the allegations in Paragraph 54 but denies that Paragraph 54 fully quotes or reflects the provisions of Section 3(b).

55.      Section 3c provides for "Additional Investigation," stating "After reviewing the submitted responses, the investigators will conduct any additional investigation they deem appropriate and revise the investigative report as necessary." Therefore, the investigators have full control as to what is contained in the report.

**ANSWER:**      Defendant admits the first sentence of Paragraph 55 and denies the second sentence of Paragraph 55.

56.      Section 3d provides for the "Final Review and Response," stating, but not limited to, "[b]oth the respondent and the complainant will be given the opportunity to review the revised report in the Office for Student Conflict Resolution during normal business hours and to submit a final written response, which may also include impact statements, character statements, statements of desired outcome, and any other information believed relevant for sanction determination."

**ANSWER:**      Defendant admits the allegations in Paragraph 56 but denies that Paragraph 56 fully quotes or reflects the provisions of Section 3(d).

57.      Section 3d provides for the "Final Investigative Report." The "Final Investigative Report" includes:

(1) The revised investigative report.
(2) Any final responses from the respondent and the complainant.
(3) A proposed statement of fact.
(4) Proposed responsibility determinations.

21

(5) A rationale for the finding of fact and responsibility determinations.

**ANSWER:**     Defendant admits that Section 3(e) concerns the Final Investigative Report, and

admits the allegations in the second sentence of Paragraph 57. Defendant denies the remaining

allegations in Paragraph 57.

58.     The "Final Investigative Report" is controlled entirely by the investigators, contains hearsay, and unduly influences findings of fact and responsibility determinations by the Panel of members of the Subcommittee on Sexual Misconduct.

**ANSWER:**     Defendant denies the allegations in Paragraph 58.

59.     Section 4 provides for "Panel Adjudication." The section does not provide for a hearing. Further, this section does not provide for presentment of student testimony or of evidence.

**ANSWER:**     Defendant admits the allegation in the first sentence of Paragraph 59. Defendant

also admits that Section 4 does not provide for students to appear in person before the Panel to

present testimony or evidence, but denies the allegation that students' testimony and/or evidence

is not presented to the Panel, and denies any remaining allegations in Paragraph 59.

60.     Section 4a provides for the "Appointment of Panel." Section 4a provides, *inter alia*, for the Executive Director, Justine M. Brown, to appoint a "Panel" "composed of three members of the Subcommittee on Sexual Misconduct, a pool of trained university faculty, students, and staff members. Before the membership of this Panel is finalized, OSCR will provide both the respondent and the complainant with a list of all members of the Subcommittee on Sexual Misconduct." The respondent and complainant may challenge the objectivity of any "Panel" person. "At least one faculty member and one student must be appointed to each Panel," and then the "voting Panel members will select a faculty member to serve as Chair."

**ANSWER:**     Defendant admits the allegations in the first sentence of Paragraph 60. Defendant

admits that Section 4(a) contains the language quoted in the second, fourth, and fifth sentences of

Paragraph 60, as well as the statements that "[b]efore the membership of [the] Panel is finalized,

OSCR will provide both the respondent and the complainant with a list of all members of the

Subcommittee on Sexual Misconduct," and "the respondent and complainant may challenge the

objectivity of any person on this list." Defendant denies that Paragraph 60 fully or accurately

22

quotes or summarizes the provisions of Section 4(a) and denies all remaining allegations in Paragraph 60.. Answering further, Defendant states that the Director of OSCR is Justin M. Brown.

61.     Section 4a further provides, *inter alia*, that "[p]rior to serving on a Panel, all Panel members will have received appropriate annual training, developed in consultation with the university's Title IX Coordinator, on sexual harassment, sexual assault, sexual exploitation, stalking, dating violence, domestic violence, and the physiological and psychological effects of trauma."

**ANSWER:**     Defendant admits that Section 4(a) includes, *inter alia*, the language quoted in Paragraph 61.

62.     Section 4b provides for "Panel Review of Investigative Report." Section 4b states that "Panel members will have five business days to review the Final Investigative Report." This is the same "Final Investigative Report" over which the investigators have final control.

**ANSWER:**     Defendant admits the first and second sentences of Paragraph 62 but denies the third sentence of Paragraph 62.

63.     No hearing is provided for the complainant and the respondent to present their testimony or evidence to the "Panel."

**ANSWER:**     Defendant admits that Section 4 does not provide for a formal hearing in which the complainant or the respondent appear in person before the Panel to present testimony or evidence, but denies any allegation that the complainant and respondent's testimony and evidence is not presented to the Panel, and denies any remaining allegations in Paragraph 63.

64.     Section 4c provides for "Panel Questioning." Section 4c states:

"After the Panel members have reviewed the Final Investigative Report, the Panel will meet with and question the investigators. The Panel will be advised by the Executive Director or her/his designee, who will not be allowed to vote. If the Chair determines that the Panel requires additional guidance, the Panel may consult with ODEA or the Office of University Counsel."

**ANSWER:**     Defendant admits the allegations in Paragraph 64.

23

65.    Section 4d provides for "Panel Deliberation." Section 4d provides, *inter alia*, that after the Panel questions the investigators, the Panel will "excuse the investigators and enter into closed deliberation." Further, non-voting members, including the Executive Director, will remain for deliberation. Moreover, "The Panel will make its decisions by simple majority vote and will apply the preponderance of the information standard when deciding on a statement of fact and determining responsibility."

**ANSWER:**    Defendant admits the allegations in Paragraph 65.

66.    Section 4d1 provides that the Panel may "[a]ccept the recommendations and rationale of the investigators set forth in the Final Investigative Report." The Panel, therefore, may accept the hearsay report of the investigator who controls the hearsay testimony entered into the "Final Investigative Report."

**ANSWER:**    Defendant admits the first sentence of Paragraph 66 and denies the second sentence of Paragraph 66.

67.    Section 4d2 also allows the Panel to reject the recommendations of the investigators.

**ANSWER:**    Defendant admits the allegations of Paragraph 67 but denies that Paragraph 67 fully and accurately quotes or summarizes Section 4(d)(2).

68.    Section 4d3 also allows the Panel to collect additional information before reaching a decision.

**ANSWER:**    Defendant admits the allegations of Paragraph 68 but denies that Paragraph 68 fully and accurately quotes or summaries Section 4(d)(3).

69.    Section 4e provides for "Sanctions." Section 4e provides, *inter alia*, that the "Panel must provide a written rationale for all sanctions, conditions, and restrictions."

**ANSWER:**    Defendant admits the allegations in Paragraph 69.

70.    Section 4f provides for "Notice of Action Taken." Section 4f states, "OSCR will provide written notification of the Panel's decision, including rationales, to both the respondent and the complainant by the end of the next business day. This notification will also include information regarding the respondent's and complainant's right to appeal the Panel's decision."

**ANSWER:**    Defendant admits the allegations in Paragraph 70.

71.    Section 5 provides for "Appeal Procedures."

**ANSWER:**    Defendant admits the allegations in Paragraph 71.

24

72.     Section 5a provides for "Who May Appeal."

**ANSWER:**     Defendant admits the allegations in Paragraph 72.

73.     Section 5b provides for "Grounds for Appeal." Among the grounds for appeal, include, but are not limited to, inappropriate sanctions and new substantive information.

**ANSWER:**     Defendant admits the allegations in Paragraph 73.

74.     Section 5c provides for "Notice of Appeal."

**ANSWER:**     Defendant admits the allegations in Paragraph 74.

75.     Section 5d provides for "Content of Notice of Appeal."

**ANSWER:**     Defendant admits the allegations in Paragraph 75.

76.     Section 5e provides for "Sanction Held in Abeyance Pending Appeal." Section 5e provides, *inter alia*, that the "effective date of any formal or educational sanction will be held in abeyance automatically during the period in which the appeal may be filed and, once an appeal is filed, until the committee reaches a decision on the appeal..."

**ANSWER:**     Defendant admits the allegations in Paragraph 76.

77.     Section 5f provides for "Appellate Review."

**ANSWER:**     Defendant admits the allegations in Paragraph 77.

78.     Section 5g provides for "Deliberations."

**ANSWER:**     Defendant admits the allegations in Paragraph 78.

79.     Section 5h provides for "Authority of the Appeal Committee."

**ANSWER:**     Defendant admits the allegations in Paragraph 79.

80.     Section 5i provides for "Notice of Decision."

**ANSWER:**     Defendant admits the allegations in Paragraph 80.

81.     Section 6 provides for "Petitions to the Subcommittee on Sexual Misconduct."

**ANSWER:**     Defendant admits the allegations in Paragraph 81.

82.     Section 7 provides for "Role of the Title IX Coordinator in the Student Discipline System."

**ANSWER:**     Defendant admits the allegations in Paragraph 82.

25

D.    **Agreements, Representations, Covenants & Warranties Between John and Board of Trustees**

83.    John applied and was accepted to the University's class of 2019.

**ANSWER:**    Defendant admits the allegations in Paragraph 83.

84.    Upon John's acceptance to the University, the Defendant provided Plaintiff copies of its school policies, including the Code, Policy, Appendix D, and the Student Disciplinary Procedures of which are available on the University's website. These Defendant policies set forth the procedures by which students who have been accused of violating one or more of the enumerated policies are investigated, heard, and possibly, disciplined.

**ANSWER:**    Defendant admits that the University's policies, including the Student Code, which includes the University's Sexual Misconduct Policy, and the University's Student Disciplinary Procedures, including Appendix D to those Procedures, are available on the University's website and that Plaintiff had access to these documents before and after he applied to and was accepted by the University. Defendant admits that the Student Disciplinary Procedures set forth the procedures for addressing violations of the Student Code and Appendix D to those Procedures sets forth procedures for investigating and resolving cases that involve an accusation of sexual misconduct against a student. Defendant denies the remaining allegations in Paragraph 84.

85.    The Code provides the following Preamble, §1-101:

    a.    A student at the University of Illinois at the Urbana-Champaign campus is a member of a University community of which all members *have at least the rights and responsibilities common to all citizens*, free from institutional censorship; *affiliation with the University as a student does not diminish the rights or responsibilities held by a student* or any other community member as a citizen of larger communities of the state, the nation, and the world. (Emphasis added).

    b.    Any rules or regulations considered necessary to govern the interaction of the members of the University community are intended to reflect values that community members must share in common if the purpose of the community to advance education and to enhance the educational development of students is to be fulfilled. These values include the *freedom to learn*, free and open expression within limits that do not interfere with the rights of others, free and

26

disinterested inquiry, intellectual honesty, sustained and independent search for truth, the exercise of critical judgment, respect for the dignity of others, and personal and institutional openness to constructive change. *The following enumeration of rights shall not be construed to deny or disparage other rights retained by these individuals in their capacity as members of the campus community or as citizens of the community at large*. (Emphasis added).

**ANSWER:**   Defendant admits the allegations in Paragraph 85.

86.   The Code does not allow the Defendant to deny John's Due Process rights in liberty and property to learn as a student and a citizen of the community at large. Further the Code does not allow the Defendant to even diminish the Due Process rights held by a student or a citizen of the community. The freedom to learn is a right to continuing education that cannot be taken by government without Due Process.

**ANSWER:**   Defendant denies the allegations in Paragraph 86.

87.   The Code provides the following Privacy Rights, §1-104, in relevant part: "(a) Members of the University community have the same rights of privacy as other citizens and surrender none of those rights by becoming members of the academic community...". The right to privacy is a liberty right protected by Due Process of the Fourteenth Amendment to the U.S. Constitution. See attached true and correct copy of the Code §1-104 Privacy attached hereto as Exhibit "C".

**ANSWER:**   Defendant admits that Section 1-104 of the Student Code contains, *inter alia*, the language quoted in Paragraph 87 and that Exhibit C to the Amended Complaint is a true and correct copy of Section 1-104 of the Code. Defendant denies the remaining allegations in Paragraph 87.

88.   The Student Disciplinary Procedures Section 1.01 — History, provides and represents in relevant part, "The Trustees asserted their belief in the concept that the university disciplinary system shall be separate from, but coexistent with, general systems established by society to deal with the conduct of citizens of society." The general systems established by society when being accused of rape is to provide a formal hearing for the accused, to allow the accused to attend that formal hearing, to allow the accused to testify at that hearing, to allow the accused to confront his accusers during the hearing and to allow an attorney to represent the accused at that hearing. The procedures in Appendix D are not coexistent with general systems established by society when someone is accused of rape. The procedures do not afford the constitutional minimum of a right of the accused to attend a hearing, to testify at that hearing and to confront or cross-examine his accusers and to be represented by an attorney. See attached true and correct copy of the Student Disciplinary Procedures Section 1.01-1.04 attached hereto as Exhibit "D".

CHI-108444-v1

**ANSWER:**    Defendant admits that Section 1.01 of the Student Disciplinary Procedures, History, contains, *inter alia*, the language quoted in Paragraph 88 and that Exhibit D to the Amended Complaint is a true and correct copy of Sections 1.01-1.04 of the Student Disciplinary Procedures. Defendant admits that criminal trials for crimes such as rape generally include procedural protections including cross-examination and attorney advocacy, but denies that the same protections and procedures that apply to a criminal trial apply to the University's internal disciplinary proceedings. Defendant denies the remaining allegations in Paragraph 88.

89.    The Student Disciplinary Procedures Section 1.02 — Philosophy, provides and represents in relevant part, "The community supports each member's right to study and work in a quiet, respectful, non-violent atmosphere that is conducive to the pursuit and acquisition of knowledge". The right to study is a right to continuing education that cannot be taken by government without Due Process. See Exhibit "D".

**ANSWER:**    Defendant admits that Section 1.02 of the Student Disciplinary Procedures, Philosophy, contains, *inter alia*, the language quoted in Paragraph 89 and that Exhibit D to the Amended Complaint is a true and correct copy of Sections 1.01-1.04 of the Student Disciplinary Procedures. Defendant denies the remaining allegations in Paragraph 89.

90.    The Student Disciplinary Procedures Section 1.04 — Nature of System, provides and represents in relevant part, "Our disciplinary system is not intended to be adversarial in nature and is substantially less formal than a court of law. The majority of cases, in which severe sanctions are not likely to be considered, can and should be handled informally". Therefore, the converse is also true; i.e., in a case in which severe sanctions are likely to be considered, such as being expelled from the University because of a claim of rape, can and should be handled formally. A formal procedure requires, at minimum, the right of the accused to attend a hearing, to testify at the hearing, to confront his accusers at the hearing and to be represented by counsel. See Exhibit "D".

**ANSWER:**    Defendant admits that Section 1.04 of the Student Disciplinary Procedures, Nature of System, contains, *inter alia*, the language quoted in Paragraph 90 and that Exhibit D to the Amended Complaint is a true and correct copy of Sections 1.01-1.04 of the Student Disciplinary Procedures. Defendant denies the remaining allegations in Paragraph 90.

91.    The Code, Policy, Appendix D, and the Student Disciplinary Procedures afforded rights to John in a property right in continuing education and protected liberty interest in good name and reputation.

**ANSWER:**    Defendant denies the allegations in Paragraph 91.

92.    The Defendant represented to John through its Code, Policy, Appendix D, and the Student Disciplinary Procedures that John's property right to education, learning, and studying would not be dismissed from the University without following its specified procedures. The Defendant further represented that his Due Process rights would not be denied or diminished.

**ANSWER:**    Defendant denies the allegations in Paragraph 92.

93.    John accepted these aforementioned representations and covenants from Defendant and paid his tuition to Defendant for both years as a student at the University. An agreement and implied contract was formed between John and Defendant to not dismiss John from the University without Due Process regarding his rights to continued education and liberty in good name and reputation.

**ANSWER:**    Defendant denies the allegations in Paragraph 93.

94.    The agreements, representations, and covenants between John and Defendant do not disclaim that the Code, Policy, Appendix D, and the Student Disciplinary Procedures do not form an implied contract between John and Defendant.

**ANSWER:**    Defendant denies the allegations that the Code, Policy, Appendix D, and the Student Disciplinary Procedures form an implied contract between Plaintiff and Defendant, and denies the remaining allegations in Paragraph 94.

### E.    The Investigation Conducted by the Defendant was Woefully Inadequate and Fundamentally Flawed

95.    On December 13, 2016, at 4:36 p.m., John received an email from January Boten, Assistant Dean, and Investigator from the University. The email was titled, "UIUC Disciplinary Update: Charge Notice — IMPORTANT" ("December 13 Email").

**ANSWER:**    Defendant lacks knowledge or information sufficient to admit or deny the allegation of the specific time on December 13, 2016 that Plaintiff received Dean Boten's email and therefore denies it, but admits the remaining allegations in Paragraph 95.

96.    Upon initially reading the December 13 Email at approximately 7:00 p.m., and without reading a majority of the email's content, John text messaged a small snapshot of the December 13 Email to Jane. John was shocked and surprised by the email.

**ANSWER:**   Defendant admits that on December 13, 2016, Plaintiff sent a text message of a portion of the December 13 Email to Jane. Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 96 and therefore denies them.

97.   Then John continued to read the December 13 Email and came upon the second half of the email. John read the no contact provision and immediately sent a text to Jane approximately one to two minutes after his first text message. He informed Jane that he was not supposed to contact her. John never contacted Jane, in any form, after the aforementioned.

**ANSWER:**   Defendant admits that after sending a portion of the December 13 Email to Jane, Plaintiff sent Jane three additional texts that stated: "Oh wait"/"Pretend you didn't see this message"/"Just saw that I'm not suppose [sic] to have any contact with you". Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 97 and therefore denies them.

98.   The December 13 Email informed John that the OSCR "received information in which it is alleged that on December 4, 2016, you were involved in an incident which may violate" the Code. The email further informed John of the approximate time, date, place, and type of incident.

**ANSWER:**   Defendant admits the allegations in Paragraph 98.

99.   The December 13 Email informed John of the following charges: Student Code/1-302.b.1 as defined by § 1-111(c)(2)(a), and Student Code/1.-302.b.1 as defined by § 1-111 (c)(2)(b)."

**ANSWER:**   Defendant admits the allegations in Paragraph 99.

100.   The December 13 Email informed John of the Code and that the Code may be accessed on its website at: http://www.conflictresolution.illinois.edu.

**ANSWER:**   Defendant admits the allegations in Paragraph 100.

101.   The December 13 Email noticed John to call the Assistant Dean "during normal business hours and no later than January 27, 2017, to arrange an appointment" with her.

**ANSWER:**   Defendant denies that the quoted language in Paragraph 101 is a complete and accurate quote of the referenced portion of the December 13 Email, but admits the remaining allegations in Paragraph 101.

102.    John received a subsequent email on December 14, 2016. The email was titled, "UIUC Disciplinary Update: Charge Notice — IMPORTANT" ("December 14 Email")

**ANSWER:**    Defendant admits the allegations in Paragraph 102.

103.    The December 14 Email noticed John to call the Assistant Dean to arrange an immediate appointment at 300 Student Services Building, 610 E. John Street, Champaign, IL. During the appointment, discussions would be made regarding the nature of the alleged incident and the appropriate University response. The email further noticed that John may bring an advisor to the appointment, however, the "advisor may not actively participate in" the discussion.

**ANSWER:**    Defendant admits the allegations in the first and third sentences of Paragraph 103. Defendant also admits that the December 14 email informed Plaintiff that "[d]uring this appointment, [he and Dean Boten would] discuss the nature of this incident and the appropriate University response."

104.    The December 14 Email noticed an additional charge of, "Student Code/1-302.0.1."

**ANSWER:**    Defendant admits that the December 14 Email notified Plaintiff that he had been charged with an additional charge of an alleged violation of Student Code Section 1-302(o)(1).

105.    The remaining parts of the December 14 Email are substantially similar to the December 13 Email.

**ANSWER:**    Defendant admits the allegations in Paragraph 105. Answering further, Defendant states that the December 13 and 14 emails were substantially similar in other respects, as the information set forth in Paragraph 98-101 was also contained in the December 14 Email, and the information set forth in Paragraph 103 was also contained in the December 13 Email.

106.    Soon after the December 14 Email, John contacted the Investigator to setup an appointment. John arrived at the appointment at the Assistant Dean/Investigator's office.

**ANSWER:**    Defendant admits that Plaintiff contacted Dean Boten's office to set up an appointment soon after the December 14 Email and that on December 19, 2016, Plaintiff met with Dean Boten at her office. Defendant denies the remaining allegations in Paragraph 106.

31

107.    At the appointment, the Investigator addressed the no contact policy issue with John. John informed the Investigator as to what occurred on December 13, 2016. After informing the Investigator of his hastiness, the Investigator did not request the text messages at issue. Further, John was told virtually nothing about the accusations Jane had made so that he could prepare a defense and suggest sources of information for Investigators to pursue. Rather, the Investigator informed John that they would resume discussions, however, as soon as possible.

**ANSWER:**    Defendant admits that the purpose of the meeting on December 19, 2016 was to

discuss Plaintiff's violation of the no contact order; and that at that meeting, Plaintiff explained

to Dean Boten that he had sent the text message to Roe on December 13 before fully reading the

December 13 Email and Dean Boten did not request the text message at issue from Plaintiff.

Answering further, Defendant states that prior to the December 19, 2016 meeting, Dean Boten

had received the text message at issue from Roe. Defendant denies the remaining allegations in

Paragraph 107.

108.    During the first few weeks of January 2017, John called the Investigator to set an appointment. The Investigator informed John of the next available date of January 19, 2017. The Investigator told John to come to her office and prepare to tell his side of the story. The Investigator further asked if John had told anyone about his story. John responded "No." The Investigator told John not to tell anyone, however she did not provide a reason.

**ANSWER:**    Defendant admits the allegations in first two sentences of Paragraph 108.

Defendant also admits that Dean Boten informed Plaintiff that the general purpose of the meeting

was to discuss the nature of the incident and generally asked Plaintiff if he had spoken to anyone

about the incident. Defendant denies the remaining allegations in Paragraph 108.

109.    On January 19, 2017, John was first interviewed regarding the allegations of December 4, 2016. During this interview, the Investigator, asked John questions regarding what occurred. Another individual was present taking notes of the interview. Using, in part, the notes of the other person in the room, the Investigator created the Initial Investigative Report. That same day, subsequent to meeting with the Investigator, an email was sent to John regarding the interview content. John reviewed the interview content and made corrections.

**ANSWER:**    Defendant admits the allegations in Paragraph 109.

110.    Further on February 27, 2017, John met with the Investigator to view the Initial Investigative Report. While reviewing the Initial Investigative Report, John discovered errors that included, but not limited to, typing errors, content errors, and some misunderstandings

CHI-108444-v1

between John and the Investigator. John corrected and made comments to approximately sixty-one (61) lines in the initial report. The report caused grave concern and confusion for John. The hearsay report was not sufficient to provide an accurate representation of John's true testimony.

**ANSWER:**    Defendant admits that on February 27, 2017, Plaintiff reviewed the Initial Investigative Report in the OSCR and submitted a written response to that report consisting of comments to approximately sixty lines of the report. Defendant lacks knowledge or information sufficient to admit or deny the allegation that "[t]he report caused grave concern and confusion for [Plaintiff]" and therefore denies it. Defendant denies the remaining allegations in Paragraph 110.

111.    On February 27, 2017, John was allowed to view the complainant's initial report and the other witnesses' reports.

**ANSWER:**    Defendant admits that on February 27, 2017, Plaintiff was allowed to review the Initial Investigative Report which contained, *inter alia*, the investigators' interviews with Plaintiff, Roe and other witnesses. Defendant denies the remaining allegations in Paragraph 111.

112.    On March 8, 0217 [sic], John was allowed to review a revised Investigative Report before sending the Investigative Report to the Subcommittee. Again, John discovered errors that included, but not limited to, typing errors, content errors, and some misunderstandings between John and the Investigator. John provided his revisions to the Revised Report which he made approximately thirty-eight (38) comments and corrections. Therefore, the Revised Report continued not to represent John's true testimony.

**ANSWER:**    Defendant admits that on March 8, 2017, Plaintiff reviewed the Revised Investigative Report in the OSCR and submitted a written response to that report consisting of approximately thirty-eight comments. Defendant denies the remaining allegations in Paragraph 112.

113.    On information and belief, John did not view Final Investigative Report that was sent to the Panel for adjudication. Further, on information and belief, the Panel was allowed to view the Initial Investigative Report and the Revised Report causing further confusion to the Panel's adjudication.

CHI-108444-v1

**ANSWER:**    Defendant admits that neither Plaintiff nor Jane reviewed the Final Investigative Report before it was provided to the Panel. Defendant denies the remaining allegations in Paragraph 113.

114.    "Appendix D" provisions of the "Student Disciplinary Procedures" does not allow for students to attend hearings. When John requested whether he could attend the hearing, the Investigator responded, "no honey, you just wait at home for the result email which will be sent within twenty-four hours of the hearing."

**ANSWER:**    Defendant denies any allegations that Appendix D provides for a formal "hearing" and admits that the procedures set forth in Appendix D do not provide for parties or witnesses to personally appear before the Subcommittee. Defendant denies the remaining allegations in Paragraph 114.

115.    The Investigator further wrote the Investigatory [sic] Report giving her conclusions that witnesses with no direct knowledge were more credible than both John and Jane.

**ANSWER:**    Defendant denies the allegations in Paragraph 115.

116.    John is not aware of what corrections were made to the Investigative Report before it was sent to the Subcommittee. John was not provided a fair opportunity to provide his testimony to a hearing.

**ANSWER:**    Defendant admits that pursuant to the University's procedures, neither Plaintiff nor Jane reviewed the Final Investigative Report before it was provided to the Subcommittee, but denies the allegation that Plaintiff was "not aware of what corrections were made to the Investigative Report before it was sent to the Subcommittee," as Plaintiff reviewed and provided written comments to both the Initial Investigative Report and Revised Investigative Report, and these written comments were included in the Final Investigative Report. Defendant denies the remaining allegations in Paragraph 116.

117.    During the interview process, the Investigators neglected John's expression and emotions while he was being interviewed. John felt as if he was speaking to a machine. These expressions and emotions were never conveyed in the Investigative Report.

CHI-108444-v1

**ANSWER:**    Defendant denies all allegations in Paragraph 117, except that Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in the second sentence of Paragraph 117.

118.    At no point in time, from the December 14 Email to March 28, 2017, did the Board provide John with email updates regarding the investigation, other than emails regarding viewing the initial and revised Investigative Report. John was otherwise left in the dark throughout the investigation.

**ANSWER:**    Defendant denies the allegations in Paragraph 118.

119.    On March 16, 2017, ninety-three (93) days subsequent to the December 13, 2016 "Charge Notice," and forty-eight (48) days after the duration contained in Section 2g of "Appendix D," John was provided inadequate notice of his hearing. The March 16, 2017, email was sent by January Boten, Assistant Dean/Investigator at 11:58 p.m. The email was titled "UIUC Disciplinary Update: Subcommittee Hearing Notice Announcement Notice — IMPORTANT" ("March 16 Email").

**ANSWER:**    Defendant admits that on March 16, 2017, Plaintiff received an email from Dean Boten that indicated it had been sent at 11:58 p.m. and had the subject "UIUC Disciplinary Update: Subcommittee Hearing Notice Announcement Notice – IMPORTANT." Defendant admits that March 16, 2017 is ninety-three days after December 13, 2016. Defendant denies the allegation that the Subcommittee's March 28, 2017 meeting was a formal "hearing" and denies the remaining allegations in Paragraph 119.

120.    The March 16 Email informed John that his case was scheduled to appear before the Subcommittee on Sexual Misconduct.

**ANSWER:**    Defendant admits the allegations in Paragraph 120.

121.    The March 16 Email further informed John that, "Your hearing is scheduled for March 28, 2017." The notice was inadequate as it did not provide a time or place of the hearing.

**ANSWER:**    Defendant admits that the March 16 Email contained the language quoted in Paragraph 121. Defendant denies the that the Subcommittee's March 28, 2017 meeting was a formal "hearing" and denies the remaining allegations in Paragraph 121.

CHI-108444-v1

122.    John was not allowed to attend his hearing to provide testimony or cross-examine witnesses.

**ANSWER:**    Defendant admits that pursuant to the University's policies and procedures, no parties or witnesses appeared or testified in person before the Subcommittee on March 28, 2017. Defendant denies that the Subcommittee's March 28, 2017 meeting was a formal "hearing" and denies the remaining allegations in Paragraph 122.   Further answering, pursuant to the University's procedures, Plaintiff had opportunity to submit questions for investigators to pose to Jane Doe and other witnesses but did not do so.

123.    The March 16 Email did inform John that he was allowed to appeal the decision that would be received by John the following day of the "hearing."

**ANSWER:**    Defendant admits that the March 16 Email informed Plaintiff that he "should receive a detailed decision letter from the advisor of the Subcommittee by the end of the business day following the hearing," and that both Plaintiff and Jane would have the opportunity to appeal the Subcommittee's decision. Defendant denies the remaining allegations in Paragraph 123.

124.    April is designated as Sexual Assault Awareness Month (SAAM). The goal of SAAM is to raise public awareness about sexual violence and to educate communities and individuals on how to prevent sexual violence. The University and the community annually plan a host of events. The University plans concerts, drives, talks, workshops, campaigns, meetings, walks, and more. The University plans to have as many individuals aware of the month and its SAAM goals.

**ANSWER:**    Defendant admits that in the United States, April is nationally designated as Sexual Assault Awareness Month; that according to the National Sexual Violence Resource Center, "the goal of SAAM is to raise public awareness about sexual violence and to educate communities and individuals on how to prevent sexual violence"; that the University and the community at large annually plan events during Sexual Assault Awareness Month; and that the events planned for SAAM in 2017 included a concert, a pledge drive, panel discussions,

workshops, and walks, among other events. Defendant denies all remainng allegations in Paragraph 124.

125.    The Panel was aware of SAAM which was to occur three days after the closed-door hearing on Jane's allegations against John.

**ANSWER:**    Defendant admits that the Subcommittee met on March 28, 2017 to consider the charges against Plaintiff, and that April 1, the beginning of the nationally designated Sexual Assault Awareness Month, is four days after March 28. Defendant lacks knowledge or information sufficient to admit or deny the allegation that the Panel was aware of SAAM and therefore denies it.  Defendant denies the remaining allegations in Paragraph 125.

126.    Neither John, Jane, nor any other witness were allowed to attend the closed-door hearing. The Panel made its decision solely on the hearsay Final Investigative Report and the Investigators.

**ANSWER:**    Defendant admits that pursuant to the University's policies and procedures, the Subcommittee did not exist for witnesses to appear to present testimony or evidence and that no parties or witnesses appeared or testified in person before the Subcommittee on March 28, 2017. Defendant denies that the Subcommittee's March 28, 2017 meeting was a formal "hearing" and denies the remaining allegations in Paragraph 126.

127.    On March 28, 2017, John received an email from the Executive Director, Justine M. Brown. The email was titled "UIUC Disciplinary Update: Subcommittee Decision Notification" ("March 28 Email").

**ANSWER:**    Defendant denies that Paragraph 127 correctly identifies the sender of the March 28 Email, and answering further, states that the email was sent by Justin M. Brown, the Director of OSCR. Defendant admits the remaining allegations in Paragraph 127.

128.    Based on the Investigator's deeply skewed and incomplete findings, the Subcommittee concluded facts regarding John and Jane's December 4, 2016, night. The Subcommittee further concluded that after John walked Jane back to his apartment, Jane "was incapacitated at the time of the sexual activity and so could not consent." This is at odds with Jane walking with John back to his apartment. No further findings of alcohol consumption were made. The Subcommittee further concluded that John had received oral sex from Jane, vaginal

37

sex with Jane and that Jane was "incapacitated at the time of the sexual activity and so could not consent." Additionally, the Subcommittee concluded that after John had received the "charge letter and no contact directive from Dean Boten on December 13, you took a screen shot of the email and sent it in a text to the complainant."

**ANSWER:**    Defendant admits that on March 28, 2017, the Subcommittee on Sexual Misconduct met regarding the charges against Plaintiff, examined all information presented regarding those charges, and made findings including the following, which were communicated to Plaintiff in the March 28 Email:

> On December 3, 2016, [Plaintiff] met [Jane] and her friend at a local bar. [Jane] had already been drinking when she met up with [Plaintiff], and she continued to drink in [Plaintiff's] presence. Later that evening, [Jane's] friend was planning to walk [Jane] home, but [Plaintiff] convinced them to let [Plaintiff] walk her home by saying that [Jane] was [Plaintiff's] best friend's girlfriend and that [Plaintiff] wouldn't do anything to her. [Plaintiff] then took [Jane] back to [Plaintiff's] apartment, where [Plaintiff] had oral and vaginal sex with her. [Jane] was incapacitated at the time of the sexual activity and so could not consent. After [Plaintiff] received the charge letter and no contact directive from Dean Boten on January 13, [Plaintiff] took a screen shot of the email and sent it in a text to [Jane].

Defendant denies the remaining allegations in Paragraph 128, including the insinuation that a woman who has consumed large amounts of alcohol but is able to walk must possess a mental state lacking incapacitation and thus be capable of consenting to sexual activities under University policy.

129.    Based on the findings the Subcommittee determined that John violated all alleged Codes from the December 14 Email.

**ANSWER:**    Defendant admits the allegations in Paragraph 129.

130.    The Subcommittee further provided its rationale for the decision. The rationale provided, *inter alia*, that the Subcommittee relied on the hearsay statements contained in the "Final Investigative Report."

**ANSWER:**    Defendant admits the first sentence in Paragraph 130 and denies the second sentence in Paragraph 130.

38

131.    The rationale also made credibility determinations of John that his statements were not credible. The credibility determinations were made without the presence and testimony of John to the Subcommittee.

**<u>ANSWER</u>:**    Defendant admits that the Subcommittee provided the rationale for its findings and determination that Plaintiff violated three sections of the Student Code, and that this rationale included the following statement:

> Regarding penetration, the respondent claimed that he did not penetrate the complainant, but we do not find this statement to be credible. The complainant stated that she was penetrated in two different positions, and BK stated that the respondent told him that he had had sex with the complainant.

Defendant admits that the University's policies and procedures do not provide for a formal hearing in which the complainant or the respondent appear in person before the Panel to present testimony, but denies the allegation that Plaintiff's testimony and evidence was not presented to or considered by the Subcommittee, and denies the remaining allegations in Paragraph 131.

132.    The Subcommittee assigned the following sanctions:

a. Dismissal. Start Date: Tuesday, March 28, 2017. Dismissal records are maintained indefinitely and are noted on John's transcript. John is prohibited from attending or receiving a degree from the University until John successfully petitions the Subcommittee to pursue readmission. To be eligible for a petition hearing, John must complete the following:

   i. Petition Letter, Academic/Work History, Mandated Service of 250 hours, and a Research Paper of 3,000 words.

b. Trespass Notification to be excluded from the property.

c. No Contact Directive with Jane until John's degree is conferred.

d. John may request a petition hearing in Spring 2019 for possible readmission in Fall 2019.

e. The Subcommittee found that the sexual assault was premeditated and because the case also includes a violation of the no contact directive, the Subcommittee issued a 2.5-year dismissal. The SCSD provided guidance to the Subcommittee to consider a two-year dismissal.

39

**ANSWER:**    Defendant admits that the Subcommittee assigned the sanctions of (1) Dismissal, (2) Trespass Notification (exclusion from University property during the period of his dismissal), and (3) No Contact Directive (no contact with Jane until Plaintiff's degree is conferred). Defendant admits that Plaintiff was dismissed from the University effective March 28, 2017; that dismissal records are maintained indefinitely and noted on Plaintiff's transcript; that Plaintiff is prohibited from attending or receiving a degree from the university until he successfully petitions the Subcommittee to pursue readmission; that Plaintiff may request a petition hearing in Spring 2019 for possible readmission in Fall 2019; and that to be eligible for a petition hearing, Plaintiff must complete a petition letter, submit evidence of successful academic work at another institution and/or work history, complete 250 hours of Mandated Service at a charitable, educational, or not-for-profit agency, and write a 3000-word research paper on sexual consent, including the role of alcohol and other drugs. Defendant admits that the Subcommittee provided the following rational for its decision to dismiss Plaintiff for 2.5 years:

> According to the guidance provided to us by the Senate Committee on Student Discipline, we are to consider a two-year dismissal for sexual assault that includes penetration. However, because the evidence in this case supports a conclusion that the assault was premeditated and because this case also includes a violation of the no contact directive, itself a violation worthy of dismissal, we believe a 2.5-year dismissal to be more appropriate.

> Defendant denies the remaining allegations in Paragraph 132.

133.    The March 28 Email further provided that John may appeal to the SCSD no later than 5 p.m. on April 4, 2017.

**ANSWER:**    Defendant admits the allegations in Paragraph 133.

134.    John appealed the Subcommittee decision by the required date of April 4, 2017. John also typed an Appeal Report that provided new information that witnesses' reports were incorrect. John's Appeal Report indicated multiple errors with the purported facts, statements that were made by others, and statements made by John. For instance, John provided new documented evidence that an adverse witnesses statements were inaccurate. The inaccurate statement was a basis for the Board's finding that Jane was incapacitated. John also provided

new documented text message evidence demonstrating his hastiness in texting Jane and immediately correcting his action. The new text message evidence demonstrated the excessive sanction issued to John. John was not provided a fair opportunity to be heard where the hearsay statements provided to the Panel were incorrect.

**ANSWER:**    Defendant admits the allegations in the first sentence of Paragraph 134. Defendant

denies the remaining allegations in Paragraph 134.

135.    The six-month violation for the No Contact Directive was overly harsh. John's hasty contact was not willful, and John never contacted Jane after the incident.

**ANSWER:**    Defendant denies the allegations in the first sentence of Paragraph 135. Defendant

lacks knowledge or information sufficient to admit or deny the allegations in the second sentence

of Paragraph 135 regarding Plaintiff's mental state, and therefore denies them.  Defendant denies

the remaining allegations in Paragraph 135.

136.    After the March 28, 2017 findings of Johns "premeditated" sexual assault, John was allowed to be on campus, go to classes, and interact with students. John was part of the University community and no further allegations or issues occurred while John continued campus life.

**ANSWER:**    Defendant admits that the Subcommittee found that the evidence in Plaintiff's

case supported a conclusion that Plaintiff's assault against Jane was premeditated, and that

Plaintiff was allowed to remain on campus and attend classes while his appeal of the

Subcommittee's findings was pending. Defendant lacks knowledge or information sufficient to

admit or deny the allegations that Plaintiff "interact[ed] with students" and "was part of the

University community" while his appeal was pending and therefore denies them. Defendant also

admits only that the University was not made aware of any further issues with Plaintiff's conduct

or allegations of misconduct during the time his appeal was pending. Defendant lacks knowledge

or information sufficient to admit or deny whether any "further allegations or issues occurred" of

which it was not made aware, and therefore denies these allegations. Defendant denies the

remaining allegations in Paragraph 136.  Further answering, Defendant states that University

41

policies provide that for students who appeal findings of responsibility and/or sanctions, sanctions relating to such findings are delayed until a student's appeal is decided.

137.    On April 25, 2017, the University sent John an email titled, "UIUC Disciplinary Update — Appeal Decision Letter." After providing new information and corrections in his Appeal Report, the SCSD found that none of the criteria for the appeal were substantially met. The SCSD reaffirmed the March 28, 2017, decision.

**ANSWER:**    Defendant admits the first sentence in Paragraph 137. Defendant admits that after a complete examination of Plaintiff's written appeal and the record of the case, the SCSD concluded that none of the criteria for appeal were substantially met, and affirmed the Subcommittee's original March 28, 2017 decision. Defendant denies the remaining allegations in Paragraph 137.

138.    John was suddenly dismissed from the University on April 25, 2017.

**ANSWER:**    Defendant admits that Plaintiff was dismissed from the University on April 25, 2017, but denies that the dismissal was "sudden" and denies all remaining allegations in Paragraph 138.

## COUNT I
## DEPRIVATION OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS (Due Process and Equal Protection); UNDER COLOR OF LAW, 42 USC Sec.'s 1983, 1985, 1988

139.    Plaintiff repeats, re-alleges and incorporates by reference, the allegations in aforementioned paragraphs with the same force and effect as if herein set forth.

**ANSWER:**    Defendant repeats its answers to each and every allegation above as its Answer to Paragraph 139.

140.    The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

**ANSWER:**    Defendant admits the allegations in Paragraph 140.

141.    A person has a protected liberty interest in his good name, reputation, honor, and integrity, of which he cannot be deprived without due process.

**ANSWER:**    Defendant denies the allegations in Paragraph 141

42

142.    A person has a protected property interest in pursuing his education, as well as in future educational and employment opportunities and occupational liberty, of which he cannot be deprived without due process.

**ANSWER:**    Defendant denies the allegations in Paragraph 142.

143.    Plaintiff's constitutionally protected property interest in his continued enrollment at the University and to be free from arbitrary dismissal arises from the policies, courses of conduct, practices, and understandings established by the Defendant.

**ANSWER:**    Defendant denies the allegations in Paragraph 143.

144.    Plaintiff's constitutionally protected property interest further arises from the express and implied contractual relationship between Defendant and Plaintiff.

**ANSWER:**    Defendant denies the allegations in Paragraph 144.

145.    It is well established that Fourteenth Amendment due process protections are required in the higher education disciplinary proceedings.

**ANSWER:**    Defendant denies the allegations in Paragraph 145.

146.    Thus, a person who has been admitted to a university, and who has paid tuition to that university, has a protected property interest in continuing his education at that university until he has completed his course of study. The state cannot deprive a person of this interest without due process.

**ANSWER:**    Defendant denies the allegations in Paragraph 146.

147.    As a result, if Plaintiff as a University student faced disciplinary action that included the possibility of suspension or dismissal, if found responsible for alleged sexual misconduct, then the Due Process provisions of the Fourteenth Amendment to the United States Constitution applied to the disciplinary process Defendant used.

**ANSWER:**    Defendant denies the allegations in Paragraph 147.

148.    Defendant, as a public university, has an absolute duty to provide its students equal protection and due process of law by and through any and all policies and procedures set forth by the Defendant.

**ANSWER:**    Defendant denies the allegations in Paragraph 148.

149.    Plaintiff had made exceptional academic progress and had obeyed all institutional rules when he was wrongly suspended from Defendant.

**ANSWER:**    Defendant denies the allegations in Paragraph 149.

CHI-108444-v1

150.    Under both federal and state law, Plaintiff had a constitutionally protected property interest in continuing his education at the University.

**ANSWER:**    Defendant denies the allegations in Paragraph 150.

151.    Plaintiff was entitled to process commensurate with the seriousness of the allegations and the potential discipline, sanctions, and repercussions he was facing. The allegations, in this case, resulted in a sanction that will have lifelong ramifications for Plaintiff, and are quasi-criminal in nature.

**ANSWER:**    Defendant denies the allegations in Paragraph 151.

152.    Plaintiff was entitled to fundamentally fair procedures to determine whether he was responsible for the alleged sexual misconduct.

**ANSWER:**    Defendant admits that Plaintiff was entitled to fair procedures to determine whether he was responsible for the alleged sexual misconduct and denies the allegations in Paragraph 152 to the extent they assert that the procedures applied to the charges against Plaintiff were not fundamentally fair.

153.    In the course of such investigation and adjudication, Defendant flagrantly violated Plaintiff's clearly established rights under the Due Process Clause of the Fourteenth Amendment through Defendant's repeated acts of deprivation of the minimal requirements of procedural fairness, due in part to undue influence by the Defendants.

**ANSWER:**    Defendant denies the allegations in Paragraph 153.

154.    Upon information and belief, Defendant was pressured by the Department of Education into complying with the Title IX investigative and adjudicatory process mandated by the 2011 Dear Colleague Letter and by subsequent federal actions, statements, and directives.

**ANSWER:**    Defendant denies the allegations in Paragraph 154.

155.    Upon information and belief, Defendant was further pressured to make an example out of Plaintiff for the upcoming Sexual Assault Awareness Month (SAAM) that occurred days after the "sham" hearing occurring outside the presence of Plaintiff.

**ANSWER:**    Defendant denies the allegations in Paragraph 155.

156.    The Defendant deprived Plaintiff of his liberty and property interests without affording him basic due process, including, but not limited to, his right to a fair adjudication, to a meaningful opportunity to be heard, to adequate notice, time, and place of a hearing, to a hearing, to secure counsel for the hearing, to question his accuser, to challenge the credibility of other adverse witnesses, and to present evidence and witnesses in support of his defense. Rather

CHI-108444-v1

than investigate what occurred on December 4, 2016, Defendant conducted a superficial investigation while having full control as what is presented to the Panel for adjudication of the charges against Plaintiff.

**ANSWER:**     Defendant denies the allegations in Paragraph 156.

157.    In attempting to demonstrate Defendant's compliance with the 2011 Dear Colleague Letter, the Defendant subjected Plaintiff to an insufficient process when they failed to provide Plaintiff with a fair and reasonable opportunity to defend himself and arrived at a predetermined, arbitrary and unwarranted decision tainted by SAAM.

**ANSWER:**     Defendant denies the allegations in Paragraph 157.

158.    As a result, Defendant failed to provide Plaintiff with the basic due process protections that Defendant is required to provide students accused of sexual misconduct and faced with expulsion.

**ANSWER:**     Defendant denies the allegations in Paragraph 158.

159.    Defendant, as well as other agents, representatives, and employees of the University were acting under color of state law when they showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.

**ANSWER:**     Defendant denies the allegations in Paragraph 159.

160.    Defendant, as well as other agents, representatives, and employees of the University agreed to, approved, and ratified this unconstitutional conduct.

**ANSWER:**     Defendant denies the allegations in Paragraph 160.

161.    As a result of these due process violations, Plaintiff continues to suffer ongoing harm, including damages to his reputation and other non-economic and economic damages. Plaintiff is unable to transfer to a comparable undergraduate institution because of the erroneous disciplinary finding. His lifelong goal of becoming of pursuing accounting and finance has been shattered.

**ANSWER:**     Defendant denies the allegations in Paragraph 161.

162.    As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages to his person and reputation, including, without limitation, emotional distress, loss of educational, academic and career opportunities, economic injuries and other direct and consequential damages.

**ANSWER:**     Defendant denies the allegations in Paragraph 162.

163.     Plaintiff is entitled to injunctive relief as a result of the depravation of his due process and equal protection rights. Preliminary injunctive relief should return the *status quo* before the controversy at issue, with Plaintiff being enrolled at the University.

**ANSWER:**     Defendant denies the allegations in Paragraph 163.

164.     Further, injunctive relief to provide Plaintiff with a hearing conforming with his due process and equal protection rights is proper. Plaintiff is entitled to have a hearing affording him his rights under the law. In contrast, the University can have no legitimate interest in failing to provide an impartial hearing, confirming to the law and the rights that are afforded to persons under the law.

**ANSWER:**     Defendant denies the allegations in Paragraph 164.

165.     In addition, however, money damages are inadequate in that money damages will not adequately and fully compensate the Plaintiff for the loss of time in obtaining his education, the inability to enroll in a comparable university and he damage to his reputation, among other things. Further, money damages may not be available due to the Eleventh Amendment to the Constitution.

**ANSWER:**     Defendant denies the allegations in Paragraph 165.

166.     Further, the harm to Plaintiff is irreparable. Without injunctive relief, for example, the Plaintiff will always have a black mark on his record and the need to explain his at least two and one-half year absence from the University.

**ANSWER:**     Defendant denies the allegations in Paragraph 166.

## COUNT II
## DECLARATORY JUDGMENT

167.     Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

**ANSWER:**     Defendant repeats its answers to each and every allegation above as its Answer to

Paragraph 167.

168.     Defendant has committed numerous violations of Plaintiff's rights as alleged herein.

**ANSWER:**     Defendant denies the allegations in Paragraph 168.

169.     Plaintiff's future educational and career prospects have been severely damaged. Without appropriate redress, the unfair outcome will continue to cause irreversible damages to Plaintiff's future educational and employment prospects, with no end in sight.

**ANSWER:**     Defendant denies the allegations in Paragraph 169.

170.    As a result of the foregoing, there exists a justiciable controversy between the Plaintiff and Defendant with respect to the outcome, permanency, and future handling of Plaintiff's formal student record at the University.

**ANSWER:**     Defendant denies the allegations in Paragraph 170.

171.    By reason of the foregoing, Plaintiff requests, pursuant to 28 U.S.C. § 2201, a declaration that: (i) the outcome and findings made by Defendant be reversed; (ii) Plaintiff's reputation be restored; (iii) Plaintiff's disciplinary record be expunged; (iv) the record of Plaintiff's suspension from University be removed from his education file; (v) any record of the complaint against Plaintiff be permanently destroyed; (vi) Plaintiff be readmitted to the University for the Fall 2017 semester; (vii) Plaintiff be allowed to complete his Spring 2017 classes; and (viii) Defendant's rules, regulations, and guidelines are unconstitutional as applied.

**ANSWER:**     Defendant admits Plaintiff seeks the aforementioned relief but denies the University engaged in any wrongdoing, denies that Plaintiff is entitled to any relief, and denies all remaining allegations in Paragraph 171.

## COUNT III
## DECLARATORY JUDGMENT

172.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

**ANSWER:**     Defendant repeats its answers to each and every allegation above as its Answer to Paragraph 172.

173.    Based on the foregoing, Defendant created express and implied contracts when Plaintiff accepted an offer of admission to Defendant and paid the tuition and fees.

**ANSWER:**     Defendant denies the allegations in Paragraph 173.

174.    Based on the aforementioned facts and circumstances, Defendant breached expressed and/or implied agreements with Plaintiff.

**ANSWER:**     Defendant denies the allegations in Paragraph 174.

175.    Defendant committed several breaches of its agreements with Plaintiff during the investigation and hearing process. A non-exhaustive list of Defendants breaches include the following:

**ANSWER:**     Defendant denies the allegations in Paragraph 175.

47

176.    Defendant's Code, Policy, Appendix D, and the Student Disciplinary Procedures provided students property right to education, learning, and studying would not be dismissed from the University without following its specified procedures.

**ANSWER:**    Defendant denies the allegations in Paragraph 176.

177.    The Defendant's Policy further provided that students' Due Process rights would not be denied or diminished.

**ANSWER:**    Defendant denies the allegations in Paragraph 177.

178.    Defendant deprived Plaintiff of the opportunity to have any kind of hearing, despite the severity of the charges against him and the potentially devastating effects on his future academic and professional career.

**ANSWER:**    Defendant denies the allegations in Paragraph 178.

179.    Instead, Defendant subjected Plaintiff to one investigation which he was interviewed about the subject incident.

**ANSWER:**    Defendant admits that it conducted an investigation of the sexual assault charges against Plaintiff and that Plaintiff was formally interviewed once in connection with the University's investigation. Defendant denies the characterization of the investigation and interview in Paragraph 179 and denies the remaining allegations in Paragraph 179.  Further answering, and in accordance with University policy and procedures, Plaintiff was allowed an opportunity review and comment upon written summaries of all witness statements and other evidentiary material collected during the investigation of sexual assault charge against Plaintiff, Plaintiff reviewed all such witness statements and evidence, Plaintiff submitted responses to such information, and Plaintiff never submitted questions for investigators to pose to Jane Doe or other witnesses despite being advised of his opportunity to do so.

180.    Defendant did not allow Plaintiff to attend his hearing on the charges against him.

**ANSWER:**    Defendant admits that, pursuant to the University's policies and procedures, the Subcommittee does not exist for witnesses to appear in person to present testimony or evidence and that Plaintiff did not appear in person to present testimony or evidence before the

48

Subcommittee. Defendant denies the allegations that a formal "hearing" was held on the charges against Plaintiff and that Plaintiff was not "allow[ed]" to attend such a hearing. Defendant further denies any allegation that a formal hearing on the charges against Plaintiff was required, and denies the remaining allegations in Paragraph 180.  Further answering, the University states that, pursuant to the University's policies and procedures, Plaintiff had the opportunity to present his own statements and evidence during an investigation, to review all other witness statements and evidence collected during the investigation, to submit questions for investigators to ask of other witnesses (including Jane Doe), and to review and respond to multiple versions of the investigative report summarizing the information reviewed, findings, and conclusions resulting from the investigation.

181.    At no time was Plaintiff afforded the procedural guarantees that general accompany a hearing, such as the right to present witnesses and evidence, confront one's accuser, and challenge any witnesses against him, all before an impartial and objective factfinder.

**ANSWER**:    Defendant denies that the "procedural guarantees" set forth in Paragraph 181 were required or promised by the University, denies any allegation that the University did not follow its procedures with respect to the investigation and resolution of the charges against Plaintiff, and denies the remaining allegations in Paragraph 181.

182.    Defendant violated Plaintiff's fundamental right to liberty in his good name and reputation without hearing process.

**ANSWER**:    Defendant denies the allegations in Paragraph 182.

183.    Thus, Defendant violated the contract with Plaintiff when the failed to afford him a proper hearing on the charges against him.

**ANSWER**:    Defendant denies the allegations in Paragraph 183.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests judgment against Defendant as follows:

49

(i)      A preliminary and subsequent permanent injunction fully reinstating Plaintiff to the University, allowing him to enroll in classes, and allowing him to take the final examinations to complete his sophomore semester, as he would have had he not been unjustly barred from the University;

(ii)      Injunctive relief requiring the University to hold a proper hearing, with notice, allowing Plaintiff to be present at the hearing, to be represented by counsel, to present witnesses and other evidence, to cross-examine his accuser and to cross-examine any and all witnesses;

(iii)      On the second cause of action for declaratory judgment against the Defendant, a judicial declaration that (i) the outcome and findings made by Defendant be reversed; (ii) Plaintiff's reputation be restored; (iii) Plaintiff's disciplinary record be expunged; (iv) the record of Plaintiff's suspension from University be removed from his education file; (v) any record of the complaint against Plaintiff be permanently destroyed; (vi) Plaintiff be readmitted to the University for the Fall 2017 semester; (vii) Plaintiff be allowed to complete his Spring 2017 classes; and (viii) Defendant's rules, regulations, and guidelines are unconstitutional as applied;

(iv)      An award of Plaintiff's attorney's fees and costs; and

(v)      Awarding Plaintiff such other and further relief as the Court deems just, equitable and proper.

**ANSWER**:   Defendant admits that Plaintiff seeks the aforementioned relief but denies the University engaged in any wrongdoing and denies that Plaintiff is entitled to any relief.

CHI-108444-v1

## **AFFIRMATIVE DEFENSES**

1.      This Court lacks jurisdiction over Plaintiff's Amended Complaint and all purported causes of action set forth therein against Defendant the Board of Trustees of the University of Illinois pursuant to the Eleventh Amendment to the United States Constitution.

2.      Plaintiff's Amended Complaint and all purported causes of action set forth therein fail to allege facts sufficient to constitute a cause of action against Defendant and/or the University.

3.      The Amended Complaint and each claim set forth therein are barred because the conduct of Defendant and/or the University was consistent with all applicable laws and regulations.

4.      At all relevant times, Defendant and the University acted in good faith and had reasonable grounds to believe that their actions did not violate any federal or state statute, regulation, or common law.

5.      To the extent the Amended Complaint seeks to assert a claim for breach of contract, such a claim must be dismissed because Defendant and/or the University has fully performed and discharged any and all contractual duties, to the extent there is any contractual relationship between Plaintiff and Defendant and/or the University.

CHI-108444-v1

6.      If Plaintiff sustained injuries and incurred any expenses as claimed, those injuries and expenses were caused in whole or in part by his own acts or omissions.

7.      Neither Defendant nor the University caused any harm to Plaintiff.

8.      Plaintiff has failed to mitigate his alleged damages, if any.

9.      Defendant expressly reserves the right to rely upon any additional defenses that may become available or apparent during the proceedings in this matter and hereby reserves its right to amend its answer and assert any such defenses.


Respectfully submitted,

BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS,


By: /s/ Peter G. Land
          One of Its Attorneys

Peter G. Land
peter.land@huschblackwell.com
Husch Blackwell LLP
120 South Riverside Plaze, Suite 2200
Chicago, Illinois 60606
(312) 526-1631

Dated:  January 26, 2018

52

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he caused the foregoing **DEFENDANT BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS' ANSWER TO PLAINTIFF'S AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF AND JURY DEMAND** to be filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification to the following counsel of record this 26th day of January, 2018:

> Mark D. Roth
> Ken Hurst
> Roth Fioretti, LLC
> 311 South Wacker Drive, Suite 2470
> Chicago, IL 60606
> Phone: (312) 922-6262
> Fax:     (312) 922-7747
> mark@rothfiorett.com
> ken@rothfioretti.com
> Counsel for Plaintiff

/s/ Peter G. Land

1936661.1
CHI-108444-v1