E-FILED
Friday, 01 June, 2018  05:57:09 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS - URBANA

JOHN DOE,                                )
                                         )
            Plaintiff,                   )
                                         )        Case No. 17-CV-02180
      v.                                 )
                                         )        Honorable Colin S. Bruce
BOARD OF TRUSTEES OF THE                 )        Magistrate Eric I. Long
UNIVERSITY OF ILLINOIS,                  )
                                         )
            Defendant.                   )        JURY DEMANDED
                                         )

### PLAINTIFF'S RESPONSE TO DEFENDANT BOARD OF TRUSTEES OF
### THE UNIVERSITY OF ILLINOIS' MOTION FOR SUMMARY JUDGMENT

NOW COMES Plaintiff, John Doe, by his attorneys, Mark Roth and Kenneth Hurst of Roth

Fioretti, LLC, and for Plaintiff's Response to Defendant Board of Trustees of the University of

Illinois' Motion for Summary Judgment, the Plaintiff states the following:

### INTRODUCTION

First, this Court decided the matter regarding Defendant's assertion of its Eleventh

Amendment Immunity and the Court's lack of jurisdiction. Defendant asserts the same arguments

that this Court ruled upon on December 18, 2017. Further, Defendant has failed to make its initial

showing by relying on the same arguments it initially presented without citation to facts. In the

alternative, there is a genuine issue of material fact that defeats Defendant's request for dismissal.

Second, Plaintiff has proved that he has a property interest in a continued education where

he established that he has a legally protected entitlement to his continued education at the

University. Plaintiff has shown with sufficient clarity that the facts do not support Defendant's

contention that Plaintiff lacked a promise not to be dismissed for "good cause" and that Plaintiff

did not identify any specific promises that the Defendant violated in dismissing him.  Further, the

fact that the Policies and Procedures informs the students that specific conduct that could lead to their discipline and dismissal, only supports Plaintiff's claim of a dismissal for good cause only. Finally, it is not material that the Defendant did not specifically promise Plaintiff a live hearing with regards to Roe's charges which does not support Defendant's position that Plaintiff cannot establish a property interest in his due process claim. Therefore, Defendant's motion for summary judgment is unsupported by fact and should respectfully be denied.

Finally, and most concerning is Defendant's contention that its investigator model provided all the due process required by law. Rather, Plaintiff is required a full opportunity to be heard in a long-term dismissal matter. Incredibly, it was the Investigator who testified on behalf of Plaintiff before the "Adjudicative Panel" when the panel was confused by the Final Investigative Report. The confusion stemmed from the multiple reports that were submitted for hearing. The initial report contained the original statements written by the Investigator, with footnotes of Plaintiff's corrections. Then a revised report was also included in the Final Investigative Report that contained the same small styled footnotes. The Panel became confused about the "changing story" of Plaintiff and requested the Investigator to explain the discrepancies during the March 28, 2017, hearing on Plaintiff's case. The Investigator does not represent the best interest of Plaintiff, however, it was the Investigator that testified before the Panel without seeking Plaintiff's explanation. Further, the Panel relied on credibility determinations outside of the presence of Plaintiff and credited the hearsay statements of witnesses that Plaintiff could not cross-examine. Had Plaintiff been able to cross-exam the witnesses against him, he would have provided the panel with the correct statement. However, the Panel relied on the incorrect statements to form its ultimate decision. Plaintiff was not afforded his right to a full opportunity to be heard.

The facts do not support Defendant's request for summary judgment and Plaintiff respectfully request that this Court deny Defendant's motion in its entirety.

## UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 7.1(D)(2)(b)(1), Plaintiff lists by number each fact of the motion which is conceded to be undisputed and material as follows: 1-3, 7, 8, 10 (only material to agreement to be dismissed only for good cause), 11, 13, 14, 18, 19-24 (only material to agreement to be dismissed only for good cause), 26, 27 (only material to agreement to be dismissed only for good cause), 32-36, 38 (only material to agreement to be dismissed only for good cause), 48-55, 57-63, 66-87, 89, 90, 92-97, 99-109, 111-124.

## DISPUTED MATERIAL FACTS

Pursuant to Local Rule 7.1(D)(2)(b)(2), Plaintiff lists by number each fact of the motion which is conceded to be material but disputed as follows:

53. The Investigator concluded that the Defendant does not consider the intent behind the violation, and accidental violations are subject to the same sanctions as intentional violations. Further, she concluded that the Defendant had an obligation to enforce the no-contact orders it issues strictly in order to ensure compliance and to ensure the health, safety, and well-being of its students, including complainants and respondents alike. However, these conclusions are not based upon underlying facts and therefore insufficient. Weeks v. Samsung Heavy Indus. Co., 126 F.3d 926, 939 (7th Cir. 1997). Moreover, the Investigator's own email states that "Any violation of this directive may result in charges before the appropriate Subcommittee on Student Conduct." See Doc # 46-1, at ¶ 52. This clearly contradicts the "strict" enforcement concluded by the Investigator.

91. Plaintiff does not dispute the first sentence. Plaintiff disputes that these statements demonstrate that he did not comment whether the investigators properly recorded what the

3

witnesses told them. Rather, Plaintiff stated he could not speak for the witness nor the complainant, but he could tell that a lot of things he corrected are factually incorrect. See Doc # 46-2, at pg. 107, ln. 21-25. Moreover, when asked if the investigators incorrectly recorded what the witness told them, Plaintiff could not speak to that because Plaintiff was not present at the moment witnesses were speaking to the investigators. Id., at pg. 108, ln. 1-10. Defendant's reliance on, Id., at pg. 108, ln. 11-18, only answers what counsel thinks, not what Plaintiff actually did.  Plaintiff clearly found numerous errors in the Initial Report. See Tab 1, Ex. 6 at pg. 54-58. Finally, the Investigator admitted that she changed the statements to correct what was said. See Doc # 46-6, at ¶ 34.

98.  Plaintiff understood that his "final response is the last chance to address the Subcommittee". See Doc # 46-2, at pg. 128, ln. 9-16.

110.  Plaintiff's March 16, 2017, letter informed Plaintiff that "Your hearing is scheduled for March 28, 2017. See Plaintiff's Amended Affidavit, attached hereto as Exhibit D, at ¶ 36. Further, the letter stated that a detailed decision letter would be received by Plaintiff by the end of the business day following the hearing. Id., at ¶ 38. Section 4 of Appendix D provides for "Panel Adjudication". See Doc # 37, at ¶ 59. The Panel makes a decision by a preponderance of the evidence. Id., at ¶ 65, and provides for sanctions. Id., at ¶ 69. See also Doc # 46-1, at ¶ 114. Therefore, Plaintiff received a letter that a hearing and a decision would take place on March 28, 2017.

125.  Plaintiff clearly stated that he sought admission to other universities, however, stopped because he did not want to disclose his disciplinary records. See, Doc # 46-2, at pg. 154, ln. 11-22. Further, Plaintiff stated that he did the research and called other universities. See, Doc # 46-2, at pg. 155, ln. 1-18.

## **DISPUTED IMMATERIAL FACTS**

Pursuant to Local Rule 7.1(D)(2)(b)(3), Plaintiff lists by number each fact of the motion which is claimed to be immaterial and disputed as follows:

88. Defendant fails to state a fact.

## **UNDISPUTED IMMATERIAL FACTS**

Pursuant to Local Rule 7.1(D)(2)(b)(4), Plaintiff lists by number each fact of the motion which is conceded to be undisputed but immaterial as follows:

4. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint.

5. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint.

6. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint.

9. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint.

10. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint. Further, an institution's internal rules do not set the standard for whether the due process required by the federal Constitution has been provided. Grant v. Trustees of Indiana University, 870 F.3d 562, 571 (7th Cir. 2017).

12. It is not material for Plaintiff to review the Code. Only that Defendant made the Code available to the matriculant is material. See Ross v. Creighton University, 957 F.2d 410, 416 (7th Cir. 1992).

15. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint.

16. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint.

17. It is not material for Plaintiff to review the Procedures. Only that Defendant made the Procedures available to the matriculant is material. See Ross v. Creighton University, 957 F.2d 410, 416 (7th Cir. 1992).

19. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint. Further, an institution's internal rules do not set the standard for whether the due process required by the federal Constitution has been provided. Grant, 870 F.3d at 571.

20. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint.

21. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint. Further, an institution's internal rules do not set the standard for whether the due process required by the federal Constitution has been provided. Grant, 870 F.3d at 571.

22. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint. Further, an institution's internal rules do not set the standard for whether the due process required by the federal Constitution has been provided. Grant, 870 F.3d at 571.

23. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint. Further, an institution's internal rules do

not set the standard for whether the due process required by the federal Constitution has been provided. <u>Grant</u>, 870 F.3d at 571.

24. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint. Further, an institution's internal rules do not set the standard for whether the due process required by the federal Constitution has been provided. <u>Grant</u>, 870 F.3d at 571.

25. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint.

27. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint. Further, an institution's internal rules do not set the standard for whether the due process required by the federal Constitution has been provided. <u>Grant</u>, 870 F.3d at 571.

28. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint. Further, an institution's internal rules do not set the standard for whether the due process required by the federal Constitution has been provided. <u>Grant</u>, 870 F.3d at 571.

29. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint. Further, an institution's internal rules do not set the standard for whether the due process required by the federal Constitution has been provided. <u>Grant</u>, 870 F.3d at 571.

30. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint. Further, an institution's internal rules do

not set the standard for whether the due process required by the federal Constitution has been provided. <u>Grant</u>, 870 F.3d at 571.

31. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint. Further, an institution's internal rules do not set the standard for whether the due process required by the federal Constitution has been provided. <u>Grant</u>, 870 F.3d at 571.

37. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint. Further, an institution's internal rules do not set the standard for whether the due process required by the federal Constitution has been provided. <u>Grant</u>, 870 F.3d at 571.

38. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint. Further, an institution's internal rules do not set the standard for whether the due process required by the federal Constitution has been provided. <u>Grant</u>, 870 F.3d at 571.

39. This fact is not material to whether Plaintiff was afforded due process as claimed under his Amended Complaint. Further, an institution's internal rules do not set the standard for whether the due process required by the federal Constitution has been provided. <u>Grant</u>, 870 F.3d at 571.

40. This fact is not material to whether Plaintiff was afforded due process as claimed under his Amended Complaint. Further, an institution's internal rules do not set the standard for whether the due process required by the federal Constitution has been provided. <u>Grant</u>, 870 F.3d at 571.

41. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint.

42. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint.

43. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint.

44. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint.

45. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint. What the report of what Roe said to the Investigators is not material to Plaintiff's meaningful opportunity to be heard or more formal procedures required in the severe deprivation.

46. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint.

47. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint.

56. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint.

64. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint.

65. Defendant does not rely on this fact, nor is it material to whether Plaintiff was afforded due process as claimed under his Amended Complaint.

## ADDITIONAL MATERIAL FACTS

1. Plaintiff requested whether he could attend his hearing to the Investigator, who denied that Plaintiff could attend the hearing on his case on March 28, 2017. See Exhibit D, at ¶ 31.

2. Plaintiff was not allowed to attend his hearing to provide testimony, cross-examine witnesses against him, or present evidence. See Exhibit D, at ¶ 37. See also, Doc # 37, at ¶ 63.

3. Defendant admits that in the United States, April is nationally designated as Sexual Assault Awareness Month; that according to the National Sexual Violence Resource Center, "the goal of SAAM is to raise public awareness about sexual violence and to educate communities and individuals on how to prevent sexual violence"; that the University and the community at large annually plan events during Sexual Assault Awareness Month; and that the events planned for SAAM in 2017 included a concert, a pledge drive, panel discussions, workshops, and walks, among other events. See, Doc # 37, at ¶ 124.

4. The Defendant's Policies and Procedures do not allow for an arbitrary dismissal. See Doc # 37, at ¶ 40-82.

5. In reliance on Plaintiff's understanding that he would be dismissed only for good cause, Plaintiff accepted the Defendant's offer and paid the required deposit. See Exhibit D, at ¶ 4. Had the Defendant have the ability to dismiss Plaintiff without good cause, Plaintiff would not have accepted the Defendant's offer and paid the required deposit. Id.

6. At all relevant times, Plaintiff was a full-time, tuition-paying, undergraduate student at the University. See Exhibit D, at ¶ 5.

7. The Code provides the following Preamble, §1-101:

a. A student at the University of Illinois at the Urbana-Champaign campus is a member of a University community of which all members *have at least the rights and responsibilities common to all citizens*, free from institutional censorship; *affiliation with the University as a student does not diminish the rights or responsibilities held by a student* or any other community member as a citizen of larger communities of the state, the nation, and the world. (Emphasis added).

b. Any rules or regulations considered necessary to govern the interaction of the members of the University community are intended to reflect values that community members must share in common if the purpose of the community to advance education and to enhance the educational development of students is to be fulfilled. These values include the *freedom to learn*, free and open expression within limits that do not interfere with the rights of others, free and disinterested inquiry, intellectual honesty, sustained and independent search for truth, the exercise of critical judgment, respect for the dignity of others, and personal and institutional openness to constructive change. *The following enumeration of rights shall not be construed to deny or disparage other rights retained by these individuals in their capacity as members of the campus community or as citizens of the community at large*. (Emphasis added).

See Doc # 37, at ¶ 85.

8. The Student Disciplinary Procedures Section 1.01 —

History, provides and represents in relevant part, "The Trustees asserted their belief in the concept that the university disciplinary system shall be separate from, but coexistent with, general systems established by society to deal with the conduct of citizens of society."

See Doc # 37, at ¶ 88.

9. Plaintiff's reputation, good name, and integrity has been severely and negatively affected by the Board's violation of Plaintiff's Due Process rights. See Exhibit D, at ¶ 55. For instance, Roe's friend, who is also within Plaintiff's circle of friends, is present when everyone gets together. Id. On one occasion, Plaintiff overheard Roe's friend telling Plaintiff's friends that Plaintiff is untrustworthy and lies about everything. Id. Further Roe's friend spoke to her roommate regarding the dismissal. Id. Roe's friend's roommate spoke to Plaintiff's good male friend who told several of Plaintiff's close Taiwanese friend why Plaintiff was no longer at the University. Id. This false decision continues to affect Plaintiff's reputation and good name. Id. Plaintiff feels trapped in his social life and fears of speaking to any of his circle of friends. Id.

10. Moreover, another female friend of Plaintiff knows about the case unintentionally jokes about the dismissal. See Exhibit D, at ¶ 56.

11

11. Further, since the Board's decision, Plaintiff has been inactive on his social media account, and keeps distant with his friends to avoid talking about the dismissal from the University. See <u>Exhibit D</u>, at ¶ 57. Plaintiff is afraid to make new friend because he is afraid they may ask him about his schooling. <u>Id</u>. After the dismissal, Plaintiff is afraid to develop new relationships with females. <u>Id</u>. Plaintiff is constantly afraid that he will unintentionally do or say something wrong and therefore avoids developing new relationships. <u>Id</u>.

12. Before the dismissal, Plaintiff would call both of his grandmothers on a regular basis. See <u>Exhibit D</u>, at ¶ 58. One is 92 years old and the other one is 82 years old. Id. However, since the dismissal, Plaintiff does not want to disappoint them and fears they may ask him about how he is doing in school. <u>Id</u>.

13. Plaintiff feels he no longer has an open identity, hiding away from friends and family in fear they may ask him questions about his schooling. See <u>Exhibit D</u>, at ¶ 59. Further Plaintiff is not responding email and text messages from people asking him where he has been and why Plaintiff is not in school. <u>Id</u>.

14. Plaintiff is unable to transfer be accepted to a comparable undergraduate institution because of the erroneous disciplinary finding. See <u>Exhibit D</u>, at ¶ 54. Plaintiff has attempted to utilize the services of The Common Application, a website that assist potential students with their college applications and financial aid. See <u>www.commonapp.org</u>. Plaintiff has selected multiple comparable universities for his applications. See <u>Exhibit D</u>, at ¶ 54. However, Plaintiff must disclose his disciplinary history and whether he has ever been found responsible for a disciplinary violation at an educational institution that Plaintiff has attended. See <u>Exhibit D</u>, at ¶ 54. Therefore, Plaintiff must disclose his disciplinary history further damaging my reputation and good name. <u>Id</u>.

15. At all times Plaintiff denied the University's allegations of sexual assault of Jane Roe. See <u>Exhibit D</u>, at ¶ 19.

16. The March 16 Email informed Plaintiff that, "Your hearing is scheduled for March 28, 2017." See <u>Exhibit D</u>, at ¶ 36. The notice did not provide a time or place of the hearing. See <u>Exhibit D</u>, at ¶ 36.

17. The Subcommittee further provided its rationale for the decision. See <u>Exhibit D</u>, at ¶ 44. The rationale further included: Regarding penetration, the respondent claimed that he did not penetrate the complainant, but we do not find this statement to be credible. The complainant stated that she was penetrated in two difference positions, and BK stated that the respondent told him that he had had sex with the complainant. See <u>Exhibit D</u>, at ¶ 44.

18. Plaintiff provided new documented evidence that an adverse witnesses statements were inaccurate. See <u>Exhibit D</u>, at ¶ 47. Specifically the finding that, "BK stated that the respondent told him that he had had sex with the complainant", which Plaintiff provided text messages demonstrating that Plaintiff "told me you guys like almost had sex". See <u>Exhibit D</u>, at ¶ 47. However, the report indicated that BK said Plaintiff had said Roe and Plaintiff had sex. See <u>Exhibit D</u>, at ¶ 47. The inaccurate statement by BK regarding Roe being drunk was also a basis for the Board's finding that Jane was incapacitated. See <u>Exhibit D</u>, at ¶ 47.

## <u>ARGUMENT</u>

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment only if it is shown that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. <u>Fed. R. Civ. P 56(a)</u>. "The party pursuing the motion must make an initial showing that the agreed-upon facts support a judgment in its favor". <u>Hotel 71 Mezz Lender Ltd. Liab. Co. v. Nat'l Ret. Fund</u>., 778 F.3d 593, 601 (7th Cir.

2015). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. <u>Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,</u> 555 U.S. 271, 274 n.1 (2009); <u>Laskin v. Siegel,</u> 728 F.3d 731, 734 (7th Cir. 2013).

I.      **This Court Has Previously Ruled That The Eleventh Amendment Does Not Require Dismissal of Defendant From This Action And Defendant Failed to Make Its Initial Showing Requiring Denial Of Its Motion.**

On October 10, 2017, Defendant filed its Motion to Dismiss Plaintiff's Amended Complaint for Injunctive and Other Relief and Jury Demand, asserting that Plaintiff's claims must be dismissed as barred by the Eleventh Amendment. See Defendant Memorandum in Support of its Motion to Dismiss Plaintiff's Amended Complaint for Injunctive and Other Relief and Jury Demand ("Motion to Dismiss"), <u>Doc # 18</u>, pg. 11. Then, on November 16, 2017, Defendant filed its Reply in Support of its Motion to Dismiss, asserting the same arguments it asserted in its present Memorandum of Law in Support of its Motion for Summary Judgment. See the attached true and correct copy of the Defendant's Reply in Support of its Motion to Dismiss, attached hereto as <u>Exhibit A</u>, at pg. 1-4. See also, Defendant's Memorandum of Law in Support of Motion for Summary Judgment, <u>Doc # 46-1</u>, pg. 39-41. Already under consideration during Defendant's Motion to Dismiss and plead in Plaintiff's Amended Complaint was that Plaintiff brought its claims under Section 1983 against the Defendant, which is the governing body of the University of Illinois citing 110 ILCS 305/1, and that Plaintiff has not sued individual state or University officials in their official capacities. See Amended Complaint, <u>Doc # 37</u>, at ¶ 14 and 17. Moreover, Defendant asserted that this Court lacks subject matter jurisdiction over Defendant. See <u>Exhibit A</u>, pg. 1.

Thereafter, on December 18, 2017, this Court denied Defendant's argument that it is immune from Plaintiff's claims pursuant to the Eleventh Amendment. See attached true and correct copy of the December 18, 2017, Order, attached hereto as <u>Exhibit B</u>, at pg. 7-8. This Court

correctly determined that Plaintiff's lawsuit seeks injunctive relief in the form of Plaintiff's reinstatement as a student at the University (including expungement of records), and that based upon the requested relief and the precedents outlined, the Eleventh Amendment does not require the dismissal of Defendant from this action. Id. This is the law of the case. Therefore, Plaintiff relies on the correct December 18, 2017, Order and Plaintiff reincorporates its arguments in his October 31, 2017, Response to Defendant's Motion to Dismiss. See Exhibit B. See also the true and correct copy of Plaintiff's Response to Defendant's Motion to Dismiss, attached hereto as Exhibit C, at pg. 6-8. It would be inequitable after allowing Plaintiff's claims to proceed, parties to spend significant time and resources on discovery and litigation, and to then determine Plaintiff's claims dismissed on the same grounds.

Further, Defendant has failed to make its initial showing by relying on the same arguments it initially presented without citation to facts. "If the movant has failed to make this initial showing, the court is obligated to deny the motion". See Hotel 71 Mezz Lender Ltd. Liab. Co., 778 F.3d at 601. (The movant is seeking summary judgment on a claim as to which it bears the burden of proof it must cite the facts which it believes satisfies the claim). Defendant's argument that the Eleventh Amendment bars Plaintiff's claims is void of citations to any fact. See Doc # 46-1, at pg. 39-41. Therefore, Defendant has failed to cite to any facts which it believes satisfies the elements of its immunity and therefore Plaintiff respectfully requests this Court to deny Defendant's motion.

In the alternative, the Defendant itself admits that it follows all requirements of its Policies and Procedures which is an ongoing violation of federal law and to comply with constitutional requirements. See Doc # 46-1, at ¶ 26, 32, 53, X. See also Doc # 46-6, at ¶ 15. Further, Defendant is liable for the actions of its agents where Defendant provided the actual authority to the Senate Committee on Student Discipline and the Investigator through the regulations formulated by

Defendant. See Answer to Amended Complaint, Doc # 37, at ¶ 32. See also Opp v. Wheaton Van Lines, Inc., 231 F.3d 1060, 1064 (7th Cir. 2000). It is Defendant's agents who are controlled by the Policies and Procedures formulated by the Defendant that violates Plaintiff's due process rights. Therefore, there is a genuine issue of material fact whether Defendant is merely a governing body for the purpose of this motion.

## II.     The Evidence of Record Does Not Support Defendant's Motion For Summary Judgment.

This Court has already determined that it has jurisdiction to consider Plaintiff's claims and has exercised its jurisdiction. Further, the Defendant is not entitled to summary judgment on Plaintiff's claims, not because of an issue of identifying legal authority or sufficient record evidence, but rather the evidence of the record does not support Defendant's motion for summary judgment.

### A. The Facts Do Not Support Defendant's Motion For Summary Judgment That Plaintiff Does Not Have A Protected Interest In His Continued Education At The University.

On December 18, 2017, this Court determined that "a student can prove that he has a property interest in continued education if he can establish that he had a legally protected entitlement to his continued education at the university". See Exhibit B, pg. 10. (citing Charleston v. Board of Trustees of the University of Illinois at Chicago, 741 F.3d 768, 772-73 (7th Cir. 2013). Further, the Court ruled that this can be established by pleading, with specificity, the existence of an express or implied contract. Id. "The catalogs, bulletins, circulars, and regulations of the institution made available to the matriculant [may] become part of the contract". Ross v. Creighton University, 957 F.2d 410, 416 (7th Cir. 1992); see also Bissessur v. Indiana University Board of Trustees, 581 F.3d 599, 602 (7th Cir. 2009).

The Defendant's Policies and Procedures were made available to Plaintiff at all times. See Doc # 46-1, at ¶ 14. There is clearly no requirement for Plaintiff to view the Policies and

Procedures, only that they be made available. See <u>Ross</u>, 957 F.2d at 416. ("Illinois recognizes that the relationship between a student and an educational institution is, in some of its aspects, contractual."). Rather, Plaintiff "could point to an agreement between himself and the school that he would be <u>dismissed only for good cause</u>". (Emphasis added) <u>Charleston</u>, 741 F.3d at 773. See also <u>Bissessur</u>, 581 F.3d at 601. There is also no requirement that the contract between the student and the university expressly stated for "good cause". <u>Id</u>. "Instead, the student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return". <u>Id</u>. The passages from the documents supplied by Defendant demonstrates that students have the same rights common to all citizens, which are constitutional rights and specifically due process rights. See <u>Additional Material Facts</u>, at 7. Moreover, the passages demonstrate that the Defendant will not deny or disparage due process rights retained by Plaintiff. <u>Id</u>. Further, the Defendant's disciplinary system will coexist with the general systems established by society to deal with the conduct of citizens of society. <u>Id.</u>, at 8. A decision on allegations of sexual assault under the standard of a preponderance of evidence does not coexist with these systems. See <u>Doc # 46-1</u>, at ¶ 33.

The facts further demonstrate that the Defendant has promulgated its Policies and Procedures that a student will only be dismissed for misconduct upon its Policies and Procedures. See <u>Doc # 46-1</u>, at ¶ 14. See also, <u>Exhibit D</u>, at ¶ 3; <u>Additional Material Facts</u>, at 4. The Defendant's Policies and Procedures do not allow for an arbitrary dismissal. <u>Id</u>. In reliance on Plaintiff's understanding that he would be dismissed only for good cause, Plaintiff accepted the Defendant's offer and paid the required deposit. See <u>Additional Material Facts</u>, at 5. Had the Defendant have the ability to dismiss Plaintiff without good cause, Plaintiff would not have accepted the Defendant's offer and paid the required deposit. <u>Id</u>.

Finally, although Defendant stresses that it followed all Policies and Procedures and that Plaintiff did not claim that Defendant did not follow any aspect of its Procedures, is not grounds that Plaintiff does not have a protected interest.   See Doc # 46-1, at ¶ 39. This argument is misplaced. Also, Plaintiff admitting that the Procedures did not guarantee him a live hearing at any point in time is not grounds that Plaintiff does not have a protected interest. See Doc # 46-1, at ¶ 40. See also, Grant v. Trustees of Indiana University, 870 F.3d 562, 571 (7th Cir. 2017). ("An institution's internal rules do not set the standard for whether the due process required by the federal Constitution has been provided").

Plaintiff has shown with sufficient clarity that the facts do not support Defendant's contention that Plaintiff lacked a promise not to be dismissed for "good cause" and that Plaintiff did not identify any specific promises that the Defendant violated in dismissing him.  Further, the fact that the Policies and Procedures informs the students that specific conduct that could lead to their discipline and dismissal, only supports Plaintiff's claim of a dismissal for good cause only. Finally, it is not material that the Defendant did not specifically promise Plaintiff a live hearing with regards to Roe's charges which does not support Defendant's position that Plaintiff cannot establish a property interest in his due process claim. Therefore, Defendant's motion for summary judgment is unsupported by fact and should respectfully be denied.

**B. Plaintiff Sufficiently Supported A Liberty Interest**

"A student's interest in pursuing an education, while not a fundamental right, see San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 36 L. Ed. 2d 16, 93 S. Ct. 1278 (1973), is included within the Fourteenth Amendment's protection of liberty and property." Foo v. Trustees of Indiana University, 88 F. Supp. 2d 937, 947 (S.D. Ind. 1999) (citing See, e.g., Goss v. Lopez, 419 U.S. 565, 574-75, 42 L. Ed. 2d 725, 95 S. Ct. 729 (1975)). Further, Plaintiff's liberty interest

in his "good name, reputation, honor, and integrity is at stake because of what the government is doing to him". <u>Goss</u>, 419 U.S. at 574-75. Plaintiff's standing with his peers, teachers, and family are damaged, and the University's records further damage his liberty interest. See <u>Additional Material Facts</u>, at 9-13. See also <u>Smyth v. Lubbers</u>, 398 F. Supp. 777, 796 (W.D. Mich. 1975) (Congress recognized the extreme importance of a student's "record" by closely regulating the circumstances under which student records may be released by school authorities. Family Educational Rights and Privacy Act of 1974, as amended, 20 USCA Sec. 1232g). Plaintiff is unable to transfer to a comparable undergraduate institution because of the erroneous disciplinary finding and misconduct on his record. See <u>Additional Material Facts</u>, at 14. As a result, the facts do not support Defendant's contention that Plaintiff failed to identify a protected property or liberty interest and Defendant's Motion for Summary Judgment should respectfully be denied.

**B. The Facts Do Not Support Defendant's Position That Plaintiff Was Afforded All Process Required By Law Prior To His Dismissal.**

Defendant's reliance on <u>Goss's</u> due process principles of Plaintiff receiving "some kind of notice" and "some kind of hearing", is distinct from the present facts.  In <u>Goss</u>, the decision "outlined the procedural protections enjoyed by a public-school student facing <u>brief</u> suspension". (Emphasis Added) <u>Coronado v. Valleyview Pub. Sch. Dist. 365-U</u>, 537 F.3d 791, 795 (7th Cir. 2008) (citing <u>Goss</u>, 419 U.S. at 574). "To comport with due process, expulsion procedures must provide the student with a meaningful opportunity to be heard". <u>Remer v. Burlington Area Sch. Dist.</u>, 286 F.3d 1007, 1010 (7th Cir. 2002) (citing <u>Linwood v. Bd. of Educ.</u>, 463 F.2d 763, 769-70 (7th Cir. 1972)). Due process is a flexible concept that "'calls for such procedural protections as the particular situation demands.'" <u>Pugel v. Board of Trustees of the University of Illinois</u>, 378 F.3d 659, 663 (7th Cir. 2004) (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). "The severity of the deprivation suggests the appropriateness of 'more formal procedures.'" <u>Pugel</u>, 378

F.3d at 664 (citing Goss, 419 U.S. at 584). "Indeed, more extensive procedures in the context of a university dismissal comport with the Supreme Court's own admonition in Goss that due process requirements depend upon context". Id. In fact, the Seventh Circuit has commented on what is required in a meaningful opportunity to be heard. An entitlement to a hearing.

In Williams v. Wendler, the plaintiff students were suspended by the Southern Illinois University ("SIU"), a state university; one for two years and the other two for three years for hazing another student. 530 F.3d 584, 585 (7th Cir. 2008). What is required is an entitlement not to be suspended without good cause. Id. The Seventh Circuit Court provided guidance on what the entitlement would provide a state college student:

> "Suppose a student had a contract with the college in which he promised to pay tuition, in an amount specified by the college, on the first day of each quarter, and in exchange the college promised not to suspend him unless he hazed another student. The contract would create an entitlement, so that if the college suspended him for hazing and he denied it he would be entitled to a hearing".

Id. at 589 (Emphasis added). See also Coronado, 537 F.3d at 793-94 (College student allowed to testify at expulsion hearing for misconduct); Osteen v. Henley, 13 F.3d 221, 224 (7th Cir. 1993) (College student attended hearing represented by a student advocate who provided testimony on behalf of the accused of misconduct). The United States Supreme Court has recognized the increased risk of erroneous fact-finding in disciplinary proceedings justifies courts' scrutiny of school disciplinary proceedings under the procedural due process standards. Goss, 419 U.S. at 580. As a result, Defendant's reliance on Doe v. Univ. of Cincinnati, is not controlling law and the Seventh Circuit has a much different position under the facts. 872 F. 3d 392, 405 (6th Cir. 2017).

At all times, Plaintiff in the present case denied the sexual assault allegations and further was denied his entitlement to a hearing before the adjudicative Subcommittee. See Additional Material Facts, at 15. Although Plaintiff seeks such procedural protections such as cross-

examination and representation, he was not even provided his most basic right of an entitlement to a hearing for his severe sanctions in order to present his actual testimony to the Subcommittee. See <u>Doc # 46-1</u>, ¶ 114. Without presenting his testimony in person to the Subcommittee, Plaintiff was denied his right to a meaningful opportunity to be heard. Plaintiff's denial of a meaningful opportunity to be heard derives from the context, the particular situation, and the severity of the deprivation. See <u>Pugel</u>, 378 F.3d at 663-64.

**1. Plaintiff Does Not Deny He Received Notice, However, The Notice Of Hearing Was Deficient.**

Plaintiff does not contend that he did not receive notice; instead, Plaintiff was informed a hearing would take place on March 28, 2017, Plaintiff was not provided with the time or location of the hearing. See <u>Additional Material Facts</u>, at 16. See also, <u>Remer</u>, 286 F.3d at 1010 (Student must be at the very least be given notice of the time of hearing). Not only is the time required by due process, but this deficiency is material to Plaintiff's claims relating to the hearing itself. Further, Defendant inaccurately states that Plaintiff had "no need to attend". See <u>Doc # 46-1</u>, at pg 49. The facts and claims do not support this position. In fact, Plaintiff requested to the Investigator attendance of the hearing, to which she denied him his right. See <u>Additional Material Facts</u>, at 1. At the very least, Plaintiff was denied his right to notice of the time of the hearing.

**2. The Defendant's Investigation Model Does Not Afford Plaintiff A Full Or Meaningful Opportunity To Be Heard In Violation Of His Due Process Rights.**

Again, Defendant attempts to rely on <u>Goss</u>, which is distinct from the present matter and further Defendant's cites case law that is not controlling in the Seventh Circuit. However, Goss is correct in one determination, "Once it is determined that due process applies, the question becomes 'what process is due.' <u>Goss</u>, 419 U.S. at 577. While these procedures need not take the form of a judicial or quasi-judicial trial, the student must, at the very least, be given notice of the charges

against him, notice of the time of the hearing, and a full opportunity to be heard. See also, <u>Remer</u>, 286 F.3d at 1010. See also, <u>Williams</u>, 530 F.3d at 589 (Entitlement to a hearing). Under the Defendant's "investigation model", Plaintiff's due process rights were denied or at least disparaged so that he did not receive a full opportunity to be heard.

Although Defendant points to <u>Doe v. Baum</u>, that similar procedures used in this matter satisfied due process standard, the procedures here completely failed to provide Plaintiff with a full opportunity to be heard. 227 F. Supp. 3d 784 (E.D. Mich. 2017). The facts are so distinct that Defendant cannot rely on <u>Baum</u> to explain all the severe deficiencies in Plaintiff's opportunity to be heard. First, Plaintiff, while he was given the opportunity to review an Initial Investigative Report and a Revised Investigative Report, he was not allowed to review the Final Investigative Report which was prepared for the panel who ultimately decided his sanctions. See <u>Doc # 46-1</u>, at ¶ 71, 72, 80, 85, 86, 89, 90, 99, 100, 102-105. Moreover, the Initial Investigative Report and Revised Investigative Report contained numerous errors and misrepresentations of Plaintiff's statements to the investigator. <u>Id</u>. See also, Tab 1, Ex. 6 at pg. 54-58. Those inaccurate reports were part of the panel's decision making process which diluted the weight given to Plaintiff's allegedly accurate statements, thus limiting Plaintiff's ability to be properly heard. See <u>Exhibit B</u>, at pg. 12. The Defendant not only did not provide Plaintiff with an opportunity to testify before the panel, but the Investigator denied his request to attend. See <u>Additional Material Facts</u>, at 1, 2. This further prevented Plaintiff's full opportunity to be heard. The most troubling matter is that the panel was able to see Plaintiff's prior incorrect testimony with his corrections as mere footnotes. See also, Tab 1, Ex. 6 at pg. 54-58. The panel was so confused by the Final Report that it had to seek explanation, not from Plaintiff, but the Investigator who spoke for Plaintiff without first seeking Plaintiff's explanation. See <u>Doc # 46-1</u>, at ¶ 112. It is not the Investigator who has the best

interest of Plaintiff. The entire report was controlled by the Investigator, who admitted she changed statements to correct what was said during the investigations. See <u>Doc # 46-6</u>, at ¶ 34. This brings into question the accuracy of the notes. However, not all the corrections were changed by the Investigator, who only considered Plaintiff's changes as comments rather than corrections. See <u>Doc # 46-1</u>, at ¶ 70. Although Plaintiff attempted to explain, correct, and comment about the reports to the Investigator, these failings in Plaintiff's opportunity to be heard was prevented by the Investigator who did not allow Plaintiff to attend and testify before the Panel. See <u>Additional Material Facts</u>, at 1, 2.

Moreover, there remains the issue of the panel determining Plaintiff's credibility outside of his presence. However, unlike a trial court that views the witness' presenting their testimony to determine their credibility, it is the Panel who functions like an appellate court reviewing documents (the Investigative Reports) that finds the facts and makes a credibility determination without the presence of the witnesses. See <u>United States v. Herrero</u>, 893 F.2d 1512, 1516 (7th Cir. 1990) (It is the trier of fact's role as the arbiter of credibility). This is a case that rested upon the credibility of the Plaintiff and Roe. They were the only witnesses with personal knowledge of the alleged event. The panel concluded that Plaintiff was not credible based on Roe who could not remember the events and BK who was corrected after the panel deliberated. See <u>Additional Material Facts</u>, at 17, 18. See also, Tab 1, Ex. 6 at pg. 52, ln. 10. Had Plaintiff had the opportunity to cross-examine BK during the hearing, the panel would not have relied upon BK's initial statement. See <u>Doe v. Pennsylvania State University</u>, 2017 WL 3581672, *7 (M.D.Penn. Aug. 18, 2017) (Further, when the outcome of a disciplinary decision is dependent on credibility-based determinations, the accused's right to some form of cross-examination is enhanced.). As this Court stated, "unsettling is the fact that Plaintiff alleges that he was provided no meaningful opportunity

to cross-examine the witnesses against him. Defendant attempts to argue that "Plaintiff's case definitively did not hinge on determining whether to believe Plaintiff or Jane Roe." However, this court finds that argument preposterous. Arguing that a decision regarding an individual's ability to consent at a time when only two individuals are present and each has a different version of the event requires a credibility determination. To suggest otherwise is nonsensical". See <u>Exhibit B</u>, at pg. 13.

Therefore, the facts do not support Defendant's position that it satisfied Plaintiff's due process requirements and requires summary judgment to be denied.

## <u>CONCLUSION</u>

WHEREFORE, Plaintiff, John Doe, respectfully request that this Court deny Defendant's Motion for Summary Judgment against the Plaintiff, and requests such other and other and further relief as the Court deems just, equitable and proper.

/s/ Ken Hurst
Mark D. Roth
Ken Hurst
Roth Fioretti, LLC
311 South Wacker Drive, Suite 2470
Chicago, Illinois 60606
PH: (312) 922-6262
FX: (312) 922-7747
mark@rothfioreti.com
ken@rothfioretti.com
Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on June 1, 2018, a copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS' MOTION FOR SUMMARY JUDGMENT** was filed electronically. Notice of this filing will be sent to all counsel registered with the Court by operation of the Court's electronic filing system.

                                     /s/Ken Hurst_____