**E-FILED**
Wednesday, 22 August, 2018  10:44:59 AM
Clerk, U.S. District Court, ILCD

24,28,APPEAL,CLOSED,REFER,RULE 16 CONFERENCE HELD

# U.S. District Court
# CENTRAL DISTRICT OF ILLINOIS (Urbana)
# CIVIL DOCKET FOR CASE #: <u>2:17–cv–02180–CSB–EIL</u>

Doe v. Board of Trustees of the University of Illinois

Assigned to: Judge Colin Stirling Bruce

Referred to: Magistrate Judge Eric I. Long

Cause: 42:1983 Civil Rights Act

Date Filed: 08/08/2017

Date Terminated: 07/24/2018

Jury Demand: Both

Nature of Suit: 448 Civil Rights: Education

Jurisdiction: Federal Question

**<u>Plaintiff</u>**

**John Doe**                     represented by     **Mark Daniel Roth**
ROTH FIORETTI LLC
Suite 2470
311 S Wacker Drive
Chicago, IL 60606
312–922–6262
Fax: 312–922–7747
Email: <u>markdroth@gmail.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert William Fioretti**
ROTH FIORETTI LLC
Suite 2470
311 S Wacker Drive
Chicago, IL 60606
312–922–6262
Fax: 312–922–7747
Email: <u>rwf@rothfioretti.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth Y Hurst**
ROTH FIORETTI LLC
Suite 2470
311 S Wacker Drive
Chicago, IL 60606
312–922–6262
Fax: 312–922–7747
Email: <u>ken@rothfioretti.com</u>
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Board of Trustees of the University of Illinois**            represented by     **Peter G Land**
HUSCH BLACKWELL LLP

Suite 2200
120 S Riverside Plaza
Chicago, IL 60606
312–526–1631
Fax: 312–655–1501
Email: Peter.Land@huschblackwell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gwendolyn Baxter Morales**
HUSCH BLACKWELL LLP
Suite 2200
120 S Riverside Plaza
Chicago, IL 60606
312–526–1631
Fax: 312–655–1501
Email: Gwendolyn.Morales@huschblackwell.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/08/2017 | 1 | | COMPLAINT against Board of Trustees of the University of Illinois ( Filing fee $ 400 receipt number 0753–2634972.), filed by John Doe. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Exhibit A, # 4 Exhibit B)(Fioretti, Robert) (Entered: 08/08/2017) |
| 08/08/2017 | 2 | | NOTICE of Appearance of Attorney by Mark Roth on behalf of John Doe (Attachments: # 1 Notice of Filing)(Fioretti, Robert) Modified on 8/9/2017 to correct attorney name (KM, ilcd). (Entered: 08/08/2017) |
| 08/08/2017 | 3 | | NOTICE of Appearance of Attorney by Ken Hurst on behalf of John Doe (Attachments: # 1 Notice of Filing)(Fioretti, Robert) Modified on 8/9/2017 to correct attorney name (KM, ilcd). (Entered: 08/08/2017) |
| 08/09/2017 | 5 | | Summons Issued as to Board of Trustees of the University of Illinois. (Mailed to attorney Mark Roth for service.) (KE, ilcd) (Entered: 08/09/2017) |
| 08/09/2017 | 6 | | CERTIFICATE *Complaint Verification*. (Roth, Mark) (Entered: 08/09/2017) |
| 08/15/2017 | 7 | | AFFIDAVIT of Service for Complaint served on Colin Richmond on August 14, 2017 at 4:20pm, filed by John Doe. (Attachments: # 1 Notice of Filing, # 2 Summons)(Roth, Mark) (Entered: 08/15/2017) |
| 08/21/2017 | | | Set/Reset Deadlines: Board of Trustees of the University of Illinois answer due 9/4/2017. (KE, ilcd) (Entered: 08/21/2017) |
| 08/23/2017 | 8 | | AMENDED COMPLAINT *for Injunctive and Other Relief and Jury Demand* against Board of Trustees of the University of Illinois, filed by John Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Roth, Mark) (Entered: 08/23/2017) |
| 08/23/2017 | 9 | | NOTICE *of Filing of Amended Complaint* re 8 Amended Complaint (Roth, Mark) (Entered: 08/23/2017) |
| 08/29/2017 | 10 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of Appearance of Attorney by Peter G Land on behalf of Board of Trustees of the University of Illinois (Land, Peter) (Entered: 08/29/2017) |
| 08/29/2017 | 11 | | NOTICE of Appearance of Attorney by Gwendolyn Baxter Morales on behalf of Board of Trustees of the University of Illinois (Morales, Gwendolyn) (Entered: 08/29/2017) |
| 08/31/2017 | 12 | | ORDER setting Rule 16 Scheduling Conference entered by Magistrate Judge Eric I. Long on 8/31/2017. Rule 16 Scheduling Conference set for 10/18/2017 at 10:45 AM in Courtroom B in Urbana before Magistrate Judge Eric I. Long. See written order. (KE, ilcd) (Entered: 08/31/2017) |
| 08/31/2017 | 13 | | MOTION for Preliminary Injunction by Plaintiff John Doe. Responses due by 9/14/2017 (Attachments: # 1 Memoandum in Support of Preliminary Injunction, # 2 Exhibit A)(Roth, Mark) (Entered: 08/31/2017) |
| 09/05/2017 | 14 | | MOTION for Extension of Time to File Response/Reply as to 13 MOTION for Preliminary Injunction , 8 Amended Complaint by Defendant Board of Trustees of the University of Illinois. Responses due by 9/19/2017 (Morales, Gwendolyn) (Entered: 09/05/2017) |
| 09/05/2017 | | | TEXT ORDER entered by Judge Colin Stirling Bruce on 9/5/2017. Defendant's Motion for Extension of Time to Respond to Amended Complaint and Preliminary Injunction Motion 14 , to which, Defendant represents, Plaintiff has no objection, is GRANTED. Defendant has until October 10, 2017, to file its Answer to the Amended Complaint and its response to the Motion for Preliminary Injunction. (KE, ilcd) (Entered: 09/05/2017) |
| 10/09/2017 | 15 | | MOTION for Leave to File Document Under Seal by Defendant Board of Trustees of the University of Illinois. Responses due by 10/23/2017 (Land, Peter) (Entered: 10/09/2017) |
| 10/10/2017 | | | TEXT ORDER entered by Magistrate Judge Eric I. Long on 10/10/2017. Defendant's Motion to File Under Seal Exhibits Filed in Support of Opposition to Plaintiff's Motion For Preliminary Injunction and Defendant's Memorandum of Law in Support of Motion to Dismiss the Amended Complaint 15 is GRANTED. Defendant is granted leave to file its Exhibits in support of opposition to Plaintiff's Motion for Preliminary Injunction as well as Defendant's Memorandum of Law in Support of Motion to Dismiss under seal. The Court notes, however, that once Defendant files the documents under seal, the Court will carefully review them to determine whether the seal is appropriate. If the Court determines that the documents should not be filed under seal, the Court may lift the seal and order Defendant to refile redacted documents. (KE, ilcd) (Entered: 10/10/2017) |
| 10/10/2017 | 16 | | MOTION for Leave to File Excess Pages by Defendant Board of Trustees of the University of Illinois. Responses due by 10/24/2017 (Land, Peter) (Entered: 10/10/2017) |
| 10/10/2017 | | | TEXT ORDER entered by Judge Colin Stirling Bruce on 10/10/2017. Defendant's Unopposed Motion for Leave to File Documents In Excess of Page Limitations 16 is GRANTED. (KE, ilcd) (Entered: 10/10/2017) |
| 10/10/2017 | 17 | | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Board of Trustees of the University of Illinois. Responses due by 10/24/2017 |

| | | | |
|---|---|---|---|
| | | | (Land, Peter) (Entered: 10/10/2017) |
| 10/10/2017 | 18 | | MEMORANDUM re 17 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Board of Trustees of the University of Illinois. (Attachments: # 1 Exhibit 9)(Land, Peter) (Entered: 10/10/2017) |
| 10/10/2017 | 19 | | **+++ SEALED DOCUMENT.. (Attachments: # 1 Exhibit 1–8)(Land, Peter) (Entered: 10/10/2017)** |
| 10/10/2017 | 20 | | MEMORANDUM *In Opposition* re 13 MOTION for Preliminary Injunction by Board of Trustees of the University of Illinois. (Attachments: # 1 Exhibit 2–3)(Land, Peter) (Entered: 10/10/2017) |
| 10/10/2017 | 21 | | **+++ SEALED DOCUMENT.. (Land, Peter) (Entered: 10/10/2017)** |
| 10/12/2017 | 22 | | DISCOVERY PLAN – PROPOSED/Report of Rule 26(f)Planning Meeting by John Doe. (Attachments: # 1 Notice of Filing)(Roth, Mark) (Entered: 10/12/2017) |
| 10/13/2017 | | | TEXT ORDER entered by Magistrate Judge Eric I. Long on 10/13/2017. This Court has reviewed the parties' Report of Rule 26(f) Planning Meeting 22 and pursuant to the Order 12 scheduling this matter for a Rule 16 hearing conference by personal appearance on October 18, 2017 at 10:45 A.M., the matter is hereby converted from personal appearance to telephone conference on the same date at the same time. The Court will initiate the call. (KE, ilcd) (Entered: 10/13/2017) |
| 10/16/2017 | 24 | | CERTIFICATE *Plaintiffs Rule 26 Certificate of Compliance*. (Attachments: # 1 Notice of Filing)(Roth, Mark) (Entered: 10/16/2017) |
| 10/16/2017 | 25 | | NOTICE *Notice of Filing* (Land, Peter) (Entered: 10/16/2017) |
| 10/18/2017 | | | ORAL MOTION for Extension of Time to File Response/Reply as to 17 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Plaintiff John Doe. (KE, ilcd) (Entered: 10/18/2017) |
| 10/18/2017 | 26 | | Minute Entry for proceedings held 10/18/2017 before Magistrate Judge Eric I. Long. Appearance for Plaintiff by Mark Roth and Ken Hurst. Appearance for Defendant by Peter Land. Rule 16 conference held by telephone. Plan approved; dates set. Consent to magistrate judge discussed (form attached). ADR options offered, including court–hosted settlement conference. Oral motion by plaintiff to extend the response deadline to Motion to Dismiss 17 and to increase the page limitation. No objections stated. Oral motion granted. Plaintiff's response to Motion 17 is extended to 11/7/17 and shall be a maximum of 25 total pages. The following discovery deadlines are set: Initial disclosure due by 10/16/2017. Case dispositive motions due by 5/11/2018. Final Pretrial Conference set for 9/21/2018 at 11:00 AM in Courtroom A in Urbana before Judge Colin Stirling Bruce. Jury Selection/Jury Trial set for 10/2/2018 at 9:30 AM in Courtroom A in Urbana before Judge Colin Stirling Bruce. (3 days) Status Conference set for 1/31/2018 at 10:00 AM by telephone from Urbana (court will place call) before Magistrate Judge Eric I. Long. (Tape #UR–B: 10:47 AM.) (KE, ilcd) (Entered: 10/18/2017) |
| 10/19/2017 | | | TEXT ORDER entered by Magistrate Judge Eric I. Long on 10/19/2017. On October 9, 2017, Defendant filed a Motion for Leave to File Exhibits Under Seal 15 . Defendant's Motion indicated that the Exhibits to its Response to Plaintiff's Motion for a Preliminary Injunction and Response to Plaintiff's Motion to |

| | | |
|---|---|---|
| | | Dismiss contained highly sensitive and private information as well as personally−identifiable student information regarding Plaintiff, Jane Roe, and other student witnesses. On October 10, 2017, the Court granted Defendant's Motion, but noted that the Court would carefully review the Exhibits to determine whether the seal was appropriate. Upon review, not all of the documents filed under seal should remain sealed. Some of the Exhibits (for example, the University of Illinois Student Code) contain no sensitive or private information and should not be sealed. Other Exhibits can be easily redacted and filed publicly. Others should remain sealed due to the impossibility of redaction. All of Defendant's sealed Exhibits are contained in docket entry 19 . Accordingly, Defendant is ordered to publicly file Exhibits 1 and 2 [19−1] [19−2]. Defendant is further ordered to publicly file redacted versions of Exhibits 3, 4, and 5 [19−3] [19−4] [19−5]. Defendant may maintain Exhibits 6, 7, and 8 [19−6] [19−7] [19−8] under seal. As noted in the Court's Order 23 , the public has an interest in this type of case and all requests to seal other parts of this docket will be closely scrutinized. Defendant shall comply with the terms of this Order by the close of business on October 26, 2017. (Miscellaneous Deadline 10/26/2017) (KE, ilcd) (Entered: 10/19/2017) |
| 10/26/2017 | 27 | Exhibit re 19 Sealed Document by Board of Trustees of the University of Illinois. (Land, Peter) (Entered: 10/26/2017) |
| 10/31/2017 | 28 | RESPONSE to Motion re 17 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Plaintiff John Doe. (Attachments: # 1 Notice of Filing, # 2 Exhibit A)(Roth, Mark) (Entered: 10/31/2017) |
| 11/01/2017 | 29 | Joint MOTION for Protective Order by Defendant Board of Trustees of the University of Illinois. Responses due by 11/15/2017 (Attachments: # 1 Exhibit A)(Land, Peter) (Entered: 11/01/2017) |
| 11/02/2017 | 30 | MOTION for Leave to File *Reply Memorandum* by Defendant Board of Trustees of the University of Illinois. Responses due by 11/16/2017 (Land, Peter) (Entered: 11/02/2017) |
| 11/02/2017 | | TEXT ORDER entered by Judge Colin Stirling Bruce on 11/2/2017. Defendant's Motion for Leave to File Reply Memorandum 30 is GRANTED. Defendant shall have until November 16, 2017, to file its Reply. (KE, ilcd) (Entered: 11/02/2017) |
| 11/03/2017 | 31 | CONFIDENTIALITY ORDER granting 29 Joint Motion for Entry of an Agreed Protective Order entered by Magistrate Judge Eric I. Long on 11/3/17. See written Order. (KM, ilcd) (Entered: 11/03/2017) |
| 11/16/2017 | 32 | REPLY to Response to Motion re 17 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Defendant's Reply in Support of Its Motion to Dismiss Plaintiff's Amended Complaint for Injunctive and Other Relief and Jury Demand* filed by Defendant Board of Trustees of the University of Illinois. (Attachments: # 1 Exhibit 1)(Land, Peter) (Entered: 11/16/2017) |
| 12/18/2017 | 33 | ORDER entered by Judge Colin Stirling Bruce on 12/18/2017. Plaintiffs' Motion for Preliminary Injunction 13 is DENIED. This case is referred to Magistrate Judge Long for further proceedings. See written order. (KE, ilcd) (Entered: 12/18/2017) |
| 12/18/2017 | 34 | |

| | | | |
|---|---|---|---|
| | | | ORDER entered by Judge Colin Stirling Bruce on 12/18/2017. Defendant's Motion to Dismiss 17 is DENIED. This case is referred to Magistrate Judge Long for further proceedings. See written order. (KE, ilcd) (Entered: 12/18/2017) |
| 12/28/2017 | 35 | | MOTION for Extension of Time to File Answer re 8 Amended Complaint *(Unopposed)* by Defendant Board of Trustees of the University of Illinois. Responses due by 1/11/2018 (Land, Peter) (Entered: 12/28/2017) |
| 12/29/2017 | | | TEXT ORDER entered by Magistrate Judge Eric I. Long on 12/29/17. Defendant's Unopposed Motion for Extension of Time to Answer or Otherwise Plead 35 is GRANTED. Defendant's deadline to file a responsive pleading is extended to January 26, 2018. (TC, ilcd) (Entered: 12/29/2017) |
| 01/25/2018 | 36 | | NOTICE of Change of Address by Peter G Land (Land, Peter) (Entered: 01/25/2018) |
| 01/26/2018 | 37 | | ANSWER to 8 Amended Complaint *for Injunctive and Other Relief and Jury Demand* by Board of Trustees of the University of Illinois.(Land, Peter) (Entered: 01/26/2018) |
| 01/31/2018 | | | Minute Entry for proceedings held 1/31/2018 before Magistrate Judge Eric I. Long. Appearance for the Plaintiff by Kenneth Hurst. Appearance for the Defendant by Peter Land. Status Conference held by telephone. Status of discovery discussed. Option for Mediation offered. Further Status Conference set for 3/16/2018 at 10:00 AM by telephone from Urbana (court will place call) before Magistrate Judge Eric I. Long. (Tape #UR–B: 10:02 AM.) (KE, ilcd) (Entered: 01/31/2018) |
| 03/14/2018 | 38 | | MOTION for Summary Judgment by Plaintiff John Doe. Responses due by 4/4/2018 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit D.1, # 6 Exhibit D.2, # 7 Exhibit D.3, # 8 Exhibit D.4, # 9 Exhibit D.5, # 10 Exhibit D.6, # 11 Exhibit D.7, # 12 Exhibit D.8, # 13 Exhibit D.9, # 14 Exhibit E, # 15 Exhibit F)(Roth, Mark) (Entered: 03/14/2018) |
| 03/14/2018 | 39 | | NOTICE re 38 MOTION for Summary Judgment (Roth, Mark) (Entered: 03/14/2018) |
| 03/14/2018 | 40 | | MOTION to Compel *Plaintiff's Deposition* by Defendant Board of Trustees of the University of Illinois. Responses due by 3/28/2018 (Attachments: # 1 Exhibit 1–6)(Land, Peter) (Entered: 03/14/2018) |
| 03/15/2018 | | | TEXT ORDER entered by Magistrate Judge Eric I. Long on 3/15/2018. On March 14, 2018, Defendant filed a Motion to Compel Plaintiff's Deposition 40 . Plaintiff is ordered to file a response, if he wishes to do so, by the close of business on March 21, 2018. The Status Conference scheduled for March 16, 2018 at 10:00 A.M. is RESCHEDULED to March 27, 2018 at 10:00 A.M. by telephone from Urbana (Court will place call) before Magistrate Judge Eric I. Long. (KE, ilcd) (Entered: 03/15/2018) |
| 03/21/2018 | 41 | | OBJECTION to 40 MOTION to Compel *Plaintiff's Deposition* by John Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Roth, Mark) (Entered: 03/21/2018) |
| 03/21/2018 | 42 | | NOTICE *of Filing* re 41 Objection (Roth, Mark) (Entered: 03/21/2018) |

| 03/21/2018 | 43 | | AMENDED Objection to Defendant's Motion to Compel Plaintiff's Deposition by John Doe. Amendment to 41 Objection *to Defendant's Motion to Compel Plaintiff's Deposition*. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Roth, Mark) Modified on 3/22/2018 to show the correct title of the document. (JMB, ilcd) (Entered: 03/21/2018) |
| 03/21/2018 | 44 | | NOTICE *of Filing* re 43 Amended Document (Roth, Mark) (Entered: 03/21/2018) |
| 03/27/2018 | | | Minute Entry for proceedings held 3/27/2018 before Magistrate Judge Eric I. Long. Appearance for the Plaintiff by Kenneth Hurst. Appearance for the Defendant by Peter Land. Status Conference held by telephone. Status of case discussed. Defendant's Motion to Compel 40 discussed; GRANTED. Parties agree to coordinate dates for Plaintiff's deposition at earliest convenience. Deadline for dispositive motions remains 5/11/2018. Plaintiff is given leave to amend his pending motion for summary judgment 38 until 5/11/2018. Defendant's response to Plaintiff's Motion for Summary Judgment is due 6/1/2018, pursuant to Fed. R. Civ. Proc. 56(d). (Tape #UR–B: 10:05 AM.) (KE, ilcd) (Entered: 03/27/2018) |
| 05/11/2018 | 45 | | MOTION for Summary Judgment by Defendant Board of Trustees of the University of Illinois. Responses due by 6/1/2018 (Land, Peter) (Additional attachment(s) added on 5/31/2018: # 1 Exhibit 1, # 3 Memo Tab 1, # 4 Memo Tab 1 Exhibit 1, # 5 Memo Tab Exhibit 2–10, # 6 Memo Tab Exhibit 11–14, # 7 Memo Tab 2, # 8 Memo Tab 3) (KE, ilcd). (Entered: 05/11/2018) |
| 05/11/2018 | 46 | | MOTION for Leave to File Excess Pages *(Unopposed)* by Defendant Board of Trustees of the University of Illinois. Responses due by 5/25/2018 (Attachments: # 1 Exhibit 1, # 2 Exhibit Memorandum Tab 1, # 3 Exhibit Memorandum Tab 1 Exhibit 1, # 4 Exhibit Memorandum Tab 1 Exhibits 2–10, # 5 Exhibit Memorandum Tab 1 Exhibits 11–14, # 6 Exhibit Memorandum Tab 2, # 7 Exhibit Memorandum Tab 3)(Land, Peter) (Entered: 05/11/2018) |
| 05/11/2018 | 47 | | **+++ SEALED DOCUMENT.. (Land, Peter) (Main Document 47 replaced on 5/14/2018) (KE, ilcd). (Additional attachment(s) added on 5/14/2018: # 1 Exhibit 6, # 2 Exhibit 9, # 3 Exhibit 10) (KE, ilcd). (Entered: 05/11/2018)** |
| 05/11/2018 | 48 | | Amended MOTION for Summary Judgment by Plaintiff John Doe. Responses due by 6/1/2018 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit 1, # 6 Exhibit 2, # 7 Exhibit 3, # 8 Exhibit 4, # 9 Exhibit 5, # 10 Exhibit 6, # 11 Exhibit 7, # 12 Exhibit 8, # 13 Exhibit 9, # 14 Exhibit E, # 15 Exhibit F, # 16 Notice of Filing)(Roth, Mark) (Entered: 05/11/2018) |
| 05/14/2018 | | | TEXT ORDER entered by Judge Colin Stirling Bruce on 5/14/2018. Defendant University of Illinois' Motion for Leave to File Excess Pages 46 is GRANTED. Further, the filing of Plaintiff John Doe's Amended Motion for Summary Judgment 48 supersedes Plaintiff's original Motion for Summary Judgment 38. The clerk is directed to MOOT the original Motion for Summary Judgment 38. (KE, ilcd) (Entered: 05/14/2018) |
| 05/31/2018 | | | TEXT ORDER entered by Judge Colin Stirling Bruce on 5/31/2018. The clerk is directed to take the attachments from 46 and attach them as attachments to 45. (KE, ilcd) (Entered: 05/31/2018) |
| 06/01/2018 | 49 | | |

| | | | |
|---|---|---|---|
| | | | RESPONSE to Motion re <u>48</u> Amended MOTION for Summary Judgment filed by Defendant Board of Trustees of the University of Illinois. (Attachments: # <u>1</u> Affidavit Tab 1)(Land, Peter) (Entered: 06/01/2018) |
| 06/01/2018 | <u>50</u> | | RESPONSE to Motion re <u>46</u> MOTION for Leave to File Excess Pages *(Unopposed)*, <u>45</u> MOTION for Summary Judgment filed by Plaintiff John Doe. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D)(Roth, Mark) (Entered: 06/01/2018) |
| 06/01/2018 | <u>51</u> | | NOTICE *of Filing* re <u>50</u> Response to Motion, (Roth, Mark) (Entered: 06/01/2018) |
| 06/15/2018 | <u>52</u> | | REPLY to Response to Motion re <u>45</u> MOTION for Summary Judgment filed by Defendant Board of Trustees of the University of Illinois. (Land, Peter) (Entered: 06/15/2018) |
| 06/15/2018 | <u>53</u> | | REPLY to Response to Motion re <u>48</u> Amended MOTION for Summary Judgment filed by Plaintiff John Doe. (Attachments: # <u>1</u> Notice of Filing)(Roth, Mark) (Entered: 06/15/2018) |
| 07/24/2018 | <u>54</u> | 11 | ORDER entered by Judge Colin Stirling Bruce on 7/24/2018. Defendant's Motion for Summary Judgment <u>45</u> is GRANTED and Plaintiff's Amended Motion for Summary Judgment <u>48</u> is DENIED. The final pretrial and jury trial scheduled in this case are VACATED. This case is terminated. See written order. (JMB, ilcd) (Entered: 07/24/2018) |
| 07/24/2018 | <u>55</u> | 36 | JUDGMENT in favor of Board of Trustees of the University of Illinois against John Doe (JMB, ilcd) (Entered: 07/24/2018) |
| 08/22/2018 | <u>56</u> | 9 | NOTICE OF APPEAL as to <u>54</u> Order on Motion for Summary Judgment,,, by John Doe. Filing fee $ 505, receipt number 0753–2910477. (Roth, Mark) (Entered: 08/22/2018) |

E-FILED
Wednesday, 22 August, 2018  10:05:21 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS - URBANA**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17-CV-02180 |
| v. | ) | |
| | ) | Honorable Colin S. Bruce |
| BOARD OF TRUSTEES OF THE | ) | Magistrate Eric I. Long |
| UNIVERSITY OF ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | JURY DEMANDED |
| | ) | |

## NOTICE OF APPEAL

Notice is hereby given that Plaintiff, John Doe, hereby appeals to the United States Court

of Appeals for the Seventh Circuit from an order entered on July 24, 2018 granting Defendant,

Board of Trustees of the University of Illinois', Motion for Summary Judgment and denying

Plaintiff, John Doe's, Motion for Summary Judgment, and from a final and appealable Judgment

entered in favor of the Defendant, Board of Trustees of the University of Illinois, against the

Plaintiff, John Doe, on July 24, 2018.

/s/ Mark D. Roth
Mark D. Roth, Attorney for Plaintiff/Appellant

Mark D. Roth
Robert Fioretti
Roth Fioretti, LLC
311 South Wacker Drive, Suite 2470
Chicago, Illinois 60606
PH: (312) 922-6262
FX: (312) 922-7747
mark@rothfioreti.com
Counsel for Plaintiff

1

# CERTIFICATE OF SERVICE

The undersigned attorney certifies that he caused a true and correct copy of the foregoing instrument to be served upon the parties of record, as shown below, via the Court's CM/ECF filing system on the 22nd day of August 2018.

**Peter G Land**
HUSCH BLACKWELL LLP
Suite 2200
120 S Riverside Plaza
Chicago, IL 60606
312-526-1631
Fax: 312-655-1501
Email: Peter.Land@huschblackwell.com

**Gwendolyn Baxter Morales**
HUSCH BLACKWELL LLP
Suite 2200
120 S Riverside Plaza
Chicago, IL 60606
312-526-1631
Fax: 312-655-1501
Email: Gwendolyn.Morales@huschblackwell.com

                                        /s/ Mark D. Roth
                                          Mark D. Roth

Mark D. Roth
Robert Fioretti
Roth Fioretti, LLC
311 South Wacker Drive, Suite 2470
Chicago, Illinois 60606
PH: (312) 922-6262
FX: (312) 922-7747
mark@rothfioreti.com
Counsel for Plaintiff

2

E-FILED
Tuesday, 24 July, 2018  03:09:16 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 17-CV-2180** |
| | ) | |
| **THE BOARD OF TRUSTEES OF THE** | ) | |
| **UNIVERSITY OF ILLINOIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Plaintiff, John Doe, filed an Amended Complaint (#8) on August 23, 2017, against Defendant, the Board of Trustees of the University of Illinois, alleging that he was deprived of his right to due process by Defendant when he was dismissed from the University following an allegation of sexual assault by a fellow student, Jane Roe. The parties filed cross Motions for Summary Judgment (#45, 48) on May 11, 2018. Those motions are now fully briefed and ready for disposition.

BACKGROUND[1]

*Summary Background*

This case involves an alleged sexual assault that occurred in an apartment on the campus of the University of Illinois on the evening of December 3-4, 2016. The accused, Plaintiff Joe Doe, was a student at the University, and the alleged victim, Jane Roe, was also a University student. After an investigation by the University, a Panel of the Subcommittee on Sexual Misconduct found that Plaintiff had committed sexual assault and recommended that he be dismissed from the University. Plaintiff has now filed this

_____

[1]The Background section is taken from the parties' Statement of Undisputed Material Facts, depositions, and other admissible materials attached to their filings.

suit, alleging that he had both a property and liberty interest in his continuing education, and therefore he had a right to due process under the Fourteenth Amendment that was violated by the investigation and decision-making process employed by the University in this case. Because of the nature of the property interest and due process inquiry, much of the factual background will focus on the University of Illinois Student Code and Sexual Misconduct Policy and Disciplinary Procedure.

*The Student Code and University Policies*

<u>The Student Code and the Rights of University Students</u>

Plaintiff is a resident of California who applied to and was accepted to enroll at the University of Illinois at Urbana-Champaign for the class of 2019. The Student Code, which contains both the Sexual Misconduct Policy and the Student Disciplinary Procedures, was made available to Plaintiff on the University's website. Plaintiff had access to these documents both before and after he applied to and was accepted by the University. Plaintiff did not review the Code before enrolling at the University or before he was informed by the victim, Jane Roe, that he had violated the Code.

The Preface of the Student Code states that the Code applies to all undergraduate, graduate, and professional students enrolled at the University. The Code's Preamble, § 1-101 states the following:

> (a) A student at the University of Illinois at the Urbana-Champaign campus is a member of a University community of which all members *have at least the rights and responsibilities common to all citizens, free from institutional censorship; affiliation with the University as a student does not diminish the rights or responsibilities held by a student or any other community member as a citizen of larger communities of the state, the nation, and the world.*

> (b) Any rules or regulations considered necessary to govern the interaction of the members of the University community are intended to reflect values that community members must share in common if the

2

purpose of the community to advance education and to enhance the educational development of students is to be fulfilled. These values include the freedom to learn, free and open expression within limits that do not interfere with the rights of others, free and disinterested inquiry, intellectual honesty, sustained and independent search for truth, the exercise of critical judgment, respect for the dignity of others, and personal and institutional openness to constructive change. *The following enumeration of rights shall not be construed to deny or disparage other rights retained by these individuals in their capacity as members of the campus community or as citizens of the community at large.* (Emphasis added).

The Code also provides privacy rights in § 1-104, stating "[m]embers of the University community have same rights of privacy as other citizens and surrender none of those rights by becoming members of the academic community..." Further, in the Student Disciplinary Procedures, § 1.01, it is stated that the University disciplinary system is separate from, but coexistent with, "general systems established by society to deal with the conduct of citizens of society."

Plaintiff states, in his affidavit, that he accepted the University's offer and paid the required deposit in reliance on the understanding that he would only be dismissed from the University for good cause. This assertion, however, is disputed by Defendant, who points to Plaintiff's deposition testimony, where Plaintiff testified that he did not review the Student Code or Disciplinary Procedures before either enrolling at the University or being informed of the allegations made against him by Jane Roe. The following exchange was had between Plaintiff and Defendant's counsel at Plaintiff's deposition:

Q: How can that be if you never looked at the student code?
A: Because assuming that I should have normal rights as a citizen, which in the student code at the end I … when I looked back at the student code, which there is an implied contract where I should receive and will receive all of the rights that a citizen should have under the amendments and constitutions – that my thinking was correct when I first – when I went to

3

the University, I was thinking that I will receive normal rights and –
normal rights under constitution and to become a normal citizen – as a
normal citizen.

Q: So when you say you relied on them, you didn't actually read them or
know they existed, right?

A: When I first applied at college, I relied on being a student. Especially in
public universities, they will have rights given to you as a normal citizen.

Q: How do you know that?

A: It is normal understanding, in my knowledge.

Q: So based just on what you thought – how it would work, or was there
some resource you looked at to determine if that was true?

A: No. Because I have heard from my family members. They told me
public universities – they will give you normal rights as a citizen instead
of private university. They might take away your things more fiercely.

Q: When did somebody tell you that?

A: When I was applying to college.

Q: Who told you that?

A: Family friend.

Q: Who?

A: I don't recall. I don't recall. I heard it.

Q: Okay. You said that you assumed that you would have rights like
normal citizens. What rights are you talking about?

A: Of course, constitutional rights and due process, of course. And
anything – I should not be taken away or be dismissed from the
University without legal charges or have strong evidence against me.

Q: What constitutes legal charges?

A: Like if you have strong evidence against me. That is a legal charge.

Q: What constitutes strong evidence?

A: For example, if a person is dead and something as a knife kill person
and there is fingerprints on that knife of mine, that is strong evidence
against me because I have my fingerprint on that evidence. And without
presenting any further stronger evidence, I should be charged.

Q: So you think it needs to be like criminal charges?

A: Or at least giving me the same right as the citizens of having at least a
hearing of presenting myself in front of the panel.

Q: And this is all based on a family friend you can't remember telling you
this is how it works, or is there some other source of your belief that there
needs to be legal charges and strong evidence in order to dismiss –

A: Well, this is normal understanding when you first go into the college.

<u>Sexual Misconduct Policy and Disciplinary Procedure</u>

The University maintains a Sexual Misconduct Policy that is set forth in its

4

Student Code. The definitions of "sexual misconduct," "sexual assault," and "consent" in the Policy conform with the requirements of the Illinois Preventing Sexual Violence in Higher Education Act (PSVHEA), 110 Ill. Comp. Stat. 155/1. The Code provides that students will be subject to discipline for conduct that violates the Code, and this includes conduct that violates the Sexual Misconduct Policy, along with conduct considered to be abuse of the University system, such as the failure to obey the directive of a disciplinary body or University officials in the performance of their duties.

The University maintains Student Disciplinary Procedures that set forth procedures for addressing violations of the Code, including procedures for investigating and resolving cases that involve an accusation of sexual misconduct against a student. The Policy and Sexual Misconduct Procedures, as well as additional information and resources, are made available online to all students, employees, and members of the public at the University's "We Care" website. wecare.illinois.edu/titleix/ (last visited July 6, 2018).

The PSVHEA provides that individuals who report allegations of sexual misconduct have certain rights and options, of which the University is required to make the individual aware. This information is on the "We Care" website, and is also discussed in-person with the individual when they make a report. These rights include the right to a campus-issued no contact order with the respondent. Plaintiff did not review the Student Disciplinary Procedures or the Sexual Misconduct Procedures before enrolling at the University or before he was informed by Jane Roe that he had violated the Code.

<u>Sexual Misconduct Procedures</u>

Section 1 of the Procedures provides definitions for various terms, and the

5

definition for "advisor" notes that both respondents and complainants may be accompanied by an advisor of their choosing to any meeting with Office for Student Conduct Resolution (OSCR) staff, provided the advisor does not also serve as a witness.

Section 2 of the Procedures describes the investigation process. Section 2(a)(1) provides that OSCR oversees the investigations and appoints the investigator(s). Section 2(b) concerns the "charge notice," where the lead investigator issues a written charge informing the accused of the approximate date, time, place, and nature of the incident, as well as the sections of the Student Code the accused is alleged to have violated. Section 2(c) concerns the investigator interviewing the accused in a timely manner. Section 2(d) provides that both parties are to be given the opportunity to provide supporting information and documentation and to identify witnesses. Section 2(g) concerns the investigation timeline, and provides that, while 45 days is the average anticipated time to conduct an investigation, duration may vary depending on circumstances, such as winter or summer break periods. The University followed Section 2 with regard to the instant case.

Section 3 of the Procedures concerns the "investigative report." Section 3(a) provides that, upon completion of the investigation, the investigator is to compile all information into a written report. Section 3(b) allows both parties to review the initial report at the OSCR office during normal business hours, and afterwards they may submit a written response. Section 3(d) concerns final review of the revised report, with both parties being allowed to review the revised report during OSCR office hours. They may submit a final written response containing impact statements, character statements, statement of desired outcome, and any other information believed relevant for "sanction determination." Section 3(e) concerns the final investigative report, which

6

includes: the revised report; any final responses from the parties; a proposed statement of fact; proposed responsibility determinations; and a rationale for the finding of fact and responsibility determinations. The University followed Section 3's requirements.

Section 4 of the Procedures provides for "panel adjudication," and for the Panel to make decisions by simple majority vote applying the preponderance of the evidence standard. The Panel is composed of three members of the Subcommittee on Sexual Misconduct. Section 4(c) concerns "Panel questioning." After Panel members have reviewed the final written report, they meet with and question the investigator. Section 4(c) does not include any provision for the Panel to question witnesses or the parties, nor does it provide for a hearing before the Panel where witnesses will testify. The Panel never hears directly from witnesses or the parties. Plaintiff is not claiming that the Panel did not follow the procedures in Section 4.

Section 5 of the Procedures provides for an appeal, but the appeal, like the Panel determination, does not allow for live presentation of testimony by witnesses or the parties at a hearing. Plaintiff admits that the University followed the Procedures in this case, and that he was not guaranteed a hearing under the Procedures.

*The Sexual Assault Incident*

On December 13, 2016, Jane Roe met with OSCR investigators January Boten and Rony Die to report an alleged violation of the Student Code by Plaintiff. Roe was accompanied by an advisor, as allowed in Section 1 of the Procedures. At the meeting, Roe told Boten she wanted the University to issue a no contact order to Plaintiff. The investigators interviewed Roe, and following the meeting, emailed their notes to her for her review. Roe responded the same day, providing comments on the notes.

7

In the meeting, Roe told investigators the following. On the night of December 3-4, 2016, she had wine at a friend's place and then went to a fraternity party with her friends where she drank some beer. Then, Roe and her friend "RZ" went to a bar on campus, "Joe's," where they met up with Plaintiff and his friend. At Joe's, Plaintiff, Roe, and RZ split eight shots of alcohol. Roe and RZ then both had a cup of whisky. Roe got "pretty drunk," and left with RZ and Plaintiff to go to a restaurant to get food. Roe could not stand up and kept falling asleep. Roe was texting a friend of Plaintiff's, "BK," that she was "seeing/dating." Because she could not type well at this point, Plaintiff took her phone and texted BK, telling him that Roe was drunk.

Roe then remembers Plaintiff walking her home and that, based on what RZ later told her, RZ did not want Plaintiff to walk Roe home at first, but Plaintiff convinced RZ he would not touch Roe because his "bro" was dating her. Roe and Plaintiff ended up at Plaintiff's apartment, but she does not remember why. She remembers leaning on Plaintiff during the walk because she could not walk by herself, and that Plaintiff kept saying she should sleep at his place. When they arrived at Plaintiff's apartment, he led

her to his bedroom. She remembered Plaintiff was "hugging her from behind" and that she was okay with that because it felt "nice," and that she then fell asleep.

When she woke up, Plaintiff was talking and starting to kiss her. She said "no" but Plaintiff said "what happens here stays here." Roe said she then said "no" again and threatened to tell BK. Roe said she was still pretty drunk at this point, and every time she said no, Plaintiff would say something and kiss her. They then began making out, and Plaintiff removed Roe's shirt. Roe then sat up and told Plaintiff that she did not do "hook ups," but he pushed her onto the bed. Roe claims Plaintiff took her clothes off

8

quickly, put on a condom, and penetrated her. She said she was just lying there mumbling "no."

Sometime afterward, the police, RZ, and another friend of Roe's came to Plaintiff's apartment. RZ and the other friend spoke with Plaintiff and Roe and then walked Roe back to her dorm. At the time, Roe did not tell them what had occurred between her and Plaintiff. The next day, Roe told RZ that she and Plaintiff did have sex, despite her telling Plaintiff "no." Roe showed investigators a text sent from her phone by Plaintiff to BK the night of alleged assault, where Plaintiff tells BK Roe is "freaking drunk."

Investigator Boten determined that Roe's allegations, if substantiated, would violate the Student Code. Pursuant to the Sexual Misconduct Procedures, Boten sent a written charge notice via email to Plaintiff on December 13, 2016, which notified Plaintiff of the charges made against him by Roe. Plaintiff was informed OSCR had been made aware of an allegation he sexually assaulted another student in his apartment on December 3-4, 2016, in violation of the Code. It identified the sections of the Code allegedly violated, and directed Plaintiff to OSCR's website where he could view the Code. The email also directed Plaintiff to call Boten during business hours no later than January 27, 2017, to arrange an appointment with her. The email also directed Plaintiff to have "NO CONTACT" with Jane Roe until further notice, and any such contact could result in charges before the appropriate subcommittee on Student Conduct.

Plaintiff knew when he received the email that it was referring to the incident with Roe. Upon receipt of the email, he reviewed the Student Code sections at issue and was aware that he was accused of sexual assault as defined in the Code. He then

9

contacted Roe via text, stating "yo" and "what is this?" and sent a screenshot of the top of the OSCR email. At his deposition, Plaintiff testified that he contacted Roe because he just read the top part of the email, skimmed the rest, and saw Roe's name. After he sent the three initial texts, he carefully read through the email and then texted her saying "pretend you didn't see this" and "just saw that I'm not supposed to have any contact with you." He never contacted Roe after this.

After receiving the texts from Plaintiff, Roe contacted Boten about the communication. Boten sent Plaintiff an email on December 14, 2016, notifying him that he had violated the Student Code for violating the no contact order. Plaintiff arranged an appointment with Boten in December 2016, but that meeting concerned only his violation of the no contact order. At the meeting, Plaintiff informed Boten of his hastiness in sending the text messages, and stated that the investigator did not request he show her the text messages at issue. Further, Plaintiff stated he was told virtually nothing about the specific accusations Roe had made, and thus he could not prepare a defense and suggest sources of information for the investigators to pursue. Plaintiff did, however, know the date and time of the alleged assault and its nature, along with the sections of the Student Code allegedly violated. The investigator informed Plaintiff that they would resume discussions as soon as possible.

Plaintiff met with Boten and Die on January 19, 2017, to discuss the sexual assault allegations. At the meeting, the investigators fully explained the Procedures to Plaintiff, from the preparation of the report to the Panel decision. While Plaintiff was aware he could have an advisor with him while meeting the investigators, he chose to meet without one. Plaintiff provided the investigators with his version of what happened the evening of December 3-4, 2016. He was given the opportunity to provide

10

supporting information and documentation and to identify witnesses with regard to the allegations against him. The investigators prepared notes during the meeting and emailed them to Plaintiff that same day so he could comment on the notes. During the interview process, Plaintiff claims the investigators neglected his expressions and emotions while being interviewed, and Plaintiff felt as if he was "speaking to a machine." Plaintiff replied four days later with comments, which were incorporated into his witness statement. The investigators also interviewed BK, "YK," "BL," and RZ, in the same manner in which they interviewed Plaintiff.

On February 20, 2017, the investigators completed their initial investigative report, which included a narrative of the incident written by the investigators, a description of the incident, and copies of all witness statements and documents the investigators had collected. Plaintiff and Roe were contacted and told they had until February 27, 2017, to review and respond to the report. Plaintiff was sent an email by the investigators linking to a document that provided tips on how to respond to the report, such as: whether there was anything Plaintiff wanted to clarify, correct, or respond to; whether there were any additional or follow up questions Plaintiff wanted asked of witnesses or parties; or if there were other witnesses Plaintiff wanted interviewed or documents Plaintiff wanted added.

Plaintiff reviewed the report with the investigator and submitted a response on February 27, 2017. Plaintiff did offer multiple corrections, clarifications, and additions to his own interview summary, as well as corrections, clarifications, and responses to Roe's and other witness interview summaries. Plaintiff claims he made corrections and comments to 61 lines of the initial report. Plaintiff did not submit additional supporting documentation, identify any additional witnesses for the investigators to talk to, or

submit any questions for the investigators to ask any witnesses.

After reviewing Plaintiff's and Roe's responses to the initial report, the investigators prepared the revised report. Plaintiff's response and Roe's response to the initial report were contained in the appendices of the revised report. Based on the parties' responses, the investigators made two changes to the incident narrative of the revised report: (1) that instead of Roe "mumbling no" the entire time Plaintiff was inside her, Roe said she was "saying no" the entire time; and (2) the statement that "[Plaintiff] said that when the sex stopped [Roe] put her clothes back on and went to sleep" was changed to "[Plaintiff] said that he did not actually penetrate [Roe] but when they were done she put her clothes back on and went to sleep."

The investigators followed the same procedure with the revised report that they followed with the initial report. On March 8, 2017, Plaintiff reviewed the revised report, which he understood was his "last chance" to address the subcommittee on sexual misconduct. He responded with several comments and corrections, disagreeing with some of the facts said by witnesses included in the revised report. Plaintiff claims he made corrections and comments to 38 lines of the revised report.

On March 15, 2017, the investigators completed their final investigative report and sent it to the Panel appointed to determine Plaintiff's case. Plaintiff did not review the final report before it was sent to the Panel, pursuant to the Procedures. On March 16, 2017, Plaintiff received a letter informing him that the Panel would meet for a hearing on his case on March 28, 2017, to consider the case and render a decision. The email notice did not provide a time or place of the hearing, but did state that Plaintiff

would received a detailed decision letter from the advisor of the Panel by the end of the business day following the hearing, and that both he and Roe would have the opportunity to appeal the decision.

The Student Disciplinary Procedures do not allow for students to appear before the Panel or be represented by counsel at the hearing. Plaintiff claims that when he asked whether he could attend the hearing, investigator Boten responded "no honey, you just wait at home for the result email which will be sent within 24 hours of the hearing." Defendant denies Boten said this.

The Panel was composed of three members. Neither Plaintiff or Roe were allowed to attend the hearing to provide testimony or cross-examine witnesses. At the outset of the hearing, investigator Boten was present to answer questions about the final report and its attachments, which each Panel member had received one week prior to the hearing. The Panel posed questions to Boten regarding her credibility assessments of Roe and Plaintiff and specific factual incidents at issue in the final report. The Panel asked questions about how Plaintiff's story did not make sense and how Plaintiff had changed his story during the course of his various statements, such as contradictory statements about whether Plaintiff had sexual intercourse with Jane Roe. The Panel also asked questions about Plaintiff's friend BK's comments about Plaintiff telling BK that Plaintiff and Jane Roe had sex and that Jane Roe was very drunk.

The Panel then engaged in discussion outside of the presence of Boten and determined that Plaintiff had committed sexual assault including penetration, based on, among other facts, evidence regarding: Jane Roe's level of intoxication and incapacitation, such as Plaintiff's text that Roe was "freaking drunk" and witness BK's statement that Plaintiff told BK that Roe was "out of her mind completely drunk";

Plaintiff's statements assuring Roe's friend that he would not touch Roe if he walked her home because she was dating BK; and Plaintiff's subsequent decisions to take Roe to his apartment to engage in sexual acts without Roe's verbal consent, based on several sources, including BK's statement that Plaintiff told BK that he had sex with Roe. The Panel also determined that Plaintiff violated the no contact directive by texting Roe after receiving the initial charge notice. The Panel determined that Plaintiff should be dismissed from the University and not allowed to petition to return for 2.5 years.

On March 28, 2017, Justin Brown, OSCR's director, sent Plaintiff a letter relaying the result of the Panel's hearing and decision. The letter contained the Panel's reasoning for its decision based on the final report. Plaintiff appealed the Panel's decision, challenging not the procedure used by the University, but whether the sanctions were appropriate and arguing that he had new information. Specifically, Plaintiff cited to a post-determination text conversation he had with BK where BK stated that Plaintiff told him that he (Plaintff) and Roe "almost had sex." On April 25, 2017, the University notified Plaintiff that none of the criteria for pursuing an appeal were met, and he was dismissed from the University effective immediately. Plaintiff is permitted to petition to return to the University in spring 2019.

*Plaintiff's Reputation and Attempts to Apply to Other Academic Institutions*

Before the instant dispute, Plaintiff possessed no student disciplinary record. While Plaintiff has not completed applications to other universities, he did begin the application process several times but stopped due to having to disclose his disciplinary record. Plaintiff claims his reputation, good name, and integrity have been affected by Defendant's violation of his due process rights. Plaintiff has cited as examples: Roe's friend telling Plaintiff's friends that he is untrustworthy and a liar; a female friend of

14

Plaintiff's jokes about his dismissal from school; Plaintiff is now inactive on social media and avoids making new friends in case they ask him about his schooling; Plaintiff avoids forming new relationships with females because he is afraid of what to say around them; and Plaintiff avoids speaking with his elderly grandparents because he does not want to disappoint them and fears they may ask him how he is doing in school.

*Plaintiff's Complaint*

Plaintiff's Amended Complaint (#8) seeks injunctive relief and demands a jury trial. The first count of the Amended Complaint alleges deprivation of his right to procedural due process under the Fourteenth Amendment to the United States Constitution. Plaintiff alleges that he has a protected property interest in continuing his education at the University of Illinois, as well as a liberty interest. Plaintiff alleges that the deficient process provided by the University deprived him of those constitutionally protected interests. Plaintiff does not ask for money damages, but rather injunctive relief that will re-enroll him at the University and provide him an adequate hearing that comports with due process.

ANALYSIS

Both parties have filed motions for summary judgment, arguing that they are entitled to summary judgment in their favor on the issues of whether Plaintiff has a protected property and/or liberty interest in his continuing education, and if he does, whether the process afforded Plaintiff in this matter comports with procedural due

process under the Fourteenth Amendment.

*Eleventh Amendment Immunity*

As a preliminary matter, Defendant has re-raised the argument it made in its earlier Motion to Dismiss (#17) that Plaintiff's claims are barred by the Eleventh Amendment to the U.S. Constitution. This argument is rejected for the same reasons articulated in the court's Order (#34) of December 18, 2017, denying the motion to dismiss.

*Summary Judgment Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's favor toward the nonmoving party does not extend to drawing inferences which are only supported by speculation or conjecture. See *Singer*, 593 F.3d at 533. In addition, this court "need not accept as true a plaintiff's *characterization* of the facts or a plaintiff's legal conclusion." *Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258*, 688 F. Supp. 2d 815, 835 (C.D. Ill. 2010) (emphasis in original).

16

The party opposing summary judgment may not rely on the allegations contained in the pleadings. *Waldridge*, 24 F.3d at 920. "[I]nstead, the nonmovant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004), quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007), citing *Celotex Corp.*, 477 U.S. at 322-23. When cross motions for summary judgment have been filed, this court must review the record construing all inferences in favor of the party against whom the motion under consideration is made.  See *BASF AG v. Great Am. Assur. Co.*, 522 F.3d 813, 818 (7th Cir. 2008).

*Procedural Due Process*

Plaintiff claims that his right to procedural due process under the Fourteenth Amendment was violated by the insufficient process provided by the University in adjudicating the sexual assault claim against him and the University's decision to expel him from school. The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.

There are two steps to any procedural due process analysis: (1) the court must identify the protected property or liberty interest at stake; and (2) it must determine what process is due under the circumstances. *Charleston v. Board of Trustees of University*

17

*of Illinois at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013). "Although the Fourteenth Amendment protects property rights, it does not create them. Instead, property rights are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that

secure certain benefits and that support claims of entitlement to those benefits." *Price v. Board of Education of the City of Chicago*, 755 F.3d 605, 607 (7th Cir. 2014). Plaintiff has identified what he claims to be both a liberty and property interest at stake in this case.

<u>Liberty Interest</u>

The Seventh Circuit has recognized a valid liberty interest, in the employment context, when an employee's good name, reputation, honor, or integrity is called into question in a manner that makes it virtually impossible for the employee to find new employment in their chosen field. *Khan v. Bland*, 630 F.3d 519, 535 (7th Cir. 2010). However, mere defamation by the government does not deprive a person of a liberty interest protected by the Fourteenth Amendment, even when it causes serious impairment of one's future employment. *Khan*, 630 F.3d at 534. Rather, it is the alteration of legal status, such as the governmental deprivation of a right securely held, which combined with the injury resulting from the defamation, that justifies invocation of procedural safeguards, which is known as the "stigma plus" test. *Khan*, 630 F.3d at 534; *Schepers v. Commissioner, Indiana Department of Corrections*, 691 F.3d 909, 914 (7th Cir. 2012). To avoid constitutionalizing state defamation law, defamation by a government actor does not implicate the Due Process Clause unless "'a right or status previously recognized by state law was distinctly altered or extinguished' as a result."

18

*Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010), quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976). "To avoid this problem, a plaintiff must allege that '(1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure.'" *Abcarian*, 617 F.3d at 941, quoting *Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th Cir. 2001).

Here, Plaintiff argues that he has a liberty interest at stake because his reputation has been ruined and he has not been able to apply at any other colleges due to having to disclose his disciplinary record. As noted above, mere damage to reputation via defamation from a government actor is not enough. See *Abcarian*, 617 F.3d at 941. Rather, Plaintiff must show that he suffered a tangible loss of other employment, or continuing education opportunities, as a result of the public disclosure. However, although Plaintiff claims that he has been denied the opportunity to continue his education at other schools due to the requirement to disclose his disciplinary record, he cannot show that he suffered an *actual*, *tangible* loss of other educational opportunities as a result of the public disclosure. See *Abcarian*, 617 F.3d at 941. Plaintiff cannot show that Defendant ever publicly disclosed his disciplinary record, and, even more importantly, he admits that he never actually completed and submitted an application to any other school, and that said school rejected him because of his disciplinary record. Thus, because Plaintiff has presented no evidence that he was denied a continuing education opportunity because of any statement made in public by Defendant about his disciplinary record, he has failed to meet his burden of proof on summary judgment as

19

to a liberty interest protected by the Due Process Clause. See *Hess v. Board of Trustees of Southern Illinois University*, 149 F.Supp.3d 1027, 1040 (S.D. Ill. 2015). Judgment is granted in favor of Defendant on the existence of a liberty interest.

Property Interest

Plaintiff next argues that he has a property interest in his continued education. The Seventh Circuit has rejected the proposition that an individual has a stand-alone property interest in an education at a state university, including a graduate education. *Charleston*, 741 F.3d at 772. It cannot be the case, the court has reasoned, that any student who is suspended from college has suffered a deprivation of constitutional property, in part because this would imply that a student who flunked out would have a right to a trial-type hearing on whether his tests and papers were graded correctly and a student who was not admitted would have a right to a hearing on why he was not admitted. *Charleston*, 741 F.3d at 772-73.

Rather, instead of finding a stand-alone interest, the court determines whether the student has shown that he has a legally protected entitlement to his continued education at the university. *Charleston*, 741 F.3d at 773. A plaintiff could establish that he has this legitimate entitlement by pleading the existence of an express or implied contract with the school. *Charleston*, 741 F.3d at 773. For instance, the plaintiff could point to an agreement between himself and the school that he would be dismissed only for good cause. *Charleston*, 741 F.3d at 773. However, it is not enough for a student to merely state that such an implied contract existed, but rather the student must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return. *Charleston*, 741 F.3d

at 773.

Plaintiff acknowledges that there is no general stand-alone property interest in his continuing education. However, he argues that he has satisfied the standard set out in *Charleston*, in that he had an implied contract with the University of Illinois that he would not be dismissed from the University but for "good cause" based on the language contained in the Student Code. A right established by an implied contract between a student and a university can be a property interest subject to constitutional protection and the catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant may become a part of the contract. *Bissessur v. Indiana University Board of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009). Specifically, Plaintiff cites to the language from the Student Code § 1-101 stating that students "have at least the rights and responsibilities common to all citizens" and that "affiliation with the University as a student does not diminish the rights or responsibilities held by a student or any other community member as a citizen of larger communities of the state, the nation, and the world." Plaintiff also cites to further language in § 1-101 stating that "the following enumeration of rights shall not be construed to deny or disparage other rights retained by these individuals in their capacity as members of the campus community or as citizens of the community at large" and language from § 1.01 of the Student Disciplinary Procedures stating that the University disciplinary system is separate from, but coexistent with, "general systems established by society to deal with the conduct of citizens of society."

This court has already held, in its December 18, 2017, Order on the motion to dismiss, that these passages, combined with Plaintiff saying he relied on them in his acceptance of the offer to attend the University, could "establish an express or implied

21

contract guaranteeing Plaintiff a legally protected entitlement to a continued education." The court did take care to note that this case was still at the early pleading stage. The court agrees with Defendant to a certain extent that the language is somewhat broad, and not *entirely* specific, in that, for example, it makes no mention that students will only be dismissed for "good cause." However, it is conceivable that, as it deals specifically with rights common to all citizens, taken in the light most favorable to Plaintiff, the language could, possibly, be found by a trier of fact to implicate *constitutional* rights such as the right to due process, in that Plaintiff would not be dismissed from the University but for good cause. This language is unlike the more general language found not to constitute a property interest in cases like *Hess* and *Charleston.* See *Charleston*, 741 F.3d at 773 (plaintiff did not allege any specific promises the university made to him through its disciplinary policy nor did he specifically identify the university "statutes" at issue and their contents); *Hess*, 149 F.Supp.3d at 1039 (vague references to the Student Code and statement that "I was supposed to be a student and succeed and they were supposed to be there and they didn't").

Whether or not the language in the Code could be read as promising dismissal only for good cause is not the end of our analysis, however. Since the pleading stage concluded, Defendant sat for a deposition, in which he admitted that he had neither read nor considered the Student Code or Disciplinary Procedures in any way before he accepted the University's offer of admittance. The question then becomes whether this has any effect on the implied contract between Plaintiff and the University. Does it matter that Plaintiff was not aware of the specific promises made by the University, that he claims he relied on, when he accepted its offer of admittance?

The court believes it does.[2]  First, the fact that Plaintiff was told by an unnamed family friend that public universities afforded the same constitutional protections as the government does to its citizens, is immaterial and irrelevant. The issue is what promises the University made to Plaintiff, not what he heard from a family friend at some unknown time. Second, based on the Seventh Circuit's case law, Plaintiff must show facts demonstrating (1) what, if any, promises the University made to him; (2) how these promises were *communicated*; and (3) what Plaintiff *promised in return*. *Charleston*, 741 F.3d at 773; *Bissessur*, 581 F.3d at 603-04 (emphasis added). If Plaintiff was completely unaware and did not read *any* portion of the Student Code or the Procedures, he cannot claim they were "communicated" to him by the University, and he certainly cannot claim that he "relied" upon them in any way or that he "promised" anything in return for the University making those promises. There was no contract, implied or otherwise, between Plaintiff and the University that he would be dismissed

---

[2]This was a close decision. Under a different set of facts, this case could have a different outcome.  Illinois recognizes that the relationship between a student and an educational institution is, in some of its aspects, contractual. *Ross v. Creighton University*, 957 F.2d 410, 416 (7th Cir. 1992). Each side should know what they are promising and receiving in return.

Here, the bargain would have been that Plaintiff pays tuition, and Defendant promises, among other things, that he will not be dismissed from school but for good cause. There is no doubt in such an arrangement that if the student does not hold up his or her end of the bargain by failing to pay a semester's tuition, the University will notice and take action.

Further, Defendant makes much of the fact that Plaintiff never read the Student Code before the allegations were made. Does the University have an obligation to ensure students read the Code before accepting the University's offer of admittance or enrolling? It would be a simple task for the University to provide a means for the incoming student to indicate they have read and understood the Student Code, such as a signed acknowledgment to be returned with the student's acceptance of admission. By implementing such an easy procedure, situations like this one could be avoided in the future.

23

from school only for good cause, and therefore there was no property interest in his
continuing education.

Therefore, the court finds that Plaintiff failed to identify a property interest at
stake, and thus there is no need for the court to proceed to the second step of the
procedural due process analysis. See *Charleston*, 741 F.3d at 774. Summary judgment is
granted in full to Defendant.

*Due Process*

Although the court need not address the issue of due process, it does feel
compelled to state, as it did in its Order on Defendant's Motion to Dismiss, its grave
concern and serious doubt over the constitutionality of Defendant's sexual misconduct
investigation and adjudication process. To comport with due process, expulsion
procedures must provide a student with a meaningful opportunity to be *heard*. *Remer v.
Burlington Area School District*, 286 F.3d 1007, 1010 (7th Cir. 2002). Defendant's process,
in the court's mind, is sorely lacking in providing an accused with that meaningful
opportunity. An accusation of sexual assault is an extremely serious charge, which can
carry legal, personal, and pecuniary consequences for the accused. The stigma which
can come from such an accusation and the resulting finding of guilt, even if not from a
criminal court, but rather an educational administrative body, is severe, serious, and
can follow a person for years. The investigative and adjudicative process employed by
Defendant falsely emulates a criminal inquiry, but lacks the ability of the accused to
confront witnesses, be heard, or testify before the deciding panel. Telling one's side of
the story to an investigator, and having a chance to make corrections to that
investigator's report, is not a real opportunity to be heard.

Further, having an "impartial" investigator present their report to the Panel, and

make proclamations on the credibility of individuals involved in the case, is a poor substitute for allowing an accused to appear in person and defend themselves. The court does not believe that Defendant needs to implement a full blown criminal trial with counsel, the right to cross examine witnesses, or the reasonable doubt standard, but, at the very minimum, an accused party should be able to present his or her case to the person or people who *actually decide their fate*. Defendant should live up to the claim made in § 1.01 of its Student Disciplinary Procedures, that the disciplinary system at the University is separate from, but coexistent with, "general systems established by society to deal with the conduct of citizens of society." The court urges Defendant to adopt a more fair and thorough procedure for handling sexual assault claims in the future. Nevertheless, because Plaintiff has not demonstrated the existence of a liberty or property interest, this case is not the appropriate vehicle to address the propriety of Defendant's investigatory process.

IT IS THEREFORE ORDERED:

(1)     Defendant's Motion for Summary Judgment (#45) is GRANTED, and Plaintiff's Amended Motion for Summary Judgment (#48) is DENIED. Judgment is entered for Defendant and against Plaintiff.

(2)     The final pretrial conference scheduled for September 21, 2018, and the jury trial scheduled for October 2, 2018, are hereby VACATED.

(3)     This case is terminated.


ENTERED this 24th day of July, 2018.

s/ COLIN S. BRUCE
U.S. DISTRICT JUDGE

E-FILED
Tuesday, 24 July, 2018  03:19:54 PM
Clerk, U.S. District Court, ILCD

Judgment in a Civil Case (02/11)

# UNITED STATES DISTRICT COURT

for the
Central District of Illinois

| | | |
|---|---|---|
| **John Doe** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case Number: 17-cv-2180** |
| | ) | |
| **Board of Trustees of the University of Illinois,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### JUDGMENT IN A CIVIL CASE

☐ **JURY VERDICT.**   This action came before the Court for a trial by jury.   The issues have been tried and the jury has rendered its verdict.

☒ **DECISION BY THE COURT.**   This action came before the Court and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that judgment is entered in favor of the defendant and against the plaintiff.

**Dated: 7/24/2018**

s/ Denise Koester
Denise Koester
Acting Clerk, U.S. District Court